FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

2009 APR 29 P 5:03

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

PREGIS CORPORATION,
a Delaware Corporation
1650 Lake Cook Road, Ste. 400
Deerfield, IL 60015

Plaintiff,

- against -

JOHN J. DOLL, in his official capacity as Acting Undersecretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office
600 Dulany Street
Alexandria, VA 22314

UNITED STATES PATENT AND TRADEMARK OFFICE
600 Dulany Street
Alexandria, VA 22314

FREE-FLOW PACKAGING INTERNATIONAL, INC.,
a Delaware Corporation
1090 Mills Way
Redwood City, CA 94063

Defendants.

**COMPLAINT** 1:09cv467 GBL/IDD

Pregis Corporation, by its attorneys, for its Complaint in this action alleges:

## PARTIES AND JURISDICTION

1. Pregis Corporation ("Pregis") is a corporation organized and existing under the laws of Delaware, having its principal place of business in Deerfield, Illinois.

2. On information and belief, defendant John J. Doll ("Doll") is Acting Undersecretary of Commerce for Intellectual Property and Acting Director of the United States Patent and Trademark Office, having his principal place of business in Alexandria, Virginia.

3. On information and belief, defendant United States Patent and Trademark Office ("PTO") is an agency of the United States, within the Department of Commerce, having its principal place of business in Alexandria, Virginia.

4. On information and belief, defendant Free-Flow Packaging International, Inc. ("FPI") is a corporation organized and existing under the laws of Delaware, having its principal place of business in Redwood City, California.

5. This action arises under Article I, § 8, cl. 8 of the United States Constitution, the Patent Act of 1952, as amended, 35 U.S.C. §§ 1-376, and the Administrative Procedure Act, 5 U.S.C. §§ 701-706.

6. The Court has subject matter jurisdiction to hear this action under 28 U.S.C. §§ 1331 and 1338(a).

## FIRST CLAIM FOR RELIEF

7. On or about October 4, 2007, non-parties Gunter G. Fuss ("Fuss") and Vladimir Yampolsky ("Yampolsky") filed United States Application Serial No. 11/867,032 (the "Fuss '032 Application") seeking issuance of a patent for an alleged invention entitled "System for Making Pneumatically Filled Packing Cushions" (the "Alleged Fuss Invention").

8. In support of the Fuss '032 Application, Messrs. Fuss and Yampolsky submitted a sworn declaration in which they stated that they "believe[d]" that they were the "original, first and joint inventor[s] . . . of the subject matter which is claimed and for which a patent is sought on the invention entitled ***SYSTEM, METHOD AND MATERIAL FOR MAKING***

***PNEUMATICALLY FILLED PACKING CUSHIONS***, the specification of which . . . was filed on January 17, 2001, as Application Serial No. 09/765,064."

9. On information and belief, Messrs. Fuss and Yampolsky assigned the subject matter of the Fuss '032 Application to defendant FPI on March 20, 2001.

10. On information and belief, attorneys or agents of defendant FPI prosecuted the Fuss '032 Application before defendant PTO, in part by transmitting papers to the PTO in Alexandria, Virginia, and soliciting agency action by the PTO.

11. On or about February 25, 2009, defendant PTO issued a Notice of Allowance (the "Fuss '032 Notice of Allowance") with respect to the Fuss '032 Application.

12. The Fuss '032 Notice of Allowance marked the consummation of the PTO's decisionmaking process with respect to the Fuss '032 Application.

13. The issuance of the Fuss '032 Notice of Allowance was an agency action that purported to determine legal rights of defendant FPI and of the public, including Pregis, with respect to the subject matter disclosed and claimed in the Fuss '032 Application.

14. The issuance of the Fuss '032 Notice of Allowance was an agency action from which legal consequences will flow, namely, the issuance to FPI of a patent for the alleged "invention" disclosed and pointed out by the allowed claims in the Fuss '032 Application.

15. The issuance of the Fuss '032 Notice of Allowance was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as set forth below.

16. On information and belief, during its examination of the Fuss '032 Application, defendant PTO did not undertake to determine whether the subject matter disclosed and claimed in the Fuss '032 Application constituted an "invention" of "inventors" as distinct from subject matter whose conception and making was within the grasp of a person having ordinary skill in the art to which the claimed subject matter pertained.

