**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **PREGIS CORPORATION,** | ) | |
| | ) | |
| Plaintiff, | ) | NO. 1:09-CV-467 (GBL/IDD) |
| | ) | |
| v. | ) | |
| | ) | |
| **JOHN J. DOLL,** | ) | |
| **UNITED STATES PATENT &** | ) | |
| **TRADEMARK OFFICE, AND** | ) | |
| **FREE-FLOW PACKAGING** | ) | |
| **INTERNATIONAL, INC.** | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT FREE-FLOW PACKAGING, INC'S OPPOSITION TO PREGIS CORPORATION'S MOTION IN LIMINE TO PRECLUDE REFERENCE TO INADMISSIBLE EVIDENCE**

**TABLE OF CONTENTS**

I.   INTRODUCTION ..................................................................................................1

II.  PROSECUTION HISTORIES RELATING TO THE PATENTS-IN-SUIT ARE
     ADMISSIBLE.........................................................................................................3

     A.   28 U.S.C. §1744 STATES THAT PAPERS RELATING TO PATENTS SUCH AS
          PROSECUTION HISTORIES "SHALL BE ADMISSIBLE IN EVIDENCE".....................3

     B.   PROSECUTION HISTORIES CONTAIN FACTS THAT ARE NOT HEARSAY BECAUSE
          THEY DO NOT GO TO THE TRUTH OF THE MATTER ASSERTED ..........................3

     C.   PROSECUTION HISTORIES ARE "PUBLIC RECORDS" FALLING WITHIN THE
          HEARSAY EXCEPTION OF FED. R. EVID. 803(8)......................................................4

     D.   PREGIS FAILS TO CITE A SINGLE CASE EXCLUDING THE PROSECUTION
          HISTORY OF THE PATENT-IN-SUIT FROM EVIDENCE ON HEARSAY GROUNDS OR
          UNDER FED. R. EVID. 408........................................................................................5

     E.   ADMITTING THE PROSECUTION HISTORIES WOULD NOT BE "HIGHLY
          PREJUDICIAL" OR "UNFAIR" ..................................................................................7

III. EVIDENCE OF "FP KNOCK OFF" IS RELEVANT AND ADMISSIBLE ..............8

IV.  IT IS NOT LEGAL ERROR TO INSTRUCT THE JURY ABOUT THE
     PRESUMPTION OF VALIDITY ..........................................................................12

V.   CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

**Cases**

*American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350 (Fed.Cir. 1984)..............4, 6

*Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374 (Fed. Cir. 1998) ......6, 7

*Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604 (Fed. Cir. 1984) .........................2

*DePuy Spine Inc. v. Medtronic Sofamor Danek,* 567 F3d 1314 (Fed. Cir. 2009) ........................11

*Ellis v. Int'l Playtex, Inc.*, 743 F.2d 292 (4th Cir. 1984)............................................................4, 5

*Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292 (4th Cir. 1984)............................................................7, 8

*Francis v. Franklin*, 471 U.S. 307 (1985)....................................................................................11

*Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1330003 (N.D. Cal May 15, 2006)..................................................................................................................................5

*Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557 (Fed. Cir. 1993)...........................................2, 5, 12

*Phillips v. AWH Corp.,* 415 F.3d 1303 (Fed. Cir. 2005).............................................................2, 9

*SRI International v. Matsushita Electrical Corp.*, 775 F.2d 1107 (Fed.Cir. 1985)......................11

**Statutes**

28 U.S.C. §1744............................................................................................................................1, 3

35 U.S.C. §103..................................................................................................................................9

35 U.S.C. §282..................................................................................................................................2

**Rules**

Fed. R. Evid. 403 .............................................................................................................................1

Fed. R. Evid. 802 .........................................................................................................................1, 3

Fed. R. Evid. 803(8).................................................................................................................1, 4, 5

I.  **INTRODUCTION**

Once again Pregis asks this Court to break new legal ground. This time, Pregis seeks to exclude public records of the United States Patent and Trademark Office ("PTO") relating to the prosecution and re-examination of the patents-in-suit (*i.e.* the "prosecution history"), arguing such records contain inadmissible hearsay under Fed. R. Evid. 802. However, Pregis fails to cite any case where a court excluded prosecution histories for the patents-in-suit from evidence as hearsay, irrelevant, or under Fed. R. Evid. 403.