17. On information and belief, during its examination of the Fuss '032 Application, defendant PTO did not identify any problem that confronted Fuss and Yampolsky at the time they first made the Alleged Fuss Invention.

18. On information and belief, during its examination of the Fuss '032 Application, defendant PTO did not make any inquiry into the degree of skill that may have been needed to solve any problem that confronted Fuss and Yampolsky at the time of their purported "invention" of the Alleged Fuss Invention or the subject matter disclosed and claimed in the Fuss '032 Application.

19. On information and belief, defendants Doll and PTO erroneously and improperly presumed that Fuss and Yampolsky were "inventors" and, as such, purportedly were presumptively entitled to patent protection for the Alleged Fuss Invention based on the mere act of filing the Fuss '032 Application.

20. On information and belief, defendants Doll and PTO issued the Fuss '032 Notice of Allowance on the basis, in whole or in part, of an erroneous supposition that the PTO is purportedly required to allow patent application claims that recite any novel machine or manufacture unless the PTO locates and produces evidence that establishes a so-called "prima facie case of obviousness."

21. According to the Fuss '032 Notice of Allowance, defendant PTO allowed the claims made in the Fuss '032 Application, as amended, because in the opinion of an individual Examiner, "the prior art of record fail[ed] to disclose the claimed apparatus" or "fail[ed] to disclose" certain elements recited in the claims.

22. The "reasons for allowance" stated in the Fuss '032 Notice of Allowance do not constitute any competent, adequate, or legally sufficient basis on which defendants Doll or PTO could reasonably conclude that the allowed claims in the Fuss '032 Application are limited to "nonobvious subject matter" within the meaning of 35 U.S.C. § 103(a).

23. Defendants Doll and PTO have failed to discharge their statutory duty, under 35 U.S.C. § 131, to examine and determine whether the claims made in the Fuss '032 Application satisfy the nonobvious subject matter condition for patentability set forth in 35 U.S.C. § 103(a).

24. Defendants Doll and PTO threaten imminently to issue a patent on the Fuss '032 Application that will, wrongfully and unlawfully, grant FPI and its assigns a purported legal right to exclude Pregis from making, using, offering for sale, or selling subject matter that, in truth and in fact, Pregis has a federal right to make and sell under federal patent law, common law, or both.

25. The conduct of defendants threatens to cause injury to Pregis that is concrete, particularized, and imminent.

26. Pregis and FPI are direct competitors in the business of making and selling air cushion products and apparatus of the general type disclosed in the Fuss '032 Application.

27. On information and belief, defendant FPI prosecuted the Fuss '032 Application with intent to try and set up a claim on the business and assets of Pregis.

28. FPI has demanded that Pregis pay FPI millions of dollars and a running royalty of 12% on sales of Pregis-manufactured air cushion packaging products, in consideration of a "license" to make and sell subject matter disclosed and claimed in, among other things, the Fuss '032 Application.

29. FPI has repeatedly and explicitly threatened to sue Pregis for alleged infringement of the patent that Doll and the PTO threaten imminently to issue on the Fuss '032 Application if Pregis does not agree to pay for a "license" to make and sell subject matter disclosed and claimed in, among other things, the Fuss '032 Application.

30. The patent that Doll and PTO threaten imminently to issue on the Fuss '032 Application will, of its own force, operate to reduce the value of Pregis's business and property and to impair the marketability of Pregis air cushion products.

31. The patent that Doll and PTO have finally decided to issue and threaten imminently to issue on the Fuss '032 Application will, of its own force, operate to infringe, impair, and violate Pregis's federal right to make and use subject matter that federal patent law, including 35 U.S.C. § 103(a), leaves in the public domain.

32. The conduct of Doll and PTO threatens imminently to cause injury to Pregis for which Pregis has no adequate remedy in a court, apart from this judicial review action.

33. Because of the conduct of Doll and PTO, Pregis is adversely affected and aggrieved within the meaning of the Patent Act and other federal law.

**SECOND CLAIM FOR RELIEF**

34. Paragraphs 1-33, above, are realleged and incorporated by reference as if set forth in full.

35. Allowed claim 10 of the Fuss '032 Application describes an apparatus for making air-filled packing cushions, each and every one of whose recited elements is disclosed in U.S. Patent No. 3,660,189 to Troy ("Troy").