Pregis's hearsay argument fails for at least three reasons. First, under 28 U.S.C. §1744, certified copies of prosecution histories "shall be admissible in evidence," and thus, are admissible even if they allegedly contain hearsay. *See* Fed. R. Evid. 802 ("Hearsay is not admissible except as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or **by Act of Congress**.") (emphasis added). Second, hearsay applies only to statements offered to prove the truth of the matter asserted. The prosecution histories are not hearsay to the extent they reflect prior art or patentability arguments the PTO considered. Third, prosecution histories are trustworthy public records setting forth the duties of a public agency (the PTO) and therefore fall within the hearsay exception of Fed. R. Evid. 803(8). Pregis's fallback argument that the prosecution histories should be excluded under Fed. R. Evid. 403 is unpersuasive. It is highly improbable that the probative value of the public record of the PTO relating to the prosecution of the patents-in-suit is so outweighed by any prejudice as to require its exclusion.

Pregis next argues that FPI should be precluded from mentioning the statutory presumption of validity (*see* Dkt. 146, at 8), and that the Court should not instruct the jury as to

1

this presumption. *See* 35 U.S.C. §282 ("A patent shall be presumed valid. Each claim of a patent (whether in independent, dependent, or multiple dependent form) shall be presumed valid independently of the validity of other claims"). Pregis fails to cite a single case holding that a court erred by instructing a jury on the presumption or erred by permitting a party to mention the presumption. Instructing juries on the presumption of validity is common and not error. *See Mendenhall*, 5 F.3d at 1564 ("The presumption of validity was correctly covered by instruction 13, as Mr. Mendenhall admits."); *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 615 (Fed. Cir. 1984) (rejecting argument that jury instruction that patent is presumed valid was erroneous, stating: "Nicolet cannot possibly show that great injustice was caused by the challenged instruction since this court has repeatedly held that the party asserting invalidity must prove facts capable of overcoming the presumption by clear and convincing evidence."). In fact, the Seventh Circuit pattern jury instructions for patent cases include an instruction on the presumption of validity.

Finally, testimony from an employee of Pregis's predecessor referring to the products accused of infringement in this case as "FP knock offs" is relevant to at least the issue of obviousness and, more specifically, the secondary consideration of "copying" by others. Pregis incorrectly focuses on the fact that the patents-in-suit *issued* years after the statements occurred. Obviousness is determined "at the time of the invention," *see* 35 U.S.C. §103, and the "time of the invention" is presumed to be the effective *filing* date of the patents-in-suit. *See Cf. Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) ("We have made clear ... that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective

2

filing date of the patent application."). The patents-in-suit claim priority through a number of applications dating back to 1999 and 2000, which is before the FP knock off statements were made.

Pregis's arguments are addressed in more detail below.

## II. PROSECUTION HISTORIES RELATING TO THE PATENTS-IN-SUIT ARE ADMISSIBLE

### A. 28 U.S.C. §1744 States that Papers Relating to Patents Such as Prosecution Histories "Shall Be Admissible in Evidence"

Rule 802 states: "Hearsay is not admissible *except* as provided by these rules or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." Fed. R. Evid. 802 (emphasis added). Pursuant to an Act of Congress, prosecution histories of the patents-in-suit are admissible in evidence and fall within the exception set forth in Rule 802. Section 1744 of the United States Code Title 28 states that "letters patent or of any records, books, papers . . . belonging to the United States Patent and Trademark Office and relating to patents . . . . *shall be admissible in evidence* with the same effect as the originals." 28 U.S.C. §1744 (emphasis added). This statute alone should dispose of Pregis's hearsay arguments. The fact that Congress enacted a statute calling for the admissibility of PTO records also rebuts Pregis's claim that admitting prosecution histories into evidence would be highly prejudicial or unfair.