36. With reference to allowed claim 10 of the Fuss '032 Application, Troy discloses "[a]n apparatus for making air-filled packing cushions from a preconfigured plastic film material having a plurality of cushion chambers and a longitudinally extending channel near an edge portion of the film material," namely, the apparatus disclosed in Troy Figures 31, 32, and 44 for making air-filled packing cushions (e.g., air cells 320) from a preconfigured plastic film material having a plurality of cushion chambers (e.g., the preconfigured plastic film material disclosed in Troy Figure 13) and a longintudinally extending channel near an edge portion of the film material (e.g., longitudinally extending access channel 85).

37. With reference to allowed claim 10 of the Fuss '032 Application, Troy discloses "a feed mechanism for engaging an edge portion of the material near the longitudinally extend-

ing channel and feeding the film material along a path," namely, the wheel 187 and ring 190 disclosed in Troy Figure 31 and the discs 304, 311 disclosed in Troy Figure 44).

38. With reference to allowed claim 10 of the Fuss '032 Application, Troy discloses "an elongate guide member adapted to be inserted into the longitudinally extending channel for guiding the film material as it is fed along the path," namely, the pipe 186 disclosed in Troy Figures 31, 32, and 34.

39. With reference to allowed claim 10 of the Fuss '032 Application, Troy discloses "wherein the guide member has an injector for injecting inflation gas into the cushion chambers," namely, the slots 194 facing the center of the prefab disclosed in Troy Figures 32 and 34.

40. With reference to allowed claim 10 of the Fuss '032 Application, Troy discloses "a sealing mechanism for forming a longitudinally extending seal to close the chambers and trap inflation gas therein," namely, the tapes 191 and rings 190 disclosed in Troy Figure 31 and the tape strands 302, 303 disclosed in Troy Figure 44.

41. With reference to allowed claim 10 of the Fuss '032 Application, Troy discloses "wherein the sealing mechanism comprises a source of heat," namely, the heater rolls 200, 309 disclosed in Troy Figures 31 and 32 and heater rolls 309, 314 disclosed in Troy Figure 44.

42. With reference to allowed claim 10 of the Fuss '032 Application, Troy discloses "a pair of belts which engage the film material," namely, the tape strands 302, 303 disclosed in Troy Figure 44.

43. With reference to allowed claim 10 of the Fuss '032 Application, Troy discloses "wherein heat is delivered from the source of heat through at least one of the belts to the film material," namely, the heat from heater rolls 309, 314 is delivered through tape strands 302, 303 to prefabricated film material 300, 301 in Troy Figure 44.

44. With reference to allowed claim 10 of the Fuss '032 Application, Troy discloses "a slitting mechanism for slitting the film material along the longitudinally extending channel," namely, the knife 195 disclosed in Troy Figures 32 and 34.

45. Whether or not the Fuss '032 Application discloses any subject matter that could properly be deemed, following examination, to be an "invention" or "nonobvious subject matter," at least claim 10 of the Fuss '032 Application is worded so broadly as to leave no difference whatsoever between the subject matter sought to be patented and the prior art.

46. Because at least claim 10 of the Fuss '032 Application fails to satisfy the nonobvious subject matter condition for patentability set forth in 35 U.S.C. § 103(a), Doll and PTO had and have no statutory authority to issue a patent containing the claims allowed in the Fuss '032 Application.

47. Under 5 U.S.C. §§ 702 and 706, Pregis is entitled to judgment holding unlawful, and setting aside, the Fuss '032 Notice of Allowance and any patent that Doll or the PTO may hereafter issue on the Fuss '032 Application.

**THIRD CLAIM FOR RELIEF**

48. Paragraphs 1-47, above, are realleged and incorporated by reference as if set forth in full.

49. The Alleged Fuss Invention was originally patented to FPI under U.S. Patent No. 6,782,022 issued September 7, 2004.

50. By the Fuss '032 Application, Fuss and Yampolsky and their assignee, FPI, are seeking to re-patent the same alleged "invention" as was previously patented under U.S. Patent No. 6,786,022.

51. The subject matter claimed in the Fuss '032 Application, as amended, is inseparably involved in the matter embraced in U.S. Patent No. 6,786,022.