### B. Prosecution Histories Contain Facts that Are Not Hearsay Because They Do Not Go to the Truth of the Matter Asserted

Prosecution histories are not hearsay because they contain numerous admissible facts that are not asserted for the truth of the matter. For example, what prior art the inventors submitted to the PTO does not go to the truth of the matter, *e.g.* what the PTO found the prior art did or did

3

not disclose. What prior art the PTO considered may be relevant to the jury's determination, as the Federal Circuit explained in *American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350 (Fed.Cir. 1984):

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents. . . . When an attacker simply goes over the same ground travelled [sic] by the PTO, part of the burden is to show that the PTO was wrong in its decision to grant the patent.

*Id.* at 1359-60. Similarly, the fact that the PTO already considered and rejected various arguments now raised by Pregis would not be submitted for the "truth" of the matter asserted, but again only to show that the PTO was aware of the arguments and rejected them.

### C. Prosecution Histories Are "Public Records" Falling Within the Hearsay Exception of Fed. R. Evid. 803(8)

Even assuming that prosecution histories contain hearsay, they fall within the public records exception to hearsay. Fed. R. Evid. 803(8) states:

> Records, reports, statements, or data compilations, in any form, of public officers or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report . . . unless the sources of information or other circumstances indicate a lack of trustworthiness.

This rule is "premised on the 'assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record.'" *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 300 (4th Cir. 1984) (quoting Fed. R. Evid. 803(8) advisory committee note).

4

The PTO "is an agency of the United States, within the Department of Commerce, and thus falls squarely within the 'public offices or agencies' requirement of Rule 803(8)." *Fresenius Medical Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2006 WL 1330003, *3 (N.D. Cal May 15, 2006) (rejecting position that PTO documents are hearsay and stating, "***Baxter does not cite a single case in support of its Motion where a court has excluded PTO documents as inadmissible hearsay***.") (emphasis added). It cannot be reasonably disputed that the prosecution history sets forth "the activities of the agency" with respect to a particular patent. Admissibility under Rule 803(8) is assumed "because of the reliability of the public agencies." *Ellis*, 745 F.2d at 300. Pregis bears the burden of opposing admission under Rule 803(8), *id.* at 301, but Pregis has failed to identify any reasoned basis for why the prosecution histories for the patents-in-suit are so untrustworthy so as to fall out of Fed. R. Evid. 803(8).

> **D.    Pregis Fails to Cite a Single Case Excluding The Prosecution History of the Patent-in-suit From Evidence On Hearsay Grounds or Under Fed. R. Evid. 403**

Neither of the cases Pregis cites supports exclusion of the prosecution histories of the patents-in-suit as hearsay or on Rule 403 grounds. In *Mendenhall v. Cedarapids, Inc.,* 5 F.3d 1557 (Fed. Cir. 1993), the Federal Circuit addressed the district court's ruling that excluded judicial records from other litigation involving the patent-in-suit. *See id.* at 1567. Notably, *Mendenhall* does not address whether prosecution histories are hearsay, or address any issue of admissibility relating thereto. To the contrary, the court in *Mendenhall* admitted into evidence the prosecution histories for the patents-in-suit. *See id.* at 1567 ("Judge Hansen clarified that his *in limine* ruling did not preclude all reference to the previous litigation, the fact of which was

5

disclosed, in any event, in the prosecution files of '904 and '905 patents which were of record [A160-161]."). Thus, *Mendenhall* supports admissibility of the prosecution histories in this case.

*Mendenhall* further shows that PTO determinations are relevant evidence for the jury to evaluate. On appeal, the Federal Circuit found no error in a jury instruction that required the jury to consider the "evidence presented to the Patent Office" and the evidence presented at trial to evaluate what deference to afford the PTO's decisions:

> Because the deference to be given the Patent Office's determination is related to the evidence it had before it, you should consider the evidence presented to the Patent Office during the reissue application process, compare it with the evidence you have heard in this case, and then determine what weight to give the Patent Office's determinations.