52. The subject matter claimed in the Fuss '032 Application, as amended, is not distinctly different and independent from that covered by U.S. Patent No. 6,786,022.

53. The subject matter claimed in the Fuss '032 Application, as amended, is not substantially different from that comprehended in U.S. Patent No. 6,786,022.

54. The subject matter claimed in the Fuss '032 Application, as amended, is not essentially distinct and separable from the invention covered by U.S. Patent No. 6,786,022 and the claims made thereunder.

55. Under 35 U.S.C. § 101 and long-standing Supreme Court precedent, defendants Doll and PTO have no statutory authority to issue more than one patent for any one "invention."

56. Because the Fuss '032 Application discloses and claims the same Alleged Fuss Invention that was previously patented under U.S. Patent No. 6,786,022, Doll and PTO had and have no statutory authority to issue a patent on the Fuss '032 Application.

57. Under 5 U.S.C. §§ 702 and 706, Pregis is entitled to judgment holding unlawful, and setting aside, the Fuss '032 Notice of Allowance and any patent that Doll or the PTO may hereafter issue on the Fuss '032 Application.

**FOURTH CLAIM FOR RELIEF**

58. Paragraphs 1-57, above, are realleged and incorporated by reference as if set forth in full.

59. On or about July 22, 2005, non-parties Andrew Perkins, Oliver M. Reyes, Phillipp Borchard, and Nicholas P. De Luca (collectively, "Perkins et al.") filed United States Application Serial No. 11/186,820 (the "Perkins '820 Application") seeking issuance of a patent for an alleged invention entitled "Apparatus for Inflating and Sealing Pillows in Packaging Cushions" (the "Alleged Perkins Invention").

60. In support of the Perkins '820 Application, Perkins et al. submitted a sworn declaration in which they stated that they "believe[d]" that they were the "original, first and joint inventor[s] . . . of the subject matter which is claimed, and for which a patent is sought on the invention entitled: "Methods and Apparatus for Inflating and Sealing Pillows in Packaging."

61. On information and belief, Perkins et al. assigned ownership of the subject matter of the Perkins '820 Application to Novus Packaging Corporation on November 10, 1999, which

subsequently assigned ownership of the subject matter of the Perkins '820 Application to defendant FPI on May 15, 2001.

62. On information and belief, attorneys or agents of defendant FPI prosecuted the Perkins '820 Application before defendant PTO, in part by transmitting papers to the PTO in Alexandria, Virginia, and soliciting agency action by the PTO.

63. On or about April 2, 2009, defendant PTO issued a Notice of Allowance (the "Perkins '820 Notice of Allowance") with respect to the Perkins '820 Application.

64. The Perkins '820 Notice of Allowance marked the consummation of the PTO's decisionmaking process with respect to the Perkins '820 Application.

65. The issuance of the Perkins '820 Notice of Allowance was an agency action that purported to determine legal rights of defendant FPI and of the public, including Pregis, with respect to the subject matter disclosed and claimed in the Perkins '820 Application.

66. The issuance of the Perkins '820 Notice of Allowance was an agency action from which legal consequences will flow, namely, the issuance to FPI of a patent for the alleged "invention" disclosed and pointed out by the allowed claims in the Perkins '820 Application.

67. The issuance of the Perkins '820 Notice of Allowance was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law as set forth below.

68. On information and belief, during its examination of the Perkins '820 Application, defendant PTO did not undertake to determine whether the subject matter disclosed and claimed in the Perkins '820 Application constituted an "invention" of "inventors" as distinct from subject matter whose conception and making was within the grasp of a person having ordinary skill in the art to which the claimed subject matter pertained.

69. On information and belief, during its examination of the Perkins '820 Application, defendant PTO did not identify any problem that confronted Perkins et al. at the time they first made the Alleged Perkins Invention.

70. On information and belief, during its examination of the Perkins '820 Application, defendant PTO did not make any inquiry into the degree of skill that may have been needed to solve any problem that confronted Perkins et al. at the time of their purported "invention" of the Alleged Perkins Invention or the subject matter disclosed and claimed in the Perkins '820 Application.

71. In the Perkins '820 Notice of Allowance, defendants Doll and PTO gave no reasons whatsoever for their allowance of the claims made in the Perkins '820 Application.