*Id.* at 1563-64. The Federal Circuit approved this instruction: "Instruction 14, respecting administrative correctness, is consistent with our precedent. *See American Hoist & Derrick Co. v. Sowa & Sons, Inc.,* 725 F.2d 1350, 1359-60 (Fed. Cir. 1984). We find no error." *Mendenhall.* at 1564. The only way the jury could "determine what weight to give the Patent Office's determinations" is for the jury to have the prosecution histories, which, again, were admitted in evidence in *Mendenhall*.

The other case cited by Pregis is inapposite. In *Applied Medical Resources Corp. v. U.S. Surgical Corp.*, 147 F.3d 1374 (Fed. Cir. 1998), the Federal Circuit found no abuse of discretion where a district court excluded an administrative law judge's opinion from an interference proceeding that the defendant attempted to rely upon to establish non-infringement. The administrative opinion differentiated the structure of a medical device claimed in the patent-in-suit and a "Green application" during evaluation of non-obviousness. *Id.* at 1380. The defendant attempted to argue that its accused device "is very similar to the Green patent" and sought to

6

introduce the administrative opinion to prove there are "insubstantial differences" and no infringement under the doctrine of equivalents. *See id.* at 1380. The basis of the exclusion was not hearsay, but rather the "closeness" of the Green patent to the accused device, a largely tangential issue to whether the accused device infringed the patent-in-suit. *Id.*

### E. Admitting the Prosecution Histories Would Not Be "Highly Prejudicial" Or "Unfair"

Pregis cries wolf in asserting that admitting prosecution histories into evidence will be "highly prejudicial" or "unfair." Again, Pregis cites no case holding that the admission of the prosecution history for the patents-in-suit would be so "highly prejudicial" or "unfair" to merit exclusion under Fed. R. Evid. 403.

Pregis states a truism that it did not participate in the prosecution of the patents in suit because those proceedings are *ex parte*. Every accused infringer in a patent lawsuit faces a patent that was initially issued in an *ex parte* proceeding. This fact does not establish prejudice or unfairness.

Pregis also complains that it was not permitted to cross-examine the PTO and that this fact somehow renders admission of the prosecution histories unfair. Pregis wrongly assumes that the PTO would have remembered details about the particular patents in suit from amongst the numerous patent applications the PTO handles. The policy behind the hearsay exception in Fed. R. Evid. 803(8) suggests otherwise, as that exception is premised, in part, on the belief that a public official is "unlikel[y] [to] . . . remember details independently of the record.'" *Ellis v. Int'l Playtex, Inc.*, 745 F.2d 292, 300 (4th Cir. 1984) (quoting Fed. R. Evid. 803(8) advisory committee note).

What the prior art teaches and the validity of the patents-in-suit will be contested at trial. Pregis will have the opportunity to present expert witness testimony relating to the validity of the patents-in-suit and cross-examination of FPI's expert witnesses. Any debate as to whether the PTO made a particular factual finding or legal conclusion relating to the prior art can be vetted at trial. Pregis's concerns go to the weight of the evidence, not its admissibility. The Fourth Circuit's *Ellis* decision addressing Fed. R. Evid. 803(8) and whether to exclude certain government reports is apropos:

> In our view, Playtex's concern about the methodology of the studies should have been addressed to the relative weight accorded the evidence and not its admissibility. This position, we believe, is consistent with the rationale behind the 803(8)(c) exception. Although the rule is designed to assume the admissibility of the report in the absence of indicia of untrustworthiness, there is no indication that Congress intended for the reports to escape searching examination. Allowing the jury to evaluate the reports after careful cross-examination and the presentation of expert testimony, therefore, serves both of these functions well; it permits admission without sacrificing scrutiny.

745 F.2d at 303.

The probative value of the prosecution history cannot be reasonably challenged and that value far outweighs any perceived prejudice or unfairness to Pregis. Accordingly, Pregis's fallback arguments to exclude the prosecution histories of the patents-in-suit under Fed. R. Evid. 403 fail.