72. In a decision dated December 19, 2008, defendant PTO ruled that an Examiner of the PTO had purportedly erred in rejecting claims 1-12, 24, and 25 of the Perkins '820 Application, because "[i]n Larson [U.S. Patent No. 4,017,351] , the path through the inflation, sealing, and slitting mechanisms is a *circumferential* path" (emphasis added), with the purported result that "the Examiner erred in finding Larson's circumferential path is sufficient to meet the claimed *planar* path" (emphasis added).

73. Defendant PTO's stated reasons for allowing the Perkins '820 Application, as amended, do not constitute any competent, adequate, or legally sufficient basis on which defendants Doll or PTO could reasonably conclude that the allowed claims in the Perkins '820 Application are limited to "nonobvious subject matter" within the meaning of 35 U.S.C. § 103(a).

74. On information and belief, defendants Doll and PTO erroneously and improperly presumed that Perkins et al. were "inventors" and, as such, purportedly were presumptively entitled to patent protection for the Alleged Perkins Invention based on the mere act of filing the Perkins '820 Application.

75. On information and belief, defendants Doll and PTO issued the Perkins '820 Notice of Allowance on the basis, in whole or in part, of an erroneous supposition that the PTO is purportedly required to allow patent application claims that recite any novel machine or manufacture unless the PTO locates and produces evidence that establishes a so-called "prima facie case of obviousness."

76. Defendants Doll and PTO have failed to discharge their statutory duty, under 35 U.S.C. § 131, to examine and determine whether the claims made in the Perkins '820 Application satisfy the nonobvious subject matter condition for patentability set forth in 35 U.S.C. § 103(a).

77. Defendants Doll and PTO threaten imminently to issue a patent on the Perkins '820 Application that will, wrongfully and unlawfully, grant FPI and its assigns a purported legal right to exclude Pregis from making, using, offering for sale, or selling subject matter that, in truth and in fact, Pregis has a federal right to make and sell under federal patent law, common law, or both.

78. The conduct of defendants threatens to cause injury to Pregis that is concrete, particularized, and imminent.

79. Pregis and FPI are direct competitors in the business of making and selling air cushion products and apparatus of the general type disclosed in the Perkins '820 Application.

80. On information and belief, defendant FPI has prosecuted the Perkins '820 Application with intent to try and set up a claim on the business and assets of Pregis.

81. FPI has demanded that Pregis pay FPI millions of dollars and a running royalty of 12% on sales of Pregis-manufactured air cushion packaging products, in consideration of a "license" to make and sell subject matter disclosed and claimed in, among other things, the Perkins '820 Application.

82. FPI has repeatedly and explicitly threatened to sue Pregis for alleged infringement of the patent that Doll and the PTO threaten imminently to issue on the Perkins '820 Application if Pregis does not agree to pay for a "license" to make and sell subject matter disclosed and claimed in, among other things, the Perkins '820 Application.

83. The patent that Doll and PTO threaten imminently to issue on the Perkins '820 Application will, of its own force, operate to reduce the value of Pregis's business and property and to impair the marketability of Pregis air cushion products.

84. The patent that Doll and PTO have finally decided to issue and threaten imminently to issue on the Perkins '820 Application will, of its own force, operate to infringe, impair, and violate Pregis's federal right to make and use subject matter that federal patent law, including 35 U.S.C. § 103(a), leaves in the public domain.

85. The conduct of Doll and PTO threatens imminently to cause injury to Pregis for which Pregis has no adequate remedy in a court, apart from this judicial review action.

86. Because of the conduct of Doll and PTO, Pregis is adversely affected and aggrieved within the meaning of the Patent Act and other federal law.

## FIFTH CLAIM FOR RELIEF

87. Paragraphs 1-86, above, are realleged and incorporated by reference as if set forth in full.

88. Allowed claim 8 of the Perkins '820 Application describes an apparatus for making air-filed packing cushions, each and every one of whose recited elements is disclosed in U.S. Patent No. 3,660,189 to Troy ("Troy").

89. With reference to claim 8 of the Perkins '820 Application, Troy discloses "[a] system for manufacturing air cushions for use as packaging dunnage," namely, the system disclosed in Troy Figures 13, 31-34, and 44.