### III.   EVIDENCE OF "FP KNOCK OFF" IS RELEVANT AND ADMISSIBLE

Pregis next seeks to exclude highly inconvenient testimony relating to how its predecessor copied FP's patented design and referred to its Pactiv 5000 v.1 as a "FP knock off." Pregis's efforts to distance itself in time and connection to testimony referring to machines as a

8

"FP knock off" are misplaced. FPI did not concoct the phrase "FP knock off." Rather, that terminology was adopted by Pactiv and used in a document produced in this case. That document, in turn, has been the subject of witness testimony. *See e.g.* Ex. G, 10-30-2009 Dep. Tr. of Thomas Trauscht, at 18-21. As shown in Exhibit G, many of the deposition questions refer to "FP knock off" because that is the terminology used in the documents and the vernacular Pactiv adopted. Granting Pregis's motion would have the practical effect of excluding FPI's highly relevant evidence of copying by Pactiv.

Pregis argues that "usage of the phrase 'FP knock off,' six or more years before the patent-in-suit were issued is also irrelevant to the validity of the asserted claims." Dkt. 146, at 10. Pregis's argument, however, improperly focuses on the date the patents *issued* rather than the "date of the invention," which is the appropriate date to consider for obviousness:

> A patent may not be obtained though the invention is not identically disclosed or described as set forth in section 102 of this title, if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious *at the time the invention* was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. §103(a) (emphasis added). The "time of the invention" is presumed to be the effective *filing* date of the patents-in-suit. *See Cf. Phillips v. AWH Corp.,* 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc) ("We have made clear . . . that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application."). The

effective filing dates of the patents-in-suit are in the 1999/2000 timeframe,[1] which is years before the FP knock off statements occurred. As such, the evidence of copying from the time of the invention, or shortly thereafter, is relevant to obviousness.

The Federal Circuit's opinion in *Advanced Display Systems, Inc. v. Kent State Univ.*, 212 F.3d 1272 (Fed. Cir. 2000) is on point. In *Advanced Display*, the patent-in-suit (the West patent) was filed on May 4, 1993 and issued on September 26, 1995. *Id.* at 1276. The West patent related to a polymer-free liquid crystal display ("LCD") and was assigned to Kent State University ("KSU"). In June 1993, the vice-president of the alleged infringer (ADS) obtained a copy of a written formula for KSU's LCD device. *Id.* at 1276. In early 1994, the president of a licensee to the West patent demonstrated a prototype of KSU's LCD device to ADS. *Id.* ADS "clandestinely removed the prototype" during a lunch break, "brought it into an ADS laboratory," and a group of engineers including one Mr. Zhou disassembled and photographed the prototype. *Id.* Mr. Zhou testified to his involvement in copying the prototype.[2] In determining that KSU was entitled to a new trial, the Federal Circuit held that evidence of ADS's copying—which occurred after the patent was filed but before the patent issued—was relevant to nonobviousness and the secondary consideration of copying:

---

[1] There are four patents-in-suit relating to the copied machine design. *See* Dkt. 21, at 47-53. United States Patent No. 7,526,904 issued on May 5, 2009 and claims priority to a number of earlier filed patent applications dating to January 20, 2000. Ex. A. United States Patent No. 7,536,837 issued on May 26, 2009 and claims priority to a number of earlier filed patent applications dating to March 9, 1999. Ex. B. United States Patent No. 7,325,377 and claims priority to a number of earlier filed patent applications dating to January 20, 2000. Ex. C. United States Patent No. 7,361,397 issued on April 22, 2008 and claims priority claims priority to a number of earlier filed patent applications dating to March 9, 1999. Ex. D.