90. With reference to claim 8 of the Perkins '820 Application, Troy discloses "a longitudinally extending plastic film comprising a relatively narrow longitudinally extending channel and at least one row of generally rectangular presealed inflatable chambers each having three sides closed and a fourth side with an unsealed opening into the longitudinally extending channel," namely, the longitudinally extending plastic film disclosed in Troy Figure 13.

91. With reference to claim 8 of the Perkins '820 Application, Troy discloses "an inflation machine for inflating the inflatable chambers of the plastic film," namely, the inflation machine disclosed in Troy Figures 31-34 and 44.

92. With reference to claim 8 of the Perkins '820 Application, Troy discloses "an elongate member adapted for slidable insertion into the narrow longitudinally extending channel of the platic film," namely, the pipe 186 disclosed in Troy Figures 31-34.

93. With reference to claim 8 of the Perkins '820 Application, Troy discloses "a pair of film drive rollers that cause the plastic film to be gripped at or near the narrow longitudinally extending channel and drawn in a continuous and uninterrupted manner through inflation, sealing and slitting mechanisms in a planar path," namely, the pair of film drive rollers 304, 311 disclosed in Troy Figure 44.

94. With reference to claim 8 of the Perkins '820 Application, Troy discloses "wherein the inflation mechanism comprises a source of inflation gas and an air outlet which together cause inflation gas to be injected into the inflation side of one or more of the inflatable chambers as the film is drawn through the inflation mechanism," namely, the pipe 186 and its outlet slots 194 disclosed in Troy Figures 31 and 34.

95. With reference to claim 8 of the Perkins '820 Application, Troy discloses "wherein the sealing mechanism comprises an electrically energized heating element that generates heat to be delivered to the inflation side of one or more of the inflatable air chambers to seal the unsealed opening and trap the inflation gas within the chambers as the film is drawn through the sealing mechanism," namely, the heating elements 309, 314 disclosed in Troy Figure 44.

96. With reference to claim 8 of the Perkins '820 Application, Troy discloses "wherein the slitting mechanism comprises a blade that slices open the relatively narrow longitudinally extending channel of the plastic film to allow the film to disengage from the elongate member as the film is drawn through the slitting mechanism," namely, the knife 195 disclosed in Troy Figure 34.

97. Whether or not the Perkins '820 Application discloses any subject matter that could properly be deemed, following examination, to be an "invention" or "nonobvious subject

matter," at least claim 8 of the Perkins '820 Application is worded so broadly as to leave no difference whatsoever between the subject matter sought to be patented and the prior art.

98. Because at least claim 8 of the Perkins '820 Application fails to satisfy the nonobvious subject matter condition for patentability set forth in 35 U.S.C. § 103(a), Doll and PTO had and have no statutory authority to issue a patent containing the claims allowed in the Perkins '820 Application.

99. Under 5 U.S.C. §§ 702 and 706, Pregis is entitled to judgment holding unlawful, and setting aside, the Perkins '820 Notice of Allowance and any patent that Doll or the PTO may hereafter issue on the Perkins '820 Application.

## SIXTH CLAIM FOR RELIEF

100. Paragraphs 1-99, above, are realleged and incorporated by reference as if set forth in full.

101. The Alleged Perkins Invention was originally patented to FPI under U.S. Patent No. 6,209,286 issued November 12, 1999.

102. By the Perkins '820 Application, Perkins et al. and their assignee, FPI, are seeking to re-patent the same alleged "invention" as was previously patented under U.S. Patent No. 6,209,286.

103. The subject matter claimed in the Perkins '820 Application, as amended, is inseparably involved in the matter embraced in U.S. Patent No. 6,209,286.

104. The subject matter claimed in the Perkins '820 Application, as amended, is not distinctly different and independent from that covered by U.S. Patent No. 6,209,286.

105. The subject matter claimed in the Perkins '820 Application, as amended, is not substantially different from that comprehended in U.S. Patent No. 6,209,286.

106. The subject matter claimed in the Perkins '820 Application, as amended, is not essentially distinct and separable from the invention covered by U.S. Patent No. 6,209,286 and the claims made thereunder.

107. Under 35 U.S.C. § 101 and long-standing Supreme Court precedent, defendants Doll and PTO have no statutory authority to issue more than one patent for any one "invention."