[2] The testimony of Mr. Zhou occurred in trade secret case involving ADS and a different party, USA Display. *Id.* at 1277. The evidence of copying was not disclosed by ADS during discovery and KSU was made aware of Mr. Zhou's knowledge of relevant facts during the first week of trial of the patent case. *See id.* at 1280. After the jury verdict, KSU obtained a copy of the deposition transcript of Mr. Zhou and moved for a new trial based on the discovery of this new evidence.

> Zhou's deposition also provides compelling evidence of nonobviousness by illustrating ADS's wholesale copying of the claimed invention. . . . Indeed, Zhou's deposition reveals that ADS's device was virtually an identical replica of the claimed invention. Zhou testified that the Kent and ADS "chemistry mixture[s] and the way[s] they make the cell are the same." Underlying that comparison was Zhou's testimony that ADS developed its cholestric visible material by copying Kent's formula. Zhou also explained that ADS built its electrical driver by disassembling Kent's prototype, photographing its features, and then using the photograph essentially as an instruction manual.

*Id.* at 1285.  The Federal Circuit's decision in *DePuy Spine Inc. v. Medtronic Sofamor Danek,* 567 F3d 1314 (Fed. Cir. 2009) is also instructive.  In *DePuy,* the Federal Circuit found that the infringer's actions that occurred "after the '678 patent's 1989 priority date but before it was issued and published in May 1993" was evidence of copying and failure of others that supported non-obviousness.  *Id.* at 1328-29.

Next, Pregis argues that FPI is somehow trying to "prejudice Pregis in the eyes of the jury" with statements that the Pactiv 5000 is a FP knock off.  This information is relevant to obviousness and the secondary consideration of copying; it is not unfairly prejudicial as the statements came from employees of Pregis's predecessor.  *See* Pregis's Memorandum in Opposition to FPI's Motion for Partial Summary Judgment, Dkt. 119, at 11 of 38 ("Pregis and FPI have stipulated that Pregis is a successor-in-interest to the protective packaging business of Pactiv.").  As such, Pregis agreed to assume liabilities arising out of Pactiv's actions.

Furthermore, any claim of prejudice may be alleviated through proper jury instructions. *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985) (the Court presumes that jurors are "conscious of the gravity of their task" and pay close attention and carefully follow a judge's instructions); *SRI International v. Matsushita Electrical Corp.*, 775 F.2d 1107, 1128 n.7 (Fed.Cir. 1985)

11

(Markey, C.J., additional views) ("'Jurors, if properly instructed and treated with deserved respect, bring collective intelligence, wisdom, and dedication to their tasks, which is rarely equaled in other areas of public service. . . .'"). The Court may instruct the jury as to what issues the "FP knock off" statements may be relevant to, and which they are not. For example, concerns that the jury may misunderstand the "FP knock off" testimony as "bearing on the infringement issues in this case" can be addressed through proper jury instructions such as instructions stating that infringement is based on a comparison of the claims to the accused products. In fact, Pregis has requested a jury instruction to the effect that it is acceptable to copy an unpatented article, presumably to support an argument that the patents-in-suit had not issued when Pactiv made the FP knock off. *See* Ex. F, at 24 ("In general, unless an intellectual right such as a patent or copyright protects an item, it will be subject to copying."). Fairness dictates that the jury also be instructed that this same copying may be considered in evaluating nonobviousness.

For all of these reasons, the jury should be allowed to consider and weigh the FP knock off testimony as evidence of copying in assessing nonobviousness.

## IV.   IT IS NOT LEGAL ERROR TO INSTRUCT THE JURY ABOUT THE PRESUMPTION OF VALIDITY

Pregis next asserts that the Court should not instruct the jury on the presumption of invalidity or permit the parties to make statements relating to the presumption at trial. At best, Pregis cites a case that a court is not required to instruct a jury on the presumption of validity. Dkt 146, at 7 (citing *Chiron Corp. v. Genentech, Inc.*, 363 F.3d 1247, 1259 (Fed. Cir. 2004)). While the Court is not required to instruct the jury regarding the presumption, doing so would not constitute legal error. *Mendenhall v. Cedaraids, Inc.* cited by Pregis for a different