108. Because the Perkins '820 Application discloses and claims the same Alleged Perkins Invention that was previously patented under U.S. Patent No. 6,209,286, Doll and PTO had and have no statutory authority to issue a patent on the Perkins '820 Application.

109. Under 5 U.S.C. §§ 702 and 706, Pregis is entitled to judgment holding unlawful, and setting aside, the Perkins '820 Notice of Allowance and any patent that Doll or the PTO may hereafter issue on the Perkins '820 Application.

**SEVENTH CLAIM FOR RELIEF**

110. Paragraphs 1-109, above, are realleged and incorporated by reference as if set forth in full.

111. Defendant FPI is the record owner of U.S. Patent No. 7,325,377 issued February 5, 2008 (the "Fuss '377 Patent") for an alleged "invention" entitled "Apparatus for Making Pneumatically Filled Packing Cushions" (the "Alleged Fuss Invention"), which alleged "invention" was originally patented to FPI under U.S. Patent No. 6,786,022 issued September 7, 2004 (the "2004 Fuss Patent") and is identical to the Alleged Fuss Invention disclosed in the Fuss '032 Application described above.

112. The Fuss '377 Patent is invalid under 35 U.S.C. § 103(a) in view of the Troy reference and the level of knowledge and skill in the art as of no later than January 20, 1999, for substantially the same reasons as are set forth in paragraphs 36-47, above.

113. The Fuss '377 Patent is invalid under 35 U.S.C. § 101 in view of the 2004 Fuss Patent, for substantially the same reasons as are set forth in paragraphs 50-57, above.

114. FPI has demanded that Pregis pay FPI millions of dollars and a running royalty of 12% on sales of Pregis-manufactured air cushion packaging products, in consideration of a "license" to make and sell subject matter disclosed and claimed in, among other things, the Fuss '377 Patent.

115. FPI has repeatedly and explicitly threatened to sue Pregis for alleged infringement of the Fuss '377 Patent if Pregis does not agree to pay for a "license" to make and sell subject matter disclosed and claimed in, among other things, the Fuss '377 Patent.

116. The Fuss '377 Patent operates, of its own force, to reduce the value of Pregis's business and property and to impair the marketability of Pregis air cushion products.

117. The Fuss '377 Patent operates, of its own force, to infringe, impair, and violate Pregis's federal right to make and use subject matter that federal patent law, including 35 U.S.C. § 103(a), leaves in the public domain.

118. An actual controversy exists between Pregis and FPI concerning whether Pregis, or Pregis vendees, have infringed or are infringing the Fuss '377 Patent by making, using, or selling Pregis-manufactured air cushion products.

119. Under 28 U.S.C. § 2201, Pregis is entitled to judgment declaring that making, using, or selling Pregis-manufactured air cushion products does not infringe the Fuss '377 Patent, at least because that patent is invalid.

120. Under 28 U.S.C. § 1331, Pregis is entitled to an injunction restraining FPI from maintaining patent protection for subject matter that Pregis has a federal right to use under Article I, § 8, cl. 8 of the Constitution and the Patent Act of 1952, as amended.

WHEREFORE, Pregis prays that the Court:

(i) hold unlawful, and set aside, the Fuss '032 Notice of Allowance and any patent that Doll or the PTO may hereafter issue on the Fuss '032 Application;

(ii) hold unlawful, and set aside, the Perkins '820 Notice of Allowance and any patent that Doll or the PTO may hereafter issue on the Perkins '820 Application;

(iii) declare, adjudge, and decree that the Fuss '377 Patent is invalid and not infringed by Pregis or any user of Pregis-manufactured apparatus or packaging material;

(iv) issue preliminary and permanent injunctions against FPI's maintaining patent protection for subject matter that Pregis has a federal right to use under Article I, § 8, cl. 8 of the Constitution of the Patent Act of 1952, as amended; and

(v) award such other and further relief as the Court may deem just and proper.

Dated: April 29, 2009

FRIED, FRANK, HARRIS, SHRIVER
& JACOBSON LLP

By
James W. Dabney
Henry C. Lebowitz
Tommy P. Beaudreau (VA Bar # 41272)
John F. Duffy

1001 Pennsylvania Avenue N.W.
Suite 800
Washington, D.C. 20004-2505
(202) 639-7000

Attorneys for Plaintiff
Pregis Corporation