proposition, holds that it is <u>not</u> error to instruct the jury as to the presumption of validity. *See Mendenhall*, 5 F.3d at 1564 (rejecting challenge to jury instruction and stating "The presumption of validity was correctly covered by instruction 13, as Mr. Mendehall admits."); *Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 615 (Fed. Cir. 1984) (rejecting argument that jury instruction that patent is presumed valid was erroneous "Nicolet cannot possibly show that great injustice was caused by the challenged instruction since this court has repeatedly held that the party asserting invalidity must prove facts capable of overcoming the presumption by clear and convincing evidence."), *abrogated on other grounds by Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed.Cir. 1995).

Finally, a jury instruction relating to the presumption of validity is entirely appropriate. Not only is the presumption of validity a correct statement of law, *see* 35 U.S.C. §282, it is a commonly used jury instruction. In fact, the pattern jury instructions for patent cases in the Seventh Circuit include such an instruction. *See* Ex. E, Seventh Circuit Pattern Jury Instructions, Section 11.1.12, at 201; 11.3.1, at 228; http://www.ca7.uscourts.gov/Pattern_Jury_Instr/7th_civ_instruc_2009.pdf) ("The law presumes each claim of the ___ patent(s) to be valid.").

For all of these reasons, the Court should deny Pregis's motion *in limine* with respect to the presumption of invalidity.

## V.  CONCLUSION

Pregis's motion once again asks this Court to break new legal ground. Pregis cites no case where a court excluded the prosecution history of a patent-in-suit because it was hearsay or unfairly prejudicial under Fed. R. Evid. 403. It is highly improbable that admitting prosecution

13

file histories could cause any prejudice to Pregis, let alone unfair prejudice, or that the prosecution histories would cause jury confusion.  Prosecution histories are admitted into evidence as a matter of course in patent cases.  Similarly, the statutory presumption of validity is the law, and yet, Pregis asserts that it will be prejudiced by the Court instructing the jury as to the law.  This assertion is spurious at best.  Finally, the "FP knock off" statements are relevant evidence of copying at the time of the invention—a secondary consideration of nonobviousness—which the jury should be permitted to weigh.  For all of the reasons set forth herein, the Court should deny Pregis's motion *in limine*.

|  |  |
|---|---|
| Dated: January 20, 2010 | BANNER & WITCOFF, LTD<br><br>         /s/ Bradley C. Wright         <br>Bradley C. Wright (VA Bar #37463)<br>Christopher B. Roth (VA Bar #44499)<br>Joseph M. Potenza (VA Bar #15251)<br>Robert F. Altherr, Jr.<br>Nina L. Medlock<br>1100 13th Street, N.W., 12th Floor<br>Washington, DC  20005-4051<br>Telephone:  (202) 824-3000<br>Facsimile:   (202) 824-3001<br>bwright@bannerwitcoff.com<br><br>*Attorneys for Defendant*<br>*Free-Flow Packaging International, Inc.* |

## CERTIFICATE OF SERVICE

   I hereby certify that on the 20th day of January 2010, I will electronically file the foregoing DEFENDANT FREE-FLOW PACKAGING, INC'S OPPOSITION TO PLAINTIFF'S MOTION IN LIMINE TO EXCLUDE REFERENCE TO INADMISSIBLE EVIDENCE with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Tommy Beaudreau
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
1001 Pennsylvania Avenue N.W.
Suite 800
Washington, D.C. 20004-2505
(202) 639-7000
Email: tommy.beaudreau@friedfrank.com

Attorney for Plaintiff Pregis Corporation


   /s/ Bradley C. Wright
Bradley C. Wright (VA Bar #37463)
Christopher B. Roth (VA Bar #44499)
BANNER & WITCOFF, LTD.
1100 13th Street, N.W., 12th Floor
Washington, DC  20005-4051
Telephone:  (202) 824-3000
Facsimile:   (202) 824-3001
E-mail: bwright@bannerwitcoff.com

Attorney for Defendant Free-Flow Packaging International, Inc.