IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

```
PREGIS CORPORATION,                )
                                   )
            Plaintiff,             )   Civil No. 09-467
                                   )
    VS.                            )   January 22, 2010
                                   )
JAMES J. DOLL, et al.,             )
                                   )
            Defendants.            )
_____)
```

REPORTER'S TRANSCRIPT

MOTIONS HEARING

BEFORE:     THE HONORABLE GERALD BRUCE LEE
            UNITED STATES DISTRICT JUDGE

APPEARANCES:

 FOR THE PLAINTIFF: FRIED FRANK
                    BY: JAMES W. DABNEY, ESQ.
                        TOMMY BEAUDREAU, ESQ.
                        HENRY LEBOWITZ, ESQ.
 FOR THE DEFENDANT: BANNER & WITCOFF
                    BY: BRADLEY WRIGHT, ESQ.
                        ROBERT ALTHERR, ESQ.
                        CHRISTOPHER ROTH, ESQ.
                        JOSEPH POTENZA, ESQ.
                             ---

OFFICIAL COURT REPORTER: RENECIA A. WILSON, RMR, CRR
                         U.S. District Court
                         401 Courthouse Square,5th Floor
                         Alexandria, VA  22314

<u>INDEX</u>

ARGUMENT BY THE PLAINTIFF    4, 12, 29, 71, 82

ARGUMENT BY THE DEFENDANT    8, 14, 77, 88

RULING BY THE COURT          13, 61, 82

---

|  |  |  |
|---|---|---|
|  | 1 | (Thereupon, the following was heard in open |
|  | 2 | court at 10:57 a.m.) |
| 10:57:00 | 3 | THE CLERK:  1:09 civil 467, Pregis |
| 10:57:03 | 4 | Corporation versus John J. Doll, et al. |
| 10:57:17 | 5 | Would counsel come forward and please state |
| 10:57:19 | 6 | your names for the record. |
| 10:57:27 | 7 | MR. DABNEY:  James Dabney, Fried Frank, |
| 10:57:30 | 8 | counsel for the plaintiff, Pregis Corporation. |
| 10:57:34 | 9 | MR. BEAUDREAU:  Tommy Beaudreau, Fried |
| 10:57:36 | 10 | Frank, counsel for Pregis. |
| 10:57:38 | 11 | THE COURT:  Good morning. |
| 10:57:40 | 12 | MR. LEBOWITZ:  Henry Lebowitz, counsel for |
| 10:57:43 | 13 | Pregis. |
| 10:57:44 | 14 | THE COURT:  Good morning. |
| 10:57:45 | 15 | MR. WRIGHT:  Bradley Wright with Banner & |
| 10:57:49 | 16 | Witcoff, Washington D.C. for defendant Free-Flow |
| 10:57:54 | 17 | Packaging. |
| 10:57:56 | 18 | MR. ALTHERR:  Robert Altherr on behalf of |
| 10:57:59 | 19 | Free-Flow Packaging. |
| 10:58:01 | 20 | THE COURT:  Good morning, Mr. Altherr. |
| 10:58:03 | 21 | MR. POTENZA:  Joseph Potenza on behalf of |
| 10:58:06 | 22 | Free-Flow Packaging, Banner & Witcoff. |
| 10:58:09 | 23 | THE COURT:  Good morning. |
| 10:58:11 | 24 | MR. ROTH:  Christopher Roth on behalf of |
| 10:58:13 | 25 | Free-Flow Packaging. |

10:58:15  1          THE COURT:  Good morning.

10:58:18  2          Counsel, I -- there's several motions before

10:58:21  3   the Court.  I don't know if you all have discussed any

10:58:23  4   particular order, but I'm prepared to take up the

10:58:27  5   motions in the order in which they're listed on the

10:58:29  6   docket.

10:58:29  7          The first one will be the motion to strike

10:58:32  8   jury demand followed by Pregis.

10:58:40  9          MR. DABNEY:  Thank you, Your Honor.  With

10:58:45  10  regard to the -- I'm going to take up the motion to

10:58:48  11  strike jury demand.

10:58:49  12          The position of Pregis on this is fairly

10:58:53  13  well set out in our briefs.  The --

10:58:56  14          THE COURT:  It is, but you didn't tell me

10:58:57  15  about the other cases.  That bothered me.

10:59:00  16          MR. DABNEY:  The other --

10:59:01  17          THE COURT:  You didn't tell me about the

10:59:02  18  *Connell versus Sears* case.  You didn't tell me about

10:59:07  19  *Railroad Dynamics*.  Why not?

10:59:09  20          MR. DABNEY:  Your Honor, none of those cases

10:59:11  21  involve motions to strike jury demands.

10:59:13  22          What the Federal Circuit held in those cases

10:59:15  23  was that it was not error in the absence of a motion to

10:59:18  24  strike jury demand for a jury to render a verdict on the

10:59:23  25  legal question of obviousness.

| | | |
|---|---|---|
| 10:59:26 | 1 | Those cases do not address the question |
| 10:59:28 | 2 | that's before the Court.  And if a party fails to raise |
| 10:59:31 | 3 | an objection in the trial court, well, then of course, |
| 10:59:33 | 4 | they'll waive their rights on that issue. |
| 10:59:35 | 5 | But, this motion that we have filed raises |
| 10:59:38 | 6 | the question whether under the Seventh Amendment there |
| 10:59:40 | 7 | is a right to trial by jury on the legal question of |
| 10:59:45 | 8 | whether or not a patent decision by the government is a |
| 10:59:49 | 9 | valid agency action or not. |
| 10:59:51 | 10 | We believe that the Supreme Court has |
| 10:59:53 | 11 | clearly held that this is a question of law and that |
| 10:59:56 | 12 | it -- there is simply not a right to trial by jury on |
| 10:59:59 | 13 | that legal question.  It's really as straightforward as |
| 11:00:02 | 14 | that. |
| 11:00:02 | 15 | THE COURT:  All right. |
| 11:00:05 | 16 | MR. DABNEY:  So, our position, very simply |
| 11:00:07 | 17 | is that this appears to be a question that the Federal |
| 11:00:13 | 18 | Circuit has never addressed.  There is no Federal |
| 11:00:16 | 19 | Circuit precedent that raises -- that considers whether |
| 11:00:19 | 20 | as a constitutional law matter, the Seventh Amendment |
| 11:00:23 | 21 | creates a right to trial by jury on the legal question |
| 11:00:26 | 22 | of whether or not a claimed invention satisfies the |
| 11:00:30 | 23 | statutory conditions for patentability. |
| 11:00:32 | 24 | THE COURT:  So then you're the first lawyer |
| 11:00:34 | 25 | in America to identify this motion because there's a not |

11:00:37   1   a single district court case or circuit court case that

11:00:39   2   has adopted your position; is that right?

11:00:41   3            MR. DABNEY:  I don't know the answer to the

11:00:43   4   question Your Honor has raised.  I will say that --

11:00:46   5            THE COURT:  Can you describe for me a

11:00:48   6   district court or a circuit court case where a trial

11:00:51   7   judge has granted a motion like yours?

11:00:55   8            MR. DABNEY:  I cannot identify such a case.

11:00:57   9   I do not know whether such a motion as this has been

11:01:01   10   previously filed, except in one case in which I've been

11:01:04   11   involved in.

11:01:05   12            THE COURT:  All right.

11:01:07   13            MR. DABNEY:  So, it is --

11:01:08   14            THE COURT:  I'll be breaking new ground?

11:01:10   15            MR. DABNEY:  Your Honor --

11:01:11   16            THE COURT:  District judges are reluctant to

11:01:13   17   be first.  You know that.

11:01:15   18            MR. DABNEY:  Your Honor, I don't -- what I

11:01:17   19   can say is there is not any precedent either way.

11:01:24   20            The Supreme Court of the United States, when

11:01:27   21   it held in *Graham* that the ultimate question of

11:01:30   22   patentability is one of law and when the Supreme Court

11:01:34   23   in *KSR* just two years ago held that the ultimate

11:01:39   24   determination of obviousness, the ultimate judgment of

11:01:43   25   obviousness is a legal determination, those

11:01:45  1   characterizations as legal are quite important because

11:01:48  2   they naturally suggest, well, since this proceeding

11:01:52  3   involves a form of judicial review of agency action.

11:01:56  4   This is not a slip and fall case in which a jury is

11:01:59  5   asked to decide whether or not under commonly recognized

11:02:02  6   standards of care the defendant breached the duty of

11:02:05  7   care owed to the plaintiff.  That's not what we have

11:02:08  8   here.

11:02:08  9          What we have here is a question whether or

11:02:10  10  not a government agency action was valid.

11:02:13  11         And, under standard principles of

11:02:16  12  administrative law, under Supreme Court precedent

11:02:20  13  dealing with patent cases it is for judges to decide

11:02:22  14  whether the government has acted lawfully in taking

11:02:25  15  agency action.  That is what clearly distinguishes our

11:02:28  16  case from negligence and other kinds of tort cases that

11:02:33  17  have been cited as analogies in the past.

11:02:36  18         THE COURT:  All right.

11:02:37  19         MR. DABNEY:  So I'm not aware of any case

11:02:39  20  that has considered the question Rule 39(a) motion is

11:02:43  21  there a right to trial by jury on these legal questions

11:02:46  22  which everybody agrees are legal.

11:02:48  23         And, if you don't raise the objection, well

11:02:50  24  then, you can't comply.

11:02:53  25         THE COURT:  All right.  Well, I think I

11:02:54   1   understand your position.  Thank you very much.

11:02:56   2                  MR. DABNEY:  Thank you.

11:02:58   3                  MR. WRIGHT:  Good morning, Your Honor,

11:03:02   4   Bradley Wright for defendant Free-Flow Packaging.

11:03:06   5             I'd like to make three quick points before

11:03:09   6   addressing Mr. Dabney's position.

11:03:11   7             The first, as the Court has acknowledged,

11:03:13   8   this would be the first Court ever to rule on this novel

11:03:16   9   theory that Rule 39 somehow can be used to take away the

11:03:19  10   right to trial on jury for obviousness.

11:03:23  11             Secondly, Pregis has not cited a single case

11:03:25  12   where Rule 39 has been employed in the manner it

11:03:28  13   suggested here, that you take a question of obviousness

11:03:31  14   and split it into its factual components and legal

11:03:35  15   conclusion and submit one to the jury and the other to

11:03:37  16   the judge.

11:03:38  17             But finally and most importantly and which

11:03:40  18   is dispositive of this case is in order to win under its

11:03:43  19   theory, under Rule 39, this Court must first find that

11:03:47  20   there is no right to trial by jury on the question of

11:03:51  21   obviousness.

11:03:52  22             I'd like to hand out for the Court and Mr.

11:03:57  23   Dabney a document.  Mr. Dabney mentioned that he had

11:04:01  24   been involved in one other case.  What he didn't tell

11:04:03  25   you is he filed this petition for certiorari in the

11:04:07  1   Supreme Court last August.  The name of the case is

11:04:10  2   *Madella* (phonetics) *versus Kinetic Concepts*, James

11:04:14  3   Dabney, counsel of record.

11:04:15  4        This case, Your Honor, is a -- was a patent

11:04:19  5   case.  It involved the question of obviousness, and Mr.

11:04:22  6   Dabney argued that the jury should not have been

11:04:25  7   entitled to consider the question of obviousness.  And

11:04:29  8   I'll read you -- this is Mr. Dabney speaking about

11:04:31  9   Federal Circuit precedent.

11:04:34  10        "The question presented under Federal

11:04:35  11   Circuit precedent, however, a person accused of patent

11:04:38  12   infringement has no right to independent judicial as

11:04:41  13   distinct from lay jury determination of obviousness.

11:04:45  14        "The Federal Circuit has held that a jury

11:04:48  15   may render a verdict on the ultimate issue of

11:04:50  16   obviousness and the Court review of such verdict is

11:04:52  17   limited".

11:04:53  18        If you read the last sentence of the

11:04:54  19   question presented, "Federal Circuit precedent on this

11:04:59  20   point conflicts with two en banc decision of regional

11:05:02  21   circuit court".

11:05:03  22        Mr. Dabney knows what the Federal Circuit

11:05:05  23   precedent is.  He argues that it should be overturned,

11:05:08  24   and this Court doesn't have, of course, the authority to

11:05:10  25   do that.

|         |    |                                                           |
|---------|----|-----------------------------------------------------------|
| 11:05:10 | 1  | So, under Rule 39, as Mr. Dabney has |
| 11:05:14 | 2  | acknowledged, controlling precedent is there is in fact |
| 11:05:18 | 3  | the right to a jury trial on the question of |
| 11:05:21 | 4  | obviousness.  We've cited the *Railroad Dynamics* case for |
| 11:05:23 | 5  | that proposition and Pregis has not filed another case. |
| 11:05:28 | 6  | On the second point because they can't find |
| 11:05:30 | 7  | a case exactly on point, Mr. Dabney says, well, there's |
| 11:05:34 | 8  | really two sub questions.  One, obviousness is a legal |
| 11:05:37 | 9  | issue.  And number two, jury's can't decide legal |
| 11:05:42 | 10 | issues. |
| 11:05:42 | 11 | Well, he's wrong on both points.  First of |
| 11:05:44 | 12 | all, while it's true that the ultimate question of |
| 11:05:47 | 13 | obviousness is a legal issue, there are a number of |
| 11:05:49 | 14 | factual inquiries that are bound up with that. |
| 11:05:51 | 15 | And the Supreme Court in Markman expressly |
| 11:05:53 | 16 | referenced this problem on the question of claim |
| 11:05:57 | 17 | construction.  And they say that it's a better practice |
| 11:05:59 | 18 | when deciding whether to submit an issue to the jury to |
| 11:06:02 | 19 | look at historical context, including what happened in |
| 11:06:06 | 20 | England in 1791, what was the practice in England.  And |
| 11:06:10 | 21 | if there's no clear analogy, then look for modern |
| 11:06:14 | 22 | precedent. |
| 11:06:14 | 23 | We set out in our briefs the position that |
| 11:06:16 | 24 | both in England juries decided questions of validity of |
| 11:06:21 | 25 | patents.  And in modern precedent, the question of |

| | | |
|--|--|--|
| 11:06:25 | 1 | obviousness has been submitted to juries.  So under that |
| 11:06:28 | 2 | framework, Pregis's theory can be rejected. |
| 11:06:31 | 3 | Secondly, the Federal Circuit itself has |
| 11:06:34 | 4 | said that juries can decide legal issues when they are |
| 11:06:37 | 5 | properly instructed. |
| 11:06:38 | 6 | So, even though the ultimate question of |
| 11:06:40 | 7 | obviousness is a legal question, that doesn't apply |
| 11:06:44 | 8 | here. |
| 11:06:44 | 9 | And finally, a comment on the use of special |
| 11:06:48 | 10 | verdict forms.  This Court has broad discretion for |
| 11:06:50 | 11 | deciding how to structure the jury verdict forms. |
| 11:06:55 | 12 | Pregis is inappropriately tried to deprive the Court of |
| 11:06:58 | 13 | that power and force the Court to adopt a rigid |
| 11:07:01 | 14 | approach. |
| 11:07:01 | 15 | I think the -- if you look at page six of |
| 11:07:04 | 16 | Pregis's own reply brief where it says a jury in this |
| 11:07:07 | 17 | case could find hundreds if not thousands of different |
| 11:07:10 | 18 | combinations of facts as proved or not proved and could |
| 11:07:12 | 19 | assign a theoretically infinite number of weights to |
| 11:07:15 | 20 | those factual predicates. |
| 11:07:16 | 21 | This just illustrates how difficult it would |
| 11:07:19 | 22 | be for this Court to construct a jury verdict form that |
| 11:07:22 | 23 | would satisfy Pregis. |
| 11:07:23 | 24 | And one final point, Mr. Dabney keeps |
| 11:07:26 | 25 | bringing up agency action.  As this Court has already |

| | | |
|---|---|---|
| 11:07:29 | 1 | recognized that APA claim has been dismissed out of this |
| 11:07:31 | 2 | case and we've moved for a motion in limine to exclude |
| 11:07:35 | 3 | reference to unlawful agency action.  The jury is not |
| 11:07:38 | 4 | going to be reviewing agency action.  The jury's going |
| 11:07:40 | 5 | to be reviewing the validity of the patent. |
| 11:07:43 | 6 |           And so, any reference to agency action is |
| 11:07:45 | 7 | simply irrelevant to this case. |
| 11:07:47 | 8 |           THE COURT:  Thank you. |
| 11:07:48 | 9 |           MR. WRIGHT:  Thank you. |
| 11:07:53 | 10 |           MR. DABNEY:  Your Honor, I am quite familiar |
| 11:07:57 | 11 | with the *Madella* case.  The Supreme Court denied |
| 11:08:01 | 12 | certiorari in the *Madella* case after the respondents |
| 11:08:07 | 13 | strenuously argued that the issue hadn't properly been |
| 11:08:10 | 14 | raised in the trial court. |
| 11:08:11 | 15 |           This was a case in which the defendant did |
| 11:08:15 | 16 | not object to the jury rendering a verdict on this.  And |
| 11:08:19 | 17 | then after it had lost then asked for the trial court to |
| 11:08:25 | 18 | set aside the jury verdict. |
| 11:08:27 | 19 |           So, there's no inconsistencies between the |
| 11:08:30 | 20 | position that we're taking in this case and the position |
| 11:08:32 | 21 | that was taken in the Supreme Court of the United States |
| 11:08:34 | 22 | in the *Madella* case. |
| 11:08:35 | 23 |           THE COURT:  All right. |
| 11:08:38 | 24 |           MR. DABNEY:  And I can respond to each of |
| 11:08:40 | 25 | the points that have been raised. |

| | | |
|---|---|---|
| 11:08:41 | 1 | THE COURT:  Well, I've given you all a |
| 11:08:43 | 2 | chance to brief the matter, and I think you have made a |
| 11:08:45 | 3 | sufficient record. |
| 11:08:46 | 4 | MR. DABNEY:  Thank you. |
| 11:08:47 | 5 | THE COURT:  I do believe that.  All right. |
| 11:08:48 | 6 | Thank you. |
| 11:08:51 | 7 | This matter is before the Court on the |
| 11:08:54 | 8 | motion made by Pregis to strike the jury demand in part. |
| 11:09:01 | 9 | The question presented is whether or not a jury may |
| 11:09:04 | 10 | consider the validity of a patent claim as a mix |
| 11:09:11 | 11 | question of fact and law in the trial. |
| 11:09:13 | 12 | It seems to me that the jury, the right to |
| 11:09:16 | 13 | jury trial under the Seventh Amendment would encompass |
| 11:09:20 | 14 | the jury being able to hear and make a judgment about |
| 11:09:24 | 15 | whether or not the patent here was obvious.  And it |
| 11:09:32 | 16 | would follow that if it's obvious then it's invalid. |
| 11:09:37 | 17 | The case law that has been cited to me, |
| 11:09:39 | 18 | including *Railroad Dynamics* case from the Federal |
| 11:09:44 | 19 | Circuit and the *Connell versus Sears Roebuck* case from |
| 11:09:47 | 20 | the Federal Circuit all indicate it is not error to |
| 11:09:50 | 21 | submit the question of obviousness to a jury. |
| 11:09:52 | 22 | And of course, we will have appropriate |
| 11:09:54 | 23 | instructions concerning the validity and the burden of |
| 11:09:58 | 24 | proof on the party seeking to have a patent declared |
| 11:10:01 | 25 | invalid and instructions of law concerning obviousness. |

| | | |
|---|---|---|
| 11:10:05 | 1 | So for those reasons, the motion to strike |
| 11:10:07 | 2 | jury demand will be denied. |
| 11:10:09 | 3 | Let's now take up the defendant's motion in |
| 11:10:15 | 4 | limine. |
| 11:10:34 | 5 | MR. ALTHERR:  May it please the Court, it's |
| 11:10:37 | 6 | Robert Altherr on behalf of the defendant Free-Flow |
| 11:10:41 | 7 | Packaging, Your Honor. |
| 11:10:42 | 8 | If I might, I have some handouts here which |
| 11:10:47 | 9 | are part of our exhibits -- |
| 11:10:48 | 10 | THE COURT:  Okay. |
| 11:10:49 | 11 | MR. ALTHERR:  -- that I'll be referring to. |
| 11:10:51 | 12 | THE COURT:  I should say that I don't -- I |
| 11:10:53 | 13 | hope that you all don't think that you need to argue 17 |
| 11:10:59 | 14 | motions in limine because I have -- you all have briefed |
| 11:11:04 | 15 | it.  And I have some idea about which way this train is |
| 11:11:06 | 16 | headed.  But let me help you some, I guess. |
| 11:11:17 | 17 | The motions that concern me that I want to |
| 11:11:23 | 18 | hear more about would be seven and eight.  Seven, eight, |
| 11:11:34 | 19 | and nine, and one.  But, there may be more you want to |
| 11:11:44 | 20 | talk about. |
| 11:11:46 | 21 | MR. ALTHERR:  Right, Your Honor.  If I start |
| 11:11:49 | 22 | with -- I will start with motion in limine number one, |
| 11:11:52 | 23 | since that's one of the ones that you've indicated |
| 11:11:54 | 24 | there, Your Honor. |
| 11:11:54 | 25 | THE COURT:  Yes. |

11:11:55  1            MR. ALTHERR:  Our motion in limine is to
11:11:57  2   exclude patent law experts from testifying in this case
11:12:00  3   or alternatively to restrict their patent law patent,
11:12:04  4   Mr. Pedgram from providing testimony on issues of
11:12:08  5   invalidity or infringement.
11:12:10  6            THE COURT:  What would a patent law expert
11:12:11  7   tell the jury, that I think that the patent is invalid?
11:12:15  8            MR. ALTHERR:  That's exactly what they want
11:12:17  9   is to comment upon the merits of their invalidity and
11:12:23  10  noninfringement defense, say that they were good
11:12:25  11  defenses.
11:12:26  12           THE COURT:  I've not seen a lawyer do that,
11:12:28  13  have you, where a lawyer takes the stand and says, well,
11:12:30  14  I think the patent is invalid?  I think you all can
11:12:33  15  argue that.
11:12:33  16           MR. ALTHERR:  Your Honor, I've been
11:12:34  17  practicing law for a long time.  Back in the early days,
11:12:37  18  they were allowed to do that.  That -- recently no, Your
11:12:40  19  Honor.
11:12:40  20           And as a matter of fact, the -- right on
11:12:42  21  point is the *Sundance* case which we cited.  That's a
11:12:46  22  2008 Federal Circuit case where a legal expert attempted
11:12:51  23  to testify on noninfringement invalidity, and they held
11:12:56  24  it was an abuse of discretion to permit the legal expert
11:13:00  25  to testify unless he was qualified as an expert in the

11:13:03  1   pertinent art.

11:13:04  2            That's not been done here in this case.  The

11:13:07  3   expert is merely a legal expert.  He is not qualified to

11:13:10  4   testify on the technical merits.  They have a technical

11:13:13  5   expert who is qualified to do that.

11:13:15  6            In particular, in their response, they

11:13:18  7   stated that they want the legal expert to testify to

11:13:22  8   such things as whether the accused machines draw film

11:13:25  9   through a planar path.  Well, that's exactly a technical

11:13:29  10  issue.

11:13:30  11           Additionally, he had said that he was going

11:13:31  12  to testify with regard to support for that claim of

11:13:34  13  planar path which is something Your Honor has already

11:13:36  14  decided in motions for summary judgment.

11:13:38  15           Further, they wanted him to testify on the

11:13:40  16  issues about the longitudinal edge, what was originally

11:13:44  17  claimed, how it was amended and distinguished over the

11:13:47  18  prior art.

11:13:48  19           Once again, these are technical issues that

11:13:50  20  their technical expert is addressing, has addressed in

11:13:52  21  his own report.  And now all they want to do is get

11:13:57  22  attorney argument on the same issues.

11:14:00  23           Basically, in addition to this, it's an end

11:14:03  24  run around the waiver of their attorney/client privilege

11:14:08  25  with respect to any opinions upon which they relied

11:14:11  1   upon.

11:14:12  2               Our fourth motion in limine was the one to

11:14:15  3   exclude any evidence of reliance of counsel with respect

11:14:19  4   to the charge of willful infringement.

11:14:22  5               THE COURT:  They didn't identify an opinion

11:14:24  6   of counsel, didn't they?

11:14:25  7               MR. ALTHERR:  They did not identify any

11:14:27  8   opinions of counsel, that's correct, Your Honor, refused

11:14:28  9   to disclose them.

11:14:29  10              They said they consulted counsel in the

11:14:32  11  response to our interrogatory, but they refused to

11:14:35  12  disclose any of those opinion.  So we couldn't test them

11:14:39  13  during discovery to see if they were reasonable and

11:14:40  14  could be relied upon.

11:14:40  15              THE COURT:  So, it can't be a defense if you

11:14:42  16  didn't produce in discovery and subject to discovery?

11:14:44  17              MR. ALTHERR:  That's correct, Your Honor.

11:14:45  18              THE COURT:  Okay.

11:14:45  19              MR. ALTHERR:  They should not be able to

11:14:47  20  present those.  But they're trying to end run that by

11:14:50  21  using this legal expert that is going to come in and say

11:14:52  22  how good their defenses are and so to say, yes, that

11:14:57  23  they did have defenses to rely upon.  And that's just

11:15:00  24  not right.

11:15:00  25              He not only not qualified technically to

11:15:04  1  address these issues.  They have a technical person.

11:15:08  2  But then there's also this end run around, like I said,

11:15:10  3  their refusal to waive the attorney/client privilege.

11:15:13  4            THE COURT:  All right.

11:15:14  5            MR. ALTHERR:  All right.  With respect to

11:15:22  6  numbers seven, eight, and nine, Your Honor, probably the

11:15:28  7  best way would be to take number eight first.

11:15:30  8            THE COURT:  Okay.

11:15:32  9            MR. ALTHERR:  We have moved for a motion in

11:15:33 10  limine to preclude the experts in this case from

11:15:37 11  providing testimony beyond the scope of the reports

11:15:39 12  which they've submitted pursuant to the Federal Rules of

11:15:43 13  Civil Procedure 26(a).

11:15:44 14            The federal rules require the report with

11:15:46 15  all opinions and the basis and reasons for them and the

11:15:51 16  data considered.  This type of a motion is standard in

11:15:53 17  these cases.

11:15:54 18            Courts routinely exclude opinions which were

11:15:57 19  not contained in the report because they're highly

11:15:59 20  prejudicial because you didn't have a chance to obtain

11:16:02 21  discovery of those opinions.

11:16:03 22            THE COURT:  Is there some particular opinion

11:16:05 23  that you're focused on in this motion?

11:16:07 24            MR. ALTHERR:  What's that?

11:16:08 25            THE COURT:  Is there a particular item of

| | | |
|---|---|---|
| 11:16:10 | 1 | evidence that you're focused on in this motion or is it |
| 11:16:11 | 2 | just a general you want a blanket pronouncement that |
| 11:16:14 | 3 | statements that are not in the reports are not |
| 11:16:16 | 4 | admissible? |
| 11:16:17 | 5 | MR. ALTHERR:  Yes, Your Honor.  We do |
| 11:16:18 | 6 | definitely want a blanket pronouncements that the |
| 11:16:21 | 7 | experts cannot render opinions outside their expert |
| 11:16:25 | 8 | report. |
| 11:16:25 | 9 | But further, this ties in with number nine |
| 11:16:27 | 10 | also, where as you see where their damages expert, Dr. |
| 11:16:31 | 11 | Cornell, all right. |
| 11:16:32 | 12 | And as they indicated in their opposition, |
| 11:16:35 | 13 | he put in his expert reports, he reserves the right to |
| 11:16:38 | 14 | supplement his opinion based on proofs at trial. |
| 11:16:41 | 15 | Well, that's a little bit late to be |
| 11:16:43 | 16 | changing his opinion.  In Dr. Cornell's expert report, |
| 11:16:47 | 17 | he's their damages expert -- |
| 11:16:48 | 18 | THE COURT:  He said the damages were zero or |
| 11:16:50 | 19 | a hundred thousand dollars. |
| 11:16:51 | 20 | MR. ALTHERR:  That's exactly right, Your |
| 11:16:53 | 21 | Honor. |
| 11:16:53 | 22 | THE COURT:  And he wants to do calculation |
| 11:16:54 | 23 | based on what he hears in court. |
| 11:16:56 | 24 | MR. ALTHERR:  And what he wants to do is -- |
| 11:16:57 | 25 | he didn't give his methodology for how he came up with |

11:17:00  1  this, all right.

11:17:00  2        He wants to take evidence that some fact

11:17:03  3  witnesses going to put in, all right, and then try to

11:17:05  4  come up with a new calculation at court.

11:17:06  5        THE COURT:  So he would do that while we're

11:17:08  6  in trial?

11:17:09  7        MR. ALTHERR:  That exactly --

11:17:10  8        THE COURT:  And that's the first time you

11:17:11  9  would hear about that?

11:17:11  10       MR. ALTHERR:  That would be absolutely the

11:17:13  11  first time we would hear about it, Your Honor.

11:17:14  12       THE COURT:  Okay.

11:17:15  13       MR. ALTHERR:  And so, it's definitely not

11:17:17  14  fair.  They did not put forward specific dollars before,

11:17:19  15  so they should be stuck with the dollars he set forth in

11:17:22  16  his report.

11:17:23  17       THE COURT:  All right.

11:17:24  18       MR. ALTHERR:  With regard to the motion in

11:17:28  19  limine number seven, that goes to lay opinion testimony

11:17:31  20  on the issues of infringement and validity.

11:17:34  21       Mr. Wetsch who is their vice-president in

11:17:38  22  charge of product development was not designated in

11:17:41  23  accordance with your scheduling order of designating

11:17:44  24  experts as a person that would be providing expert

11:17:47  25  testimony.

| | | |
|---|---|---|
| 11:17:47 | 1 | Therefore, he's limited to producing lay |
| 11:17:50 | 2 | testimony, as opinion testimony. |
| 11:17:52 | 3 | And under Rule 701, lay testimony -- opinion |
| 11:17:58 | 4 | testimony has to be rationally based upon perception and |
| 11:18:01 | 5 | not scientific, technical or other specialized |
| 11:18:06 | 6 | knowledge. |
| 11:18:06 | 7 | Well, an opinion on validity and |
| 11:18:10 | 8 | infringement goes beyond lay testimony in that it does |
| 11:18:13 | 9 | require scientific, technical knowledge.  And therefore, |
| 11:18:15 | 10 | since he wasn't identified as a witness -- and they do |
| 11:18:17 | 11 | have a technical expert who they have identified who has |
| 11:18:20 | 12 | given his opinions, this is merely duplicative also to |
| 11:18:25 | 13 | permit him to go out and testify. |
| 11:18:27 | 14 | Additionally, we have the issue which ties |
| 11:18:29 | 15 | back to our motion in limine about excluding defenses |
| 11:18:35 | 16 | that were not planned or otherwise disclosed. |
| 11:18:38 | 17 | We have -- Mr. Wetsch could get in there and |
| 11:18:43 | 18 | raise all type of noninfringement or invalidity offenses |
| 11:18:46 | 19 | which have never been asserted in any pleadings, have |
| 11:18:49 | 20 | never been responded to in our response to our |
| 11:18:51 | 21 | interrogatories. |
| 11:18:52 | 22 | We have interrogatories number six and |
| 11:18:54 | 23 | number eight.  We specifically requested them to state |
| 11:18:58 | 24 | what the basis was for their noninfringement contentions |
| 11:19:01 | 25 | and all the facts that supported that and then also to |

11:19:04  1   state what their invalidity positions were and the facts

11:19:10  2   which supported those.

11:19:11  3            THE COURT:  Well, let me ask you this.  The

11:19:12  4   opposition from Pregis says that Mr. Wetsch would

11:19:19  5   address factual questions concerning differences between

11:19:22  6   the claimed subject matter and prior art, the level of

11:19:27  7   skill in the art.

11:19:28  8            Are those things fact or statements of

11:19:30  9   opinion?

11:19:31 10            MR. ALTHERR:  Those are opinion, Your Honor,

11:19:32 11   because he has to compare the claims to the accused

11:19:37 12   device, right, and that is his opinion.

11:19:39 13            Now, he can say how that accused device

11:19:41 14   operates.  That's a fact.  I don't have any problem with

11:19:43 15   him saying that.  He can talk about the structure of the

11:19:48 16   accused device.  He just can't compare it to the claims.

11:19:51 17   He can't compare the claims to prior art.  That's

11:19:54 18   opinion.  That's the points that we're trying to stress

11:19:56 19   that he should not be allowed to do, Your Honor.

11:19:59 20            THE COURT:  All right.

11:20:03 21            MR. ALTHERR:  I believe that takes care of

11:20:05 22   seven, eight, nine and one.

11:20:06 23            I do have one I definitely wanted to address

11:20:08 24   with you, Your Honor.

11:20:09 25            THE COURT:  All right.

| | | |
|---|---|---|
| 11:20:10 | 1 | MR. ALTHERR:  Actually, two other.  The |
| 11:20:12 | 2 | first -- the first one being the motion in limine number |
| 11:20:16 | 3 | six to preclude test -- testimony regarding derivation |
| 11:20:21 | 4 | defense, including the testimony of Pieter Aquarius. |
| 11:20:24 | 5 | All right.  Your Honor, if -- what I handed |
| 11:20:27 | 6 | you, this hand out, the first page of it is your |
| 11:20:31 | 7 | scheduling order which you signed.  And if I direct your |
| 11:20:36 | 8 | attention down towards the bottom of it, the underlying |
| 11:20:39 | 9 | portions and in particular, the end of the second line |
| 11:20:41 | 10 | that's underlined where it says, "no person may testify |
| 11:20:44 | 11 | whose identity being subject to disclosure or timely |
| 11:20:48 | 12 | requested in discovery was not disclosed in time to be |
| 11:20:51 | 13 | deposed or to permit the substance of his knowledge and |
| 11:20:54 | 14 | opinions to be ascertained". |
| 11:20:56 | 15 | Now, if you go to the next page, Your Honor, |
| 11:21:00 | 16 | this is Pregis's response to defendant's first set of |
| 11:21:04 | 17 | interrogatories. |
| 11:21:06 | 18 | And, as you could see on the last page it |
| 11:21:09 | 19 | shows you -- they gave us this response in August.  We |
| 11:21:12 | 20 | requested this information in July. |
| 11:21:14 | 21 | But, on interrogatory number 13, we |
| 11:21:17 | 22 | requested that they identify each person that Pregis may |
| 11:21:21 | 23 | call to testify as a fact or expert witness or to |
| 11:21:24 | 24 | provide an affidavit of declaration of at any stage of |
| 11:21:26 | 25 | this action and for each such person to state the |

11:21:29  1    substance of the expected testimony, affidavit or

11:21:31  2    declaration.

11:21:32  3             Their answer was they had not yet determined

11:21:35  4    what fact or expert witnesses it may call to testify at

11:21:38  5    trial.

11:21:38  6             The first time that we were advised that

11:21:41  7    Mr. Aquarius was going to be a witness in this case was

11:21:46  8    after the close of discovery.

11:21:48  9             For that reason alone, all his testimony

11:21:51  10   should be stricken.

11:21:53  11            Further, as I told you, we had contention

11:21:57  12   interrogatories to them, contention interrogatories

11:21:59  13   number eight regarding identifying the complete factual

11:22:02  14   basis for any contention the claims were invalid and

11:22:05  15   including the contentions as to the level of skill and

11:22:08  16   the facts underneath it.  And then interrogatory number

11:22:13  17   six on noninfringement was the same thing.  They provide

11:22:16  18   the contentions for noninfringement and all the facts

11:22:19  19   underlying that.

11:22:20  20            They never identified Mr. Aquarius or any of

11:22:23  21   his testimony or any of the things that they're

11:22:25  22   asserting to that they subsequently have identified in

11:22:30  23   deposition designations.

11:22:31  24            This is complete trial by ambush.  It is a

11:22:33  25   complete surprise.  Had we known by this, that they were

11:22:35  1   going to do this way back, then we would have deposed

11:22:39  2   Mr. Aquarius.  He's not available.  It's a week from

11:22:42  3   trial and therefore all that testimony should be

11:22:44  4   stricken.

11:22:44  5             Your Honor, I would also like to go into our

11:22:52  6   motion in limine number five.  And, this was that any

11:23:00  7   invalidity, noninfringement nonenforceable patents not

11:23:07  8   pled.

11:23:07  9        THE COURT:  Let me ask you to focus here.

11:23:09  10  It wasn't clear to me what you were trying to exclude.

11:23:11  11  What are you trying to exclude?

11:23:11  12            MR. ALTHERR:  All right.  Your Honor --

11:23:12  13            THE COURT:  When I say that, I mean, is

11:23:14  14  there some specific testimony of a witness or evidence

11:23:17  15  that you have in mind?

11:23:19  16            MR. ALTHERR:  Yes, Your Honor.  For example,

11:23:24  17  in fact, I may have to ask for clarification.

11:23:26  18            One of the issues in our motion for summary

11:23:28  19  judgment was whether or not there were intervening

11:23:31  20  rights under Section 252.  And, you issued an order on

11:23:36  21  that which I have to ask you for a little bit of

11:23:39  22  clarification.  You said --

11:23:41  23            THE COURT:  You said that there are no

11:23:42  24  reissued patents, something about no reissued patents.

11:23:46  25            MR. ALTHERR:  Yes, sir.  What the Court said

11:23:47   1   was the Court denies HP's motion for summary judgment on

11:23:51   2   the motion of whether 35 USC 252 precludes FPI from

11:23:57   3   recovering damages for infringement of the Perkins '837

11:23:58   4   patent before May 6, 2008 because this statute is

11:24:02   5   irrelevant in this case, as none of the patents asserted

11:24:05   6   here are reissued patent.

11:24:07   7          Now, that was a specific reason that we

11:24:09   8   asked you to grant the motion.  I just didn't know if it

11:24:11   9   should be that the motion was granted, that 252 and

11:24:15   10  intervening rights is not an issue in the case because

11:24:19   11  there are no reissued patents in the case.

11:24:23   12         THE COURT:  All right.  I have to go back

11:24:24   13  and revisit that.  Thank you.

11:24:26   14         MR. ALTHERR:  But, along that lines -- in

11:24:28   15  their opposition for the very first time, they -- Pregis

11:24:32   16  raised the defense of latches and also they said or

11:24:37   17  other equitable defenses which they said would serve as

11:24:40   18  the basis for intervening rights.

11:24:42   19         They had never pled those defenses.  They

11:24:44   20  were never otherwise raised during the discovery period.

11:24:47   21  The first time we heard about it was long after the

11:24:49   22  close of discovery when they opposed our motion for

11:24:52   23  summary judgment.

11:24:52   24         So, based on that, that's one of the types

11:24:55   25  of defenses that we were talking about, that they

11:24:59  1   shouldn't be able to raise them.  And even if they could

11:25:02  2   raise them, they shouldn't raise them to the jury

11:25:05  3   because they're equitable concerns.

11:25:07  4          Other defenses that we were concerned with

11:25:09  5   respect to motion in limine number five was that whether

11:25:14  6   or not they were going to raise any other issues of

11:25:16  7   prior art which they haven't already disclosed to us.

11:25:19  8          Their experts have set forth certain bases

11:25:21  9   of prior art.  They've identified six references in

11:25:24  10  their motions for -- in their responses to

11:25:27  11  interrogatories they've identified specific pieces of

11:25:29  12  prior art.  But then in their statement under the --

11:25:33  13  required by the patent statute be submitted 30 days

11:25:36  14  before trial, they cited prior art that includes every

11:25:40  15  one of the patents that was cited in the prosecution

11:25:44  16  history, all of the deposition testimony from the prior

11:25:47  17  litigation that was involved.

11:25:48  18          And so I mean, potentially, there's all

11:25:51  19  different kinds of prior art that they may be trying to

11:25:54  20  bring in but we have never had the opportunity to take

11:25:56  21  any discovery with respect to.

11:25:57  22          This derivation defense which I suggest are

11:26:02  23  regard to Mr. Aquarius was one.  Then they also

11:26:06  24  suggested that you know, he would -- Mr. Aquarius's

11:26:09  25  testimony would be a -- a defense to infringement saying

11:26:14  1    that they copied something that wasn't patented.

11:26:16  2               Well, they never raised that in response to

11:26:18  3    their interrogatories at any time during discovery.  And

11:26:21  4    anticipation as opposed to obviousness, that's never

11:26:24  5    been asserted.

11:26:25  6               And, so these are the things we're concerned

11:26:27  7    that they are going to try to raise defenses which have

11:26:30  8    never been subject to discovery.  And we think that's

11:26:33  9    improper.  It's trial by ambush, and they should be

11:26:36  10   precluded from being prevented to present that.

11:26:38  11              THE COURT:  All right.

11:26:44  12              MR. ALTHERR:  Your Honor, if I can just --

11:26:51  13              THE COURT:  As I said, you don't have to

11:26:53  14   argue every single one of these.

11:26:55  15              MR. ALTHERR:  Well, it's just two others,

11:26:57  16   the comparison with products, and that's very clear from

11:27:01  17   the cases we've cited that there's no basis for --

11:27:05  18              THE COURT:  Compare claims for an accused

11:27:07  19   device -- compare claims with the accused device.

11:27:11  20              MR. ALTHERR:  That's correct, Your Honor.

11:27:12  21              THE COURT:  I understand that.

11:27:13  22              MR. ALTHERR:  And then also the issue that

11:27:14  23   they raised about Pregis's patent.  Pregis cited a case

11:27:17  24   which is the *Zygo* case saying that the existence of a

11:27:20  25   patent is relevant determination of infringement.

| | | |
|---|---|---|
| 11:27:23 | 1 | That case if you read it, Your Honor, you'll |
| 11:27:25 | 2 | see it's only with respect to infringement being |
| 11:27:27 | 3 | asserted under the doctrine of equivalence saying that |
| 11:27:31 | 4 | if the -- there was a patent issued on it and it wasn't |
| 11:27:35 | 5 | obvious over the prior art, therefore it was a |
| 11:27:38 | 6 | substantial difference.  And substantial difference |
| 11:27:40 | 7 | applies to doctrine of equivalence. |
| 11:27:43 | 8 | With respect to the '134 patent, the patent |
| 11:27:46 | 9 | we're talking about here, there is no issue of doctrinal |
| 11:27:49 | 10 | equivalence.  We have asserted infringement literally by |
| 11:27:51 | 11 | the 5000 and therefore, they should not be permitted to |
| 11:27:56 | 12 | assert the fact that they got a patent or suggested it, |
| 11:27:59 | 13 | avoids infringement. |
| 11:28:02 | 14 | And then, I guess the only other final thing |
| 11:28:05 | 15 | they had, Your Honor, is for them not to suggest any |
| 11:28:09 | 16 | other relief that plaintiff -- or that Free-Flow |
| 11:28:15 | 17 | Packaging is seeking to the jury because that could lead |
| 11:28:18 | 18 | the jury to decide to give an artificially low award as |
| 11:28:21 | 19 | in may triple it, that or take other equitable |
| 11:28:24 | 20 | considerations in mind. |
| 11:28:25 | 21 | And, that pretty well covers the ground |
| 11:28:28 | 22 | work, Your Honor. |
| 11:28:28 | 23 | THE COURT:  Thank you very much. |
| 11:28:34 | 24 | MR. DABNEY:  Your Honor, let me start with |
| 11:28:42 | 25 | their motion in limine number seven which has to do with |

11:28:48  1  Tom Wetsch.

11:28:50  2          As Your Honor is aware, Mr. Wetsch is

11:28:54  3  Pregis's vice-president of global product development.

11:28:57  4  Mr. Wetsch was the company's 30(b)(6) designee on the

11:29:03  5  issues of infringement and validity.  Mr. Wetsch was

11:29:07  6  deposed for a full day.  There has been total disclosure

11:29:11  7  of what Mr. Wetsch knows and he was actually --

11:29:13  8          THE COURT:  So, is he being called as a fact

11:29:15  9  witness or an expert witness?

11:29:17  10         MR. DABNEY:  He is being called as a fact

11:29:19  11  witness to the extent that he -- the distinction between

11:29:23  12  opinion and fact is one that's a little slippery here.

11:29:28  13         THE COURT:  We want to avoid any slippage.

11:29:30  14  It seems to me that if you're asking him to compare the

11:29:34  15  accused device with the claims, that would be an

11:29:40  16  opinion, would it not?

11:29:41  17         MR. DABNEY:  I assume that -- I don't

11:29:44  18  believe that's necessarily correct because Your Honor's

11:29:46  19  going to construe the claims and then the fact finder is

11:29:49  20  going to be asked to decide whether or not the legal

11:29:52  21  definition of the right as provided by the Court is or

11:29:55  22  is not found in a particular product.  So I would say

11:29:57  23  that is not necessarily opinion testimony.

11:30:00  24         But, assuming for purposes of argument that

11:30:02  25  it is, under Rule 26, Mr. Wetsch, if he is shown by his

11:30:08  1  testimony to be qualified and in the position to render

11:30:14  2  expert testimony, there is nothing in Rule 26 that

11:30:16  3  precludes an employee of the company from being an

11:30:19  4  expert.  It happens in trials all the time.

11:30:20  5         THE COURT:  But experts are identified under

11:30:22  6  Rule 26 and their detailed information about their

11:30:27  7  opinions and the factual basis for it is also disclosed.

11:30:30  8         MR. DABNEY:  Your Honor, that is only as to

11:30:33  9  specially retained experts who are not otherwise

11:30:37  10  employed by the company.

11:30:38  11         Rule 26 and those -- the experts who are

11:30:41  12  subject to that Rule 26 have provided reports and

11:30:43  13  there's absolute and total disclosure.

11:30:45  14         THE COURT:  So your view is that Mr. Wetsch

11:30:47  15  is being called to offer opinions.

11:30:50  16         MR. DABNEY:  To the extent that his

11:30:51  17  testimony is characterized as opinion testimony, we

11:30:54  18  believe that we have made full disclosure of what he

11:30:57  19  knows and had full opportunity to examine him.  And to

11:31:00  20  the extent under the rules of evidence he is qualified

11:31:02  21  as an expert, that he's fully entitled to testify as

11:31:06  22  such.

11:31:07  23         There's been absolutely no failure of

11:31:09  24  disclosure of him, what he knows or any noncompliance

11:31:13  25  with Rule 26.  I don't understand.

11:31:16  1          I mean, this is a -- Mr. Wetsch, if he is

11:31:19  2   shown to be competent, he should be permitted to testify

11:31:21  3   in a manner that is compliant with the Federal Rules of

11:31:25  4   Evidence.

11:31:25  5          THE COURT:  Well, that's not telling me what

11:31:26  6   you think he's going to testify to.

11:31:28  7          MR. DABNEY:  Well, let me give you what's

11:31:29  8   really going on here, Your Honor, because it relates

11:31:32  9   to -- it relates to the damages question that's been

11:31:35  10  brought up.

11:31:36  11         What happened in this case was that the

11:31:41  12  defendant took the view that its -- the claims in its

11:31:47  13  patent had a certain meaning, and that position was

11:31:51  14  persisted in through the summary judgment, in the expert

11:31:54  15  reports, in the deposition testimony and so on.

11:31:57  16         And in reliance on the defendant's

11:32:01  17  characterization of its own claims, one of the things

11:32:05  18  that Pregis has said from the beginning is these claims

11:32:09  19  are not valuable because we don't need the subject

11:32:13  20  matter that you say is your patented invention.

11:32:16  21         So one of the things that happened in this

11:32:17  22  case is that Pregis built and timely disclosed to the

11:32:21  23  other side a machine.  And it's Pregis's position that

11:32:26  24  this machine is a noninfringing machine.  The defendant

11:32:29  25  and their experts have inspected the machine, and this

```
11:32:34   1   machine will be proffered in evidence to show, among
11:32:37   2   other things that a reasonable royalty in this case
11:32:40   3   should be set very, very low because Pregis had
11:32:44   4   noninfringing alternatives available to it at all times.
11:32:47   5            Now, the only person who is fully
11:32:49   6   acknowledgeable about the machine and how long it took
11:32:52   7   to make and what its performance is is Mr. Wetsch.
11:32:56   8            THE COURT:  Well, the things you just said,
11:32:57   9   how long it took to make, the decision to make it, the
11:33:00  10   design of it are factual judgments that the
11:33:02  11   vice-president for research could make.
11:33:04  12            But, if you ask him to compare the device
11:33:09  13   with the claims, that would be the subject matter of
11:33:15  14   expert testimony to me.
11:33:16  15            MR. DABNEY:  Well, I'm not --
11:33:17  16            THE COURT:  Because he's not an engineer.
11:33:19  17   He's not a scientist, is he?
11:33:21  18            MR. DABNEY:  Yes, he is.  Yes, he is.
11:33:23  19            THE COURT:  But he's not the person who
11:33:24  20   actually created the machine, is he?
11:33:26  21            MR. DABNEY:  He participated in the design
11:33:27  22   of the machine directly under his supervision, yes.
11:33:29  23            THE COURT:  I'm sure of that because he's
11:33:31  24   the vice-president for research and development.
11:33:33  25            My question is his name is not Fuss, is it?
```

11:33:38  1          MR. DABNEY:  No.

11:33:38  2          THE COURT:  All right.

11:33:41  3          MR. DABNEY:  So, what's going to happen then

11:33:43  4    is, Your Honor is going to construe the claims.  And so

11:33:45  5    the jury and the parties are going to be provided with a

11:33:47  6    definition of what the target is.  And one of the

11:33:50  7    questions that is going to be asked -- people are going

11:33:53  8    to be asked is, is what Your Honor says is patented, is

11:33:57  9    it found in this machine?

11:33:59  10          I don't know who would be more competent or

11:34:01  11   qualified than Mr. Wetsch, for example, to answer that

11:34:05  12   question, to the extent of his knowledge.

11:34:07  13          Now, he's of course, got to be subject to

11:34:10  14   cross-examination.  The defendant has seen this machine.

11:34:12  15   And they can -- you know, I don't think there's any

11:34:16  16   dispute.  The defendant haven't argued that this machine

11:34:18  17   is encompassed by its claims although we were thinking

11:34:22  18   that this was why the jury instructions were written as

11:34:24  19   they were.  That's why we made the motion for claim

11:34:27  20   construction because it seems like they were trying to

11:34:29  21   make a last minute switch after they saw the revised

11:34:32  22   machine.

11:34:32  23          But, what I believe this argument about

11:34:34  24   Mr. Wetsch is going on is they want to prevent

11:34:37  25   Mr. Wetsch from describing what he did and why he

11:34:42  1    believes.  And there's been no contrary assertion from

11:34:46  2    the other side that this machine that was made is not

11:34:49  3    described by the claims as the other side has

11:34:52  4    interpreted them.

11:34:52  5           So, there doesn't seem to be any dispute

11:34:55  6    that Mr. Wetsch, if he were qualified by experience,

11:34:59  7    training, skill in the art and training that he could

11:35:03  8    qualify as a person skilled in the art and therefore a

11:35:06  9    person to whom these claims are potentially addressed.

11:35:10  10   So there's no question as to his competence.  If he

11:35:12  11   weren't competent, then of course, he couldn't address

11:35:14  12   this.

11:35:14  13          There's no obligation in Rule 26 that

11:35:16  14   company employees serve expert reports because they're

11:35:20  15   outside the scope of Rule 26.

11:35:22  16          They had --

11:35:25  17          THE COURT:  All right, well --

11:35:26  18          MR. ALTHERR:  I don't think that there's any

11:35:28  19   basis in the federal rules or in the rules of this Court

11:35:31  20   for preventing a competent witness from entering either

11:35:34  21   quote, "lay" unquote testimony or expert opinion

11:35:39  22   testimony if he is, in fact, an expert.

11:35:40  23          THE COURT:  Well, I think that it's very

11:35:42  24   difficult for me to know in a vacuum without having read

11:35:45  25   the deposition of what questions we ask that would fall

11:35:49  1   within the purview of offering legal opinions from this

11:35:55  2   witness and whether it would qualified as lay opinion

11:35:58  3   testimony.  That's one of the difficulties I have with

11:36:01  4   this particular motion.  But, I understand your

11:36:06  5   position.

11:36:06  6           Let me ask you to turn to the motion

11:36:08  7   involving Mr. Aquarius.  Was he identified?

11:36:12  8           MR. ALTHERR:  Your Honor, he was not only

11:36:14  9   identified, Mr. Aquarius was deposed in the earlier

11:36:17  10  litigation between FP and Pactiv.

11:36:21  11           THE COURT:  I'm sorry.  My question was

11:36:23  12  imprecise.  Was he identified in response to discovery?

11:36:27  13           MR. ALTHERR:  Was he identified in response

11:36:29  14  to discovery?  I -- I do not believe that in our

11:36:36  15  interrogatory answers -- I'd have to go back and look.

11:36:39  16  I do not believe his name was mentioned until after we

11:36:42  17  deposed Mr. Graham with regard to his testimony.

11:36:44  18           THE COURT:  And, was Mr. Aquarius identified

11:36:49  19  before the discovery cutoff such that he could deposed?

11:36:53  20           MR. DABNEY:  Certainly, and he was deposed.

11:36:56  21           THE COURT:  All right.

11:36:56  22           MR. DABNEY:  The position -- both sides in

11:36:58  23  this case, both sides in the case, Your Honor, on the

11:37:02  24  last day of discovery identified in their pretrial

11:37:06  25  submissions -- this was like on November the 13th, both

11:37:09   1   sides identified deponents from the earlier case between

11:37:17   2   Pactiv and Pregis.

11:37:18   3          Mr. Aquarius was named in a patent

11:37:21   4   application that disclosed one of the machines which is

11:37:24   5   the object of all of this knock-off testimony that

11:37:27   6   they've brought up in this case.

11:37:29   7          And, we deposed Mr. Graham about him.

11:37:32   8   There's no doubt about who Mr. Aquarius was.  Mr.

11:37:36   9   Aquarius was deposed and fully cross-examined by this

11:37:39   10   company on this same issue in this case -- in the

11:37:43   11   earlier case.

11:37:43   12          So the only thing that's coming in is the

11:37:45   13   deposition transcript under Rule 804 that was taken in

11:37:49   14   the Pactiv case.

11:37:51   15          Now --

11:37:52   16          THE COURT:  What's in that deposition?

11:37:55   17          MR. DABNEY:  What's in the deposition is the

11:37:57   18   description of the fact that the -- the defendant in

11:38:03   19   this case markets a machine in the United States that's

11:38:08   20   known as the EZ1 machine.  And there is a major dispute

11:38:12   21   in this case over whether the EZ1 machine was, in fact,

11:38:17   22   invented and is properly argued by them to embody the

11:38:22   23   patented inventions of the Fuss and Perkins patents.

11:38:26   24          And, what Mr. Aquarius testified to and what

11:38:30   25   we have in the record is that he was the owner of the

| | | |
|---|---|---|
| 11:38:36 | 1 | machine maker who actually designed and made the EZ1 |
| 11:38:41 | 2 | machine, that it was supplied to Free-Flow and that he |
| 11:38:44 | 3 | was named as a coinventor with a Free-Flow employee of |
| 11:38:51 | 4 | this machine. |
| 11:38:52 | 5 | And this was filed by Free-Flow with the |
| 11:38:56 | 6 | patent office.  And there was a litigation that was |
| 11:39:00 | 7 | brought by Mr. Aquarius's company against Free-Flow |
| 11:39:04 | 8 | because they contended that Free-Flow was taking credit |
| 11:39:10 | 9 | for work that had been done by Mr. Aquarius.  And so, |
| 11:39:14 | 10 | there was a deposition taken in the earlier case in |
| 11:39:18 | 11 | which Mr. Aquarius told how he had been the one who had |
| 11:39:23 | 12 | been giving information to Free-Flow and that he |
| 11:39:29 | 13 | objected when Free-Flow took out patents that were |
| 11:39:33 | 14 | trying to cut him and his company out. |
| 11:39:35 | 15 | THE COURT:  All right. |
| 11:39:37 | 16 | Let me do this.  We're going to take about a |
| 11:39:41 | 17 | ten-minute recess and we'll come right back.  Thank you. |
| 11:47:54 | 18 | MR. DABNEY:  Sure. |
| 11:47:54 | 19 | (Court recessed at 11:39 a.m. and reconvened |
| 11:50:39 | 20 | at 11:50 a.m.) |
| 11:50:39 | 21 | THE CLERK:  09 civil 467 Pregis continued. |
| 11:50:46 | 22 | THE COURT:  Mr. Dabney, I want to be clear. |
| 11:50:48 | 23 | You were telling me that Mr. Aquarius was deposed in the |
| 11:50:53 | 24 | prior litigation? |
| 11:50:54 | 25 | MR. DABNEY:  That's correct. |

| | | |
|---|---|---|
| 11:50:55 | 1 | THE COURT:  And, that your identification of |
| 11:50:58 | 2 | him as a witness in this case occurred at the time of |
| 11:51:03 | 3 | the final pretrial conference when you exchanged witness |
| 11:51:06 | 4 | list? |
| 11:51:06 | 5 | MR. DABNEY:  I believe both sides identified |
| 11:51:09 | 6 | deponents from the earlier litigation in I think around |
| 11:51:15 | 7 | November 13th. |
| 11:51:16 | 8 | But during discovery, both sides had |
| 11:51:18 | 9 | exchanged to one another the deposition transcripts that |
| 11:51:22 | 10 | had been taken in that earlier case. |
| 11:51:24 | 11 | So it's not -- |
| 11:51:25 | 12 | THE COURT:  Well, where would Free-Flow know |
| 11:51:30 | 13 | that your plan was to assert that this EZ1 device was |
| 11:51:39 | 14 | invented by Mr. Aquarius and that somehow affected the |
| 11:51:45 | 15 | issue of infringement in this case? |
| 11:51:47 | 16 | MR. DABNEY:  They would know that because |
| 11:51:49 | 17 | they asserted it in a patent application that Free-Flow |
| 11:51:53 | 18 | filed with the patent office and that was the subject of |
| 11:51:55 | 19 | the cross-examination of Mr. Graham which was another |
| 11:51:57 | 20 | part of their motion. |
| 11:51:57 | 21 | THE COURT:  So then you never told them that |
| 11:51:59 | 22 | it was a part of your defense; is that right? |
| 11:52:01 | 23 | MR. DABNEY:  No, that's not accurate at all, |
| 11:52:03 | 24 | Your Honor. |
| 11:52:03 | 25 | THE COURT:  Well, my question was very |

11:52:05  1  precise.  I asked you to identify where you told

11:52:08  2  Free-Flow that it was your plan to assert a defense that

11:52:13  3  Mr. Aquarius was the actual inventor and that somehow

11:52:18  4  that testimony was going to bear on their defense of

11:52:21  5  noninfringement in this case.  When did you tell them

11:52:26  6  that?

11:52:27  7            MR. DABNEY:  We have denied their claim that

11:52:32  8  this EZ1 machine is an embodiment of the Fuss patent.

11:52:39  9            We have maintained from the beginning that

11:52:44  10  we denied infringement and that they were the first and

11:52:47  11  original inventors.

11:52:48  12            The Aquarius testimony was the subject of

11:52:52  13  cross-examination in the Pactiv case.  Mr. Aquarius was

11:52:57  14  named an as inventor in an application that described

11:53:00  15  this machine.  It was the subject of cross-examination

11:53:03  16  of Mr. Graham.

11:53:05  17            THE COURT:  Okay.  So, the answer is no you

11:53:07  18  didn't tell them in this case?

11:53:09  19            MR. DABNEY:  I --

11:53:10  20            THE COURT:  In response to -- contention

11:53:13  21  interrogatories and in response to identifying

11:53:15  22  individuals who have information about this case in your

11:53:18  23  defense, you did not identify Mr. Aquarius in this case?

11:53:21  24  That's correct, isn't it?

11:53:24  25            That can be answered yes or no.

11:53:27  1          MR. DABNEY:  I'm reluctant to say flat yes

11:53:31  2   or no but it is true that we did not supplement this

11:53:34  3   particular interrogatory answer prior to our delivery of

11:53:37  4   the witness list in this case which was --

11:53:40  5          THE COURT:  Mr. Dabney, we're going to spend

11:53:41  6   a lot of time together.  And one of the things I'm

11:53:44  7   counting on you to do is to answer my questions because

11:53:46  8   it would help me and it helps the whole case move

11:53:49  9   forward.

11:53:50  10         The question I asked you was very simple.

11:53:51  11  You never identified Mr. Aquarius in response to a

11:53:55  12  contention interrogatory or any other request for

11:53:59  13  identification of witnesses before November 13th, 2009;

11:54:02  14  is that correct?

11:54:03  15         MR. DABNEY:  We did not identify Mr.

11:54:11  16  Aquarius in the interrogatory answer that was --

11:54:14  17         THE COURT:  Or anywhere else other than

11:54:16  18  November 13, 2009.

11:54:18  19         MR. DABNEY:  The -- it's hard for me to

11:54:26  20  answer that, but I'll accept for purposes of today's

11:54:29  21  ruling that the -- the specific statement that the

11:54:38  22  deposition testimony of Mr. Aquarius was one -- was

11:54:42  23  something that Pregis intended to read out in court was

11:54:48  24  not specifically identified prior to about

11:54:52  25  November 13th.

11:54:52  1          THE COURT:  Okay.

11:54:53  2          MR. DABNEY:  On November 13th, we told them.

11:54:55  3          THE COURT:  With respect to the motion in

11:54:58  4     limine number eight having to do with Mr. Cornell, the

11:55:07  5     damages expert, my recollection of his report says the

11:55:11  6     damages were zero or a hundred thousand dollars and that

11:55:14  7     was it.

11:55:14  8          MR. DABNEY:  No, that's not accurate, Your

11:55:16  9     Honor.

11:55:16  10         THE COURT:  Well, is it your view that he

11:55:20  11    would be allowed to observe the trial and after hearing

11:55:23  12    the various testimony of the FPI witnesses offer a

11:55:31  13    calculation based upon what he heard in court in the

11:55:34  14    trial?  Is that what you're proposing to do?

11:55:36  15         MR. DABNEY:  No, no.

11:55:43  16         THE COURT:  Okay.

11:55:45  17         MR. DABNEY:  What Mr. Cornell, what the --

11:55:48  18    what the defendant position is which is the legal

11:55:51  19    position, the legal framework is subject to issues like

11:55:56  20    intervening rights is that a person in Pregis's position

11:56:01  21    would not rationally pay more in royalties than it would

11:56:05  22    have to pay to do something other than engage in the use

11:56:09  23    of the patented subject matter.

11:56:12  24         Mr. Cornell in his report provided an

11:56:16  25    extensive economic explanation for why Pregis would not

11:56:21   1   pay more in royalties than it would have to have pay to

11:56:24   2   avoid infringement.

11:56:25   3           So, the point is there is a major dispute in

11:56:28   4   this case which is one of the reasons of the objection

11:56:32   5   of Mr. Wetsch with regard to whether or not Pregis has

11:56:37   6   an inexpensive way of avoiding the patent.

11:56:40   7           So, all that an expert such as Mr. Cornell

11:56:44   8   can do and all that their economic expert can do is to

11:56:49   9   base their opinions on the actual economic data that is

11:56:54   10   ultimately proved.

11:56:55   11           So that if the jury finds --

11:56:56   12           THE COURT:  So, what you're telling me then

11:56:58   13   is Mr. Cornell is not going to testify to anything more

11:57:03   14   than things that have already been disclosed in this

11:57:06   15   report or deposition?

11:57:06   16           MR. DABNEY:  That's basically right.

11:57:08   17           THE COURT:  Okay, all right.

11:57:09   18           MR. DABNEY:  That's basically right.

11:57:10   19           THE COURT:  Okay.  Then that's not a

11:57:12   20   problem.

11:57:12   21           MR. DABNEY:  That's -- I think moots out

11:57:14   22   that issue.  He is providing the conceptional framework

11:57:19   23   and then the actual proof of what the costs are is going

11:57:22   24   to come in through Mr. Wetsch.

11:57:25   25           THE COURT:  All right.  I want to ask you

| | | |
|---|---|---|
| 11:57:26 | 1 | about this claim about commenting on absent witnesses. |
| 11:57:32 | 2 | What is it that you propose to do as it |
| 11:57:42 | 3 | relates to the named inventors, and are you required to |
| 11:57:46 | 4 | call named inventors in a patent infringement lawsuit? |
| 11:57:53 | 5 | That was two questions.  The first was, what |
| 11:57:55 | 6 | is it you propose to do with the two witnesses, about |
| 11:58:00 | 7 | the absence of the inventor witnesses?  And two, are you |
| 11:58:10 | 8 | required to call inventors as witnesses in a patent |
| 11:58:14 | 9 | infringement suit? |
| 11:58:15 | 10 | MR. DABNEY:  Okay.  The patents that are at |
| 11:58:19 | 11 | issue in this case were applied for in 2005 and |
| 11:58:26 | 12 | subsequent years. |
| 11:58:29 | 13 | There is deposition testimony that the |
| 11:58:32 | 14 | individual who wrote the claims in the patents never |
| 11:58:37 | 15 | talked to the inventors and never asked them whether |
| 11:58:40 | 16 | they agreed that what he was now claiming was regarded |
| 11:58:45 | 17 | by them as an invention. |
| 11:58:47 | 18 | One of the issues in this case has to do |
| 11:58:51 | 19 | with the fact that these patents are coming out so late, |
| 11:58:55 | 20 | and the patents are claiming subject matter that's very |
| 11:58:58 | 21 | different than anything the named inventors ever said |
| 11:59:01 | 22 | they regarded as an invention -- as an invention. |
| 11:59:05 | 23 | THE COURT:  Well, has it been your |
| 11:59:06 | 24 | experience in patent prosecution that the inventor |
| 11:59:09 | 25 | himself or herself actually writes out the claims and |

11:59:12   1   that they know how to write a claim that would survive

11:59:16   2   prosecution in the patent office?  Has that been your

11:59:19   3   experience?

11:59:19   4        MR. DABNEY:  No.

11:59:21   5        THE COURT:  All right.  That an attorney

11:59:22   6   wrote a patent claim in and of itself is not significant

11:59:24   7   of anything, is it?

11:59:25   8        MR. DABNEY:  Not in and of itself, no.  But

11:59:28   9   here some of these patents claim subject matter that is

11:59:30   10  very different than the only subject matter the

11:59:34   11  applicants ever gave an oath and said that they regarded

11:59:38   12  as an inventor, they believe they were the first and the

11:59:41   13  original inventors of.

11:59:43   14       And so one of the problems here has to do

11:59:46   15  with the fact that the -- there was never any oath filed

11:59:53   16  in support of the claims being asserted.

11:59:56   17       Now, what happened here was way back in 1999

12:00:00   18  or 2000, the inventors gave an oath that said I believe

12:00:05   19  I'm the first and original inventor of the subject

12:00:07   20  matter claimed in those applications.

12:00:10   21       And there's no claim in this case that

12:00:13   22  Pregis has infringed those patents that they actually

12:00:16   23  swore to.

12:00:17   24       Then seven, eight years later, the patent

12:00:21   25  applications are filed that claim something very, very

| | | |
|---|---|---|
| 12:00:25 | 1 | different.  And they never went back to the applicants |
| 12:00:27 | 2 | and said do you agree that this different thing over |
| 12:00:30 | 3 | here that we're claiming is regarded by you as an |
| 12:00:34 | 4 | invention? |
| 12:00:34 | 5 | And, it -- for whatever it's worth it seems |
| 12:00:38 | 6 | to me that if they do not call the named inventors in |
| 12:00:43 | 7 | whose name they prosecuted these patents to say yes, you |
| 12:00:47 | 8 | believe you were the first and original inventor not |
| 12:00:50 | 9 | just of what I was claiming back then but this new |
| 12:00:53 | 10 | stuff, it seems to me that is evidence or that is a fact |
| 12:00:57 | 11 | that can reasonably be taken into account in considering |
| 12:01:02 | 12 | whether or not the claim subject matter here really was |
| 12:01:07 | 13 | regarded as an invention by the named inventors. |
| 12:01:11 | 14 | THE COURT:  And so the inference you'd want |
| 12:01:13 | 15 | the jury to adopt would be one that the 2005 amendment |
| 12:01:18 | 16 | was false because the inventors themselves did not sign |
| 12:01:22 | 17 | the oath of affirmation?  And you want to argue that to |
| 12:01:25 | 18 | the jury? |
| 12:01:26 | 19 | MR. DABNEY:  We want to argue that the |
| 12:01:28 | 20 | claimed subject matter is obvious and is trivial and |
| 12:01:32 | 21 | that they would never have put their name to an |
| 12:01:36 | 22 | application that recited such a trivial thing. |
| 12:01:39 | 23 | THE COURT:  Well, how do you know that? |
| 12:01:41 | 24 | Have you deposed the inventors?  Did the inventors say |
| 12:01:44 | 25 | that? |

12:01:44  1          MR. DABNEY:  The inventors were never asked

12:01:46  2   if they thought this.

12:01:47  3          THE COURT:  No, but you just gave me a

12:01:49  4   declaration of what you thought the inventors thought.

12:01:51  5   And so, that is just argument of counsel.  You don't

12:01:54  6   have any factual basis for that, do you?

12:01:56  7          MR. DABNEY:  We have -- all we know is they

12:01:59  8   were never asked.

12:01:59  9          THE COURT:  Well, help me.  How does this

12:02:01  10  tend to prove or disprove the issue of infringement here

12:02:06  11  if you don't know what the inventors thought or said?

12:02:10  12  We don't know whether they were consulted or not by the

12:02:17  13  absence of an oath or affirmation.  We don't know.  And

12:02:20  14  no oath was submitted; is that right?

12:02:22  15         MR. DABNEY:  Yes, we do.  We most certainly

12:02:24  16  do.  I examined --

12:02:25  17         THE COURT:  The lawyer did not talk to the

12:02:27  18  inventors.

12:02:27  19         MR. DABNEY:  That's absolutely right.

12:02:29  20         THE COURT:  And the inventors never signed

12:02:30  21  the oath of affirmation.  But we don't know what the

12:02:33  22  inventors themselves would say or would not say, do we?

12:02:37  23         MR. DABNEY:  I guess a reasonable person

12:02:42  24  could infer that if the inventors said I review my

12:02:48  25  invention as this subject matter over here and then

12:02:51  1   seven or eight years later an application is made that

12:02:54  2   the claimed invention is really this other thing very

12:02:57  3   different over here, that they could infer that those

12:03:02  4   applicants might not necessarily have agreed with that

12:03:05  5   and that there was a reason why they didn't go back and

12:03:08  6   get an oath from the inventors for the new subject

12:03:10  7   matter.

12:03:12  8            THE COURT:  I understand how you reach the

12:03:14  9   inference.  The difficulty I have is the absence of

12:03:17  10  proof that there is something sinister about it.  And I

12:03:24  11  assume that the inventors if they are still alive are

12:03:27  12  equally available to you; is that right?

12:03:29  13           MR. DABNEY:  This is -- the issue here is --

12:03:33  14  is whether or not the failure to call the inventors can

12:03:38  15  be commented on --

12:03:40  16           THE COURT:  I understand that.

12:03:40  17           MR. DABNEY:  Yes.

12:03:41  18           THE COURT:  I understand that.

12:03:42  19           MR. DABNEY:  And it has been known to them

12:03:43  20  from the beginning that the -- Mr. Pedgram's expert

12:03:51  21  report and otherwise says that there's a serious

12:03:55  22  disconnect between what was claimed in these later

12:03:58  23  applications and the only think that the inventors ever

12:04:00  24  said that they regarded as their invention.

12:04:01  25           And it may be that as a matter of patent

12:04:04  1  office practice you can just file a photocopy of the

12:04:07  2  original affidavit and that will get you through the

12:04:09  3  patent office.

12:04:09  4          But that begs the question.  Every patent

12:04:11  5  has to be supported by an oath that says I am the

12:04:14  6  original and first inventor of the machine manufacture,

12:04:18  7  improvements sought to be patented.

12:04:20  8          And, that was not done here.  So --

12:04:24  9          THE COURT:  All right.

12:04:26  10          MR. DABNEY:  That's the point.

12:04:27  11          THE COURT:  Okay.  I've asked you the

12:04:30  12  questions that I have.

12:04:31  13          MR. DABNEY:  If I could just comment on a

12:04:34  14  couple of the points that Mr. Altherr raised.

12:04:40  15          With regard to the patent that Pregis has

12:04:49  16  gotten on this, we believe that the law entitles Pregis

12:04:54  17  to put that in evidence as tending to show among other

12:04:58  18  things that the accused machine is not equivalent to

12:05:05  19  what they're claiming as their invention.  I think the

12:05:10  20  law entitles us to do that.

12:05:12  21          And the suggestion that there is no issue of

12:05:14  22  equivalence in this case is not accurate.  We believe

12:05:16  23  that whether they bear the burden or we do under the

12:05:19  24  reversed doctrine of equivalence it is relevant in this

12:05:23  25  case whether or not the Pregis machines operate in

12:05:25  1   substantially the same way as any machines or systems

12:05:28  2   that are disclosed in the patents in suit.  So we do not

12:05:31  3   agree --

12:05:31  4              THE COURT:  But we're talking about a

12:05:33  5   comparison of the '134 patent with the claims in the

12:05:38  6   patents at issue in this case?

12:05:41  7              MR. DABNEY:  No, we're talking about whether

12:05:42  8   the -- the other side is taking the position, for

12:05:47  9   example, that the Pregis machine contains an element in

12:05:54  10  it that is described by the claim words, a sealing

12:05:59  11  mechanism comprising a block that has a source of heat.

12:06:03  12             And, it is the defendant's contention that

12:06:07  13  the claim words a block that has a source of heat

12:06:14  14  describes a certain structure in one of the Pregis

12:06:17  15  machines.

12:06:17  16             THE COURT:  It says a pair of blocks I

12:06:19  17  believe.

12:06:19  18             MR. DABNEY:  A pair of blocks and at least

12:06:21  19  one of the blocks has a source of heat.

12:06:23  20             THE COURT:  Source of heat, correct.

12:06:24  21             MR. DABNEY:  So, there are two questions

12:06:26  22  that are raised by that.  Number one is, would a person

12:06:30  23  skilled in the art understand that that term in the

12:06:35  24  context of that patent, would a person skilled in the

12:06:38  25  art understand that as describing the structure that

12:06:41  1   they're pointing to in the Pregis machine.

12:06:43  2          That is by the way something that I believe

12:06:45  3   the evidence in trial will show that Mr. Wetsch, among

12:06:48  4   others, is fully competent to address.

12:06:52  5          But secondly, the next question that is

12:06:55  6   recognized under Supreme Court as well as Federal

12:06:59  7   Circuit precedent is, is the structure that they're

12:07:02  8   saying in the Pregis machine, is that structure

12:07:06  9   equivalent to what the claim language is pointing to in

12:07:10  10  the Fuss patent?

12:07:11  11         And we would say that it is not and that the

12:07:15  12  patent that was awarded to Pactiv now owned by Pregis

12:07:20  13  tends to show that it operates in a substantially

12:07:23  14  different way because the patent is specifically

12:07:25  15  directed to an improved sealing mechanism that does

12:07:29  16  operate in a substantially different way from anything

12:07:31  17  that the Fuss patents teach a skilled artisan to do.

12:07:36  18         So, therefore the doctrine of equivalence is

12:07:40  19  part of this case.  The -- either it is because as a

12:07:45  20  legal matter the proponent of a patent must prove at

12:07:49  21  least that the accused subject matter is equivalent to

12:07:53  22  something that is claimed or alternatively there's

12:07:57  23  something in Federal Circuit called the reverse doctrine

12:08:00  24  of equivalence that would say that Pregis can defeat

12:08:04  25  liability even if a skilled artisan would say a block

| | | |
|---|---|---|
| 12:08:07 | 1 | that has a sort of heat is a phrase that crimes this |
| 12:08:10 | 2 | nichrome wire that's in the Pregis machines or the |
| 12:08:14 | 3 | support blocks that they're pointing to. |
| 12:08:16 | 4 | Even if that were true, if we succeeded in |
| 12:08:19 | 5 | demonstrating that it operated in a substantially |
| 12:08:21 | 6 | different way, then that would be an independent basis |
| 12:08:24 | 7 | for finding noninfringement under what the Federal |
| 12:08:29 | 8 | Circuit calls the reverse doctrine of equivalence, and |
| 12:08:32 | 9 | the cell patent is certainly relevant to equivalence in |
| 12:08:38 | 10 | that context. |
| 12:08:39 | 11 | THE COURT:  All right. |
| 12:08:40 | 12 | MR. DABNEY:  And so I don't think it would |
| 12:08:41 | 13 | be correct to say a priori that the cell patent cannot |
| 12:08:45 | 14 | be introduced in evidence for any purpose in this case. |
| 12:08:48 | 15 | The last thing I want to comment on is the |
| 12:08:50 | 16 | use of Mr. Pedram for the purpose was identified in |
| 12:08:56 | 17 | our -- in our expert reports.  There are basically two |
| 12:08:59 | 18 | points. |
| 12:08:59 | 19 | And I should say, by the way, that based on |
| 12:09:01 | 20 | Your Honor's summary judgment ruling a great number of |
| 12:09:03 | 21 | the things that Mr. Pedram might have testified to will |
| 12:09:07 | 22 | not now be testified to. |
| 12:09:08 | 23 | If new matter is not an issue in this case |
| 12:09:11 | 24 | any more, well then obviously there would be no call for |
| 12:09:14 | 25 | introducing expert testimony with regard to new matter. |

12:09:17   1   So, just lay to one side those subjects that are no

12:09:22   2   longer in the case.

12:09:23   3         If you were to see the prosecution history

12:09:24   4   of the Perkins patents in this case, Your Honor, they

12:09:27   5   would be a stack of paper that would stand about two and

12:09:32   6   a half feet high.

12:09:33   7         It involves multiple -- a lengthy chain of

12:09:37   8   applications and understanding what's in them, we

12:09:39   9   believe is best presented in question-and-answer format

12:09:43  10   rather than having the lawyer stand up and just sort of

12:09:45  11   read out what is in them.

12:09:48  12         So one of the things that Mr. Pedgram would

12:09:51  13   be called upon to do would be simply to introduce and

12:09:53  14   explain the factual contents to the extent they are

12:09:57  15   relevant of the prosecution histories of those patents.

12:10:00  16   And I don't think that there can be any serious

12:10:03  17   objection to his being called and used for that purpose.

12:10:06  18         THE COURT:  Well, help me with how you

12:10:08  19   envision that would take place.  Would it just be the

12:10:12  20   stack of documents in front of him and then him

12:10:14  21   describing the first application and the cover response

12:10:18  22   back and forth with the patent examiner?  How would it

12:10:20  23   go?

12:10:20  24         MR. DABNEY:  Well, let's take the example of

12:10:24  25   planar, for example.  We have an application filed

12:10:26  1   July 22, 2005.  So that's going to come into evidence.

12:10:28  2   That's an admission of the defendant.  It filed.  It has

12:10:32  3   certain drawings.  It has certain disclosures.  It has

12:10:36  4   certain claims.  So that comes in.

12:10:37  5          I would expect that Mr. Pedgram would be a

12:10:41  6   person through whom we could introduce that application.

12:10:44  7   Then the next thing that happens is the application is

12:10:48  8   rejected and that the claims are narrowed.  And the

12:10:51  9   narrowing and changing of the claims is something that

12:10:54  10  again would be something that would be put in so that

12:10:56  11  the jury would see the history as the patent application

12:11:00  12  was modified through times and the prior art that was

12:11:04  13  cited against it that the claims were amended to avoid

12:11:07  14  so that in trying to understand what planar means, for

12:11:11  15  example, you would see what was introduced into the

12:11:13  16  application at a certain time and what was there

12:11:15  17  originally.

12:11:16  18         So, part of understanding what planar means

12:11:19  19  and that's one of the points Your Honor asked me about

12:11:22  20  last Friday, we believe is elucidated very importantly

12:11:27  21  by seeing that the patent originally said substantially

12:11:31  22  planar.  And then it was amended to have a new figure.

12:11:34  23         THE COURT:  So, you'd have Mr. Pedgram

12:11:37  24  telling the jury all these things?

12:11:39  25         MR. DABNEY:  Well, just the -- just to -- to

12:11:43   1   put in evidence the actual transactional facts that are

12:11:48   2   in the prosecution histories to the extent that they are

12:11:51   3   both admissible and relevant to issues in the case.

12:11:54   4            And, I don't think that that is

12:11:58   5   controversial.  I think it would be helpful to

12:12:01   6   everyone's understanding to have a competent, qualified

12:12:05   7   experienced patent attorney to be the one to explain,

12:12:08   8   for instance, remarks, amendments.  You know, the

12:12:12   9   nomenclature and the terms of art that are used in these

12:12:16  10   documents, they're not going to be familiar to people

12:12:18  11   who read them, continuation, continuation in part, those

12:12:22  12   types of terms.

12:12:23  13            So, part of the noninfringement defense in

12:12:26  14   this case will very definitely involve describing the

12:12:28  15   long history, what the invention was allegedly started

12:12:33  16   out being and how they seem to change their mind.

12:12:38  17            THE COURT:  Well, figure 16 and 17 were

12:12:40  18   included in the amendment, things like that?

12:12:42  19            MR. DABNEY:  Things like that, that's right,

12:12:43  20   that was not there originally.  They added that.

12:12:45  21            THE COURT:  Well, the concern I think has

12:12:47  22   been raised is whether you need an expert to tell us

12:12:50  23   that when the documents will speak for themselves.

12:12:53  24            Were you planning to have a chart of any

12:12:55  25   kind?

12:12:55  1           MR. DABNEY:  A chart?

12:12:56  2           THE COURT:  A chart.

12:12:57  3           MR. DABNEY:  Well, we're still working on

12:13:00  4   our demonstratives, but I had not intended to use a

12:13:03  5   chart to --

12:13:04  6           THE COURT:  So, you will a lawyer talk to us

12:13:06  7   for three hours about the prosecution history?

12:13:09  8           MR. DABNEY:  I don't think it would be

12:13:10  9   anywhere three hours, Your Honor.

12:13:11  10           THE COURT:  But still you think the jury is

12:13:13  11   going to pick up what continuation is, what an

12:13:16  12   application is just by hearing somebody talk about it?

12:13:18  13           MR. DABNEY:  No, the point of the testimony

12:13:19  14   would be to show the sequence of events that resulted in

12:13:23  15   the ultimate claims that are being asserted.

12:13:26  16           THE COURT:  All right.  Well, let me ask you

12:13:27  17   this.  If both sides were permitted to prepare a chart

12:13:34  18   that outlined the pertinent documents that you thought

12:13:37  19   were important from the prosecution history and the

12:13:41  20   terms that you've identified, for example, the issue of

12:13:44  21   substantially planar path was the actual application

12:13:48  22   claim and then the precisely planar path came up and

12:13:52  23   then finally they came back with planar path which later

12:13:55  24   resulted in an allowance after some other litigation,

12:13:59  25   wouldn't a chart demonstrating those things keyed to

12:14:03   1   documents be more helpful to a jury?

12:14:07   2          MR. DABNEY:  It was my judgment, Your Honor,

12:14:10   3   that understanding this would be very much assisted by

12:14:14   4   explaining that this application was not allowed.  And

12:14:20   5   then they changed it and the reasons for it was this

12:14:24   6   and --

12:14:24   7          THE COURT:  When you say the reasons for it,

12:14:26   8   you mean the reasons contained in the document.

12:14:28   9          MR. DABNEY:  Stated in the documents, yes.

12:14:29   10          THE COURT:  But not offering an opinion

12:14:31   11   about what --

12:14:31   12          MR. DABNEY:  No, no.

12:14:32   13          THE COURT: -- what the examiner did or did

12:14:33   14   not do?

12:14:34   15          MR. DABNEY:  Because I can tell you that

12:14:36   16   I've been doing this for 20 years now.  But, in my first

12:14:39   17   year, this was dense stuff.  And I really feel that it

12:14:44   18   would be helpful to the jury to have these technical

12:14:48   19   patent prosecution documents presented in this fashion.

12:14:51   20   That's --

12:14:52   21          THE COURT:  Well, I'm not familiar with

12:14:55   22   having a lawyer take the stand and do that which is why

12:14:58   23   I'm asking you all these questions.

12:14:59   24          MR. DABNEY:  Okay.

12:15:00   25          THE COURT:  Do you have any case or examples

12:15:02  1   you can give me of other courts where a lawyer has taken

12:15:03  2   the stand in the last five years or so to testify about

12:15:06  3   prosecution history and how it was --

12:15:08  4            MR. DABNEY:  I'm confident that I could find

12:15:11  5   such -- I've done it in my own cases.  I didn't know

12:15:14  6   this was going to be a controversial subject.  But

12:15:16  7   I'm --

12:15:17  8            THE COURT:  You've had a lawyer take the

12:15:18  9   stand and say --

12:15:19  10           MR. DABNEY:  Yes.

12:15:19  11           THE COURT:  -- this is what the document

12:15:20  12  says; this document says that?

12:15:21  13           MR. DABNEY:  Yes, and in fact, you know,

12:15:24  14  when we get to the other -- the other issue that they've

12:15:27  15  raised, it has also been routine in patent litigations

12:15:31  16  where willfulness arguments, willfulness allegations are

12:15:35  17  made to have, you know, opinion counsel or somebody get

12:15:38  18  up and testify much more than that.

12:15:40  19           THE COURT:  Well, you don't have opinion

12:15:42  20  counsel in this case, do you?

12:15:43  21           MR. DABNEY:  Well, depending -- I would say

12:15:47  22  that that label has no intrinsic legal significance, but

12:15:55  23  I would suggest -- remember, this was a suit that

12:15:57  24  commenced before two of the patents even issued.  And

12:16:00  25  the claim made by Free-Flow --

| | | |
|---|---|---|
| 12:16:01 | 1 | THE COURT:  Well, I understand that part of |
| 12:16:03 | 2 | it. |
| 12:16:03 | 3 | MR. DABNEY:  Yeah, yeah. |
| 12:16:03 | 4 | THE COURT:  But, from the standpoint of |
| 12:16:05 | 5 | legal opinion about the lawfulness of conduct and |
| 12:16:09 | 6 | advising the client on rights and liability in |
| 12:16:13 | 7 | connection to an invention, that's not in this case.  We |
| 12:16:15 | 8 | don't have any document like that.  Nothing was |
| 12:16:17 | 9 | identified.  Nothing was produced.  Is that right? |
| 12:16:20 | 10 | MR. DABNEY:  I would respectfully disagree. |
| 12:16:23 | 11 | Pregis has not waived the attorney/client privilege in |
| 12:16:26 | 12 | this case.  That is -- |
| 12:16:27 | 13 | THE COURT:  No, my question wasn't about |
| 12:16:29 | 14 | waiver of attorney/client privilege.  My question was |
| 12:16:32 | 15 | whether or not you disclosed that Pregis had an opinion |
| 12:16:34 | 16 | of counsel concerning these rights and liabilities with |
| 12:16:37 | 17 | respect to the accused devices. |
| 12:16:39 | 18 | MR. DABNEY:  I would say that the Pedgram |
| 12:16:41 | 19 | expert report that was submitted in this case is |
| 12:16:45 | 20 | perfectly described by what Your Honor just said. |
| 12:16:47 | 21 | They filed an expert report on October 19th |
| 12:16:52 | 22 | that said we're violators of the law. |
| 12:16:55 | 23 | On October 29th, we provided the expert |
| 12:16:57 | 24 | report of John Pedgram in which he expressed the opinion |
| 12:17:03 | 25 | that under the objectively reckless standard, and this |

12:17:07  1   is a new standard.  It only came out in 2007 and it's

12:17:11  2   objective, not subjective.

12:17:12  3            And under the objectively reckless standard

12:17:14  4   it was his opinion that the conduct or position of

12:17:19  5   Pregis in this case were not objectively reckless.

12:17:21  6            THE COURT:  Okay.

12:17:22  7            MR. DABNEY:  So, I don't know -- I've given

12:17:24  8   quit a lot of thought to how a litigant deals with the

12:17:29  9   *Seagate* objective recklessness standard other than in

12:17:33  10  the way we're proposing to do here.

12:17:36  11           THE COURT:  Is there any place in *Seagate*

12:17:37  12  where it says that the lawyers should take the stand and

12:17:40  13  offer the lawyer's position about the facts concerning

12:17:43  14  objective recklessness?

12:17:45  15           MR. DABNEY:  What *Seagate* --

12:17:46  16           THE COURT:  My question is very precise.  Is

12:17:48  17  there any part of the *Seagate* opinion that you can cite

12:17:51  18  me to that says a trial judge should let a lawyer take

12:17:54  19  the stand and offer their opinion to the jury about

12:17:57  20  objective recklessness?

12:17:57  21           MR. DABNEY:  No, there is nothing in *Seagate*

12:17:59  22  that says that.

12:17:59  23           THE COURT:  Okay.

12:18:01  24           Mr. Dabney, I think I've asked you the

12:18:02  25  questions that I have.  I'm prepared to rule now.

12:18:04  1          Thank you.

12:18:05  2          MR. DABNEY:  Thank you, Your Honor.

12:18:08  3          THE COURT:  All right.  This matter is

12:18:09  4  before the Court on the motions in limine that were

12:18:12  5  filed here by Free-Flow Packaging, the defendant.  And

12:18:17  6  it's called an omnibus motion in limine.  There are 17

12:18:24  7  motions before the Court.

12:18:25  8          The parties have briefed the matter, and

12:18:26  9  I've had an opportunity to consider the briefs as well

12:18:28  10  as the arguments.

12:18:29  11          With respect to motion in limine number one,

12:18:32  12  excluding the testimony by patent law experts or to

12:18:36  13  offer their opinions regarding invalidity or

12:18:39  14  infringement concerning the merits of Pregis's

12:18:42  15  invalidity or noninfringement defenses, I'm going to

12:18:46  16  grant that motion because the testimony to me is not the

12:18:51  17  proper subject matter of expert testimony.

12:18:53  18          The testimony of an attorney about his view

12:18:55  19  of whether the patent is valid or invalid is not -- will

12:19:00  20  not aid the trier of fact.  And it is not properly

12:19:05  21  encompassed within 702.

12:19:07  22          And I think that it would be -- the lawyers

12:19:10  23  will have plenty of opportunity here at the end of the

12:19:13  24  case to argue what their view is of what the facts are

12:19:16  25  and what conclusions the jury should draw.  We're not

12:19:18  1   going to have a lawyer take the stand to offer that

12:19:22  2   testimony.

12:19:22  3          Now, there is some question about whether

12:19:24  4   Mr. Pedgram could testify about the prosecution history.

12:19:27  5   And I realize this is encompassed in another motion that

12:19:30  6   is before me as well, but let me go ahead and take that

12:19:32  7   issue on right now.

12:19:33  8          The prosecution issue documents come into

12:19:36  9   evidence.  I don't think there's any question about

12:19:38  10  that.  I think the law would allow the prosecution

12:19:41  11  history to come into evidence.  The documents should

12:19:43  12  come in.  I don't care if they're two feet tall or three

12:19:47  13  feet tall, they're admitted.

12:19:48  14         Now, the question becomes what can the

12:19:50  15  parties do with them and how can they presented it in a

12:19:53  16  fashion that would help the jury?

12:19:55  17         And here it may be that if Mr. Pedgram or a

12:19:58  18  witness for Pregis were to testify about their view of

12:20:02  19  the prosecution history in terms of what pertinent facts

12:20:06  20  are there, that actually might be helpful and it

12:20:09  21  actually may streamline the trial.

12:20:12  22         And Federal Rule of Evidence 1006 allows the

12:20:15  23  Court where there are voluminous writings which cannot

12:20:17  24  be conveniently examined to be presented in a form of a

12:20:21  25  chart or summary or calculation.  And the originals have

12:20:24  1  to be made available for examination and copying by both

12:20:28  2  parties.

12:20:28  3          It seems to me that I can and I will afford

12:20:33  4  each side the opportunity to prepare a demonstrative

12:20:38  5  that is not argumentative that points to the aspects of

12:20:42  6  the prosecution history that each side believes bear on

12:20:47  7  the issues in this case of invalidity.

12:20:49  8          And, you are to exchange them.  I'm not

12:20:53  9  going to require one side to include things that they

12:20:55  10  don't want to include.  Each side can have their own.

12:20:58  11  And that would, I think, help the Court and help the

12:21:01  12  jury as they're looking at this stack of documents to be

12:21:05  13  able to compare each side's contention with the actual

12:21:09  14  documents themselves.

12:21:10  15          With respect to the motion in limine number

12:21:12  16  two, to exclude presentation of evidence regarding

12:21:15  17  inequitable conduct, false statements or procedure

12:21:18  18  irregularity before the PTO during prosecution of the

12:21:22  19  FPI's suit -- patents in suit or testimony by patent

12:21:26  20  expert on those issues, I'm going to grant the motion.

12:21:29  21          As far as I can tell, there is no issue

12:21:32  22  here of inequitable conduct or false statements that has

12:21:36  23  been identified and I -- I'm excluding it now to save us

12:21:44  24  the time.  And if there is something in particular that

12:21:48  25  either side believes falls within the purview of this

| | | |
|---|---|---|
| 12:21:51 | 1 | ruling that you believe is somehow relevant, bring it to |
| 12:21:54 | 2 | my attention before the witness is called at trial and |
| 12:21:56 | 3 | I'll take it up then.  But for right now, it's excluded. |
| 12:22:00 | 4 | As it relates to number three, whether the |
| 12:22:04 | 5 | Court should preclude presentation of evidence or |
| 12:22:07 | 6 | testimony regarding latches or other equitable defenses |
| 12:22:10 | 7 | that Pregis failed to plead or identify during |
| 12:22:14 | 8 | discovery, I'm going to grant the motion as it relates |
| 12:22:17 | 9 | to latches or other equitable defense that have not been |
| 12:22:21 | 10 | identified.  Whatever they are, they should have been |
| 12:22:24 | 11 | identified well before now. |
| 12:22:25 | 12 | And the difficulty that I have again is I |
| 12:22:31 | 13 | don't know if there's something in particular that the |
| 12:22:36 | 14 | moving party is trying to exclude.  So, it seems to me |
| 12:22:42 | 15 | that at this moment, that there is no latches defense |
| 12:22:48 | 16 | that was asserted.  So, the evidence of latches will be |
| 12:22:51 | 17 | excluded. |
| 12:22:51 | 18 | Let me reserve on other equitable defenses |
| 12:22:54 | 19 | because I don't -- I don't know this particular evidence |
| 12:22:56 | 20 | has been identified.  So I'm going to deny that aspect |
| 12:22:59 | 21 | of other defenses without prejudice.  That is to say |
| 12:23:01 | 22 | that FPI's not identified a particular evidence. |
| 12:23:05 | 23 | And so, if there's something in particular |
| 12:23:07 | 24 | that comes up that falls within the purview of equitable |
| 12:23:11 | 25 | defenses, you have to tell me about it and I will |

12:23:13  1  consider that objection at that time.

12:23:14  2       With respect to motion in limine number four

12:23:17  3  to preclude Pregis from relying upon any opinion of

12:23:20  4  counsel as a defense to willful infringement, it seems

12:23:25  5  to me that no opinion of counsel is identified as a

12:23:27  6  defense of willful infringement in discovery or in

12:23:31  7  connection with contention interrogatories. No lawyer

12:23:34  8  was deposed for Pregis. So that motion is granted.

12:23:40  9       And, it would also confuse the jury on the

12:23:45  10 issue of willfulness if some witness were to come in and

12:23:48  11 say, well, in my view, the acts here of Pregis were not

12:23:52  12 willful.

12:23:53  13      With regard to motion in limine number five,

12:23:59  14 offering -- preclude Pregis from offering evidence or

12:24:04  15 testimony regarding any defense, including invalidity,

12:24:07  16 noninfringement or unenforceability defense that Pregis

12:24:09  17 did not plead or identify in interrogatory responses,

12:24:12  18 I'm going to deny that motion because no specific

12:24:14  19 evidence has been identified. And I'm unwilling to give

12:24:17  20 some blanket exclusion without knowing just what I'm

12:24:21  21 being asked to exclude.

12:24:22  22      With respect to motion in limine number six,

12:24:24  23 to preclude Pregis from offering evidence or testimony

12:24:28  24 regarding any derivation defense, and this has to do

12:24:31  25 with Mr. Aquarius, I'm going to grant that motion.

12:24:34  1          Mr. Aquarius was not identified in response

12:24:37  2   to contention interrogatories or otherwise in this case,

12:24:43  3   until November 13, 2009.  And at that point, Pregis was

12:24:49  4   identifying his deposition from a prior litigation.

12:24:52  5          So I think that it was insufficiently

12:24:54  6   disclosed, and so it will be excluded as it relates to

12:24:59  7   Mr. Aquarius.  And I do not think derivation is an issue

12:25:05  8   in this case, so I'm granting that motion as well.

12:25:09  9          Number seven, preclude Pregis from offering

12:25:13  10  any lay testimony on the issues of infringement and

12:25:16  11  validity.  This has to do with the testimony of

12:25:19  12  Mr. Wetsch who apparently was deposed, is the

12:25:23  13  vice-president for research and development and was

12:25:26  14  involved with the development of the accused devices,

12:25:30  15  accused devices and is very familiar from his background

12:25:32  16  with the technical issues before the Court as well.

12:25:35  17          Given that he was deposed in this case, his

12:25:41  18  identity has been known throughout, he was not required

12:25:44  19  to provide a report under Rule 26.  So, I will not --

12:25:50  20  I'll deny motion in limine number seven to the extent it

12:25:54  21  seeks to exclude Mr. Wetsch.

12:25:59  22          As it relates to any other witness

12:26:01  23  testimony, you'll have to object at the time.  I'm

12:26:03  24  denying without prejudice as it relates to any other

12:26:05  25  witness.  But as it relates to Mr. Wetsch, he can

12:26:08  1  testify.

12:26:08  2          As it relates to number eight, preclude

12:26:12  3  Pregis from introducing testimony through its experts

12:26:16  4  beyond the scope of the 26(a)(2)(b) report, again, I

12:26:23  5  don't know what opinions the moving party here is

12:26:30  6  seeking to exclude.  And so, I'm going to deny the

12:26:35  7  motion without prejudice because I'm not going to make

12:26:38  8  some blanket judgment without knowing what the

12:26:41  9  particular testimony is.

12:26:43  10          Obviously, the written reports and

12:26:46  11  deposition testimony would seem to be the boundaries of

12:26:50  12  expert testimony.  But, I'm not willing to make any

12:26:54  13  judgment without some specific identification of

12:26:58  14  evidence.

12:26:59  15          So, objections have to be made at trial.  So

12:27:01  16  the motion on number eight is denied without prejudice.

12:27:07  17          Number nine and that is whether to preclude

12:27:11  18  Pregis from introducing testimony through its damage

12:27:14  19  expert, Mr. Bradford Cornell regarding the appropriate

12:27:17  20  amount of damages based upon the reasonable royalty

12:27:20  21  analysis, I'm going to grant that motion to the extent

12:27:26  22  that Mr. Cornell's attempt to offer alternative

12:27:30  23  calculations derived from hearing testimony at trial the

12:27:38  24  items exposed in his report or deposition testimony

12:27:39  25  would be admissible.

12:27:41  1          As it relates to motion in limine number ten

12:27:45  2    which has to do with precluding Pregis from inferring,

12:27:49  3    suggesting or listing testimony that the fact that

12:27:52  4    Pregis obtained its own patent on the AirSpeed 5000

12:27:57  5    machine is evidence of noninfringement, it seems to me

12:28:04  6    that the issue before the Court is whether the accused

12:28:06  7    device contains all the elements of the claims or the

12:28:13  8    patents in issue.  That is not a matter of comparing

12:28:17  9    machine to machine.  It is a matter of comparing the

12:28:20  10   patent in issue claimed with the accused devices which

12:28:23  11   may be the AirSpeed 5000 or others.

12:28:26  12          I think that the fact that there is a patent

12:28:31  13   from the '134 by -- held by Pregis is admissible.  It is

12:28:41  14   relevant, and it can be presented to the jury in

12:28:49  15   response to claims of infringement.  That is to say that

12:28:53  16   as I understand it, the claim -- the issues here involve

12:28:57  17   actual -- direct infringement or actual infringement and

12:29:01  18   infringement of a doctrine of equivalence.  And it seems

12:29:03  19   to me that evidence of the accused device's origin, what

12:29:11  20   it encompasses and all those things are subject to --

12:29:16  21   proper matter of expert testimony and the fact that the

12:29:19  22   '134 patent is relevant.

12:29:21  23          But again, Pregis cannot argue that the fact

12:29:29  24   that they have a '134 ipso facto means that the AirSpeed

12:29:35  25   5000 machine does not infringe.

| | | |
|---|---|---|
| 12:29:38 | 1 | Rather, Pregis can argue that the '134 |
| 12:29:42 | 2 | patent and that its accused machines to the extent they |
| 12:29:47 | 3 | have testimony to support it are not encompassed within |
| 12:29:49 | 4 | the claims in issue. |
| 12:29:50 | 5 | So, it's a comparison of claims with accused |
| 12:29:52 | 6 | devices, not product to product. |
| 12:29:54 | 7 | With respect to motion in limine number |
| 12:29:58 | 8 | eleven, the Court should precluded Pregis from offering |
| 12:30:05 | 9 | any evidence or testimony that AirSpeed 5000 machine |
| 12:30:07 | 10 | would infringe the '150 other than FPI's contention |
| 12:30:12 | 11 | interrogatory response from the FPI Pactiv litigation. |
| 12:30:20 | 12 | I will grant the motion to preclude that |
| 12:30:30 | 13 | under 402 and 403. |
| 12:30:42 | 14 | Motion in limine 12 has to do with preclude |
| 12:30:47 | 15 | Pregis from offering any evidence or testimony regarding |
| 12:30:50 | 16 | noninfringement based upon the comparison of accused |
| 12:30:53 | 17 | Pregis products and any FPI products. |
| 12:30:55 | 18 | As I stated a moment ago, I'm granting that |
| 12:30:57 | 19 | motion to the extent there's an attempt to compare |
| 12:31:00 | 20 | device to device, accused Pregis products with any FPI |
| 12:31:08 | 21 | products. That does not preclude Pregis from comparing |
| 12:31:12 | 22 | the accused devices to FPI's patented claims. |
| 12:31:14 | 23 | With respect to motion in limine number 13, |
| 12:31:17 | 24 | 14, and 15, let me take up 13 and 14 together. I'm |
| 12:31:22 | 25 | going to grant 14, that the objections will not be read |

12:31:26   1   to the jury as unopposed.

12:31:28   2           With respect to 13 concerning evidence of

12:31:32   3   testimony about Pregis's claim under the Administrative

12:31:35   4   Procedure Act, that is also granted unopposed.

12:31:38   5           With respect to number 15 having to do with

12:31:40   6   commenting, may Pregis comment on the failure of FPI to

12:31:44   7   call the inventors or any other witnesses at trial, now

12:31:48   8   that I've heard the description of what Pregis wants to

12:31:50   9   do, the motion is denied.

12:31:53   10          I'm sorry -- the motion to preclude that is

12:31:56   11  granted, and Pregis may not comment on FPI's failure to

12:32:03   12  call the inventors as witnesses at trial because Pregis

12:32:07   13  has no factual basis for the jury to draw any inference

12:32:12   14  against FPI's failure to have the inventors sign an oath

12:32:19   15  or affirmation the amendment to the patent application

12:32:23   16  in 2005.

12:32:24   17          Now, whatever the facts are supporting that,

12:32:26   18  you can certainly present those facts.  And if the

12:32:30   19  attorney testified that he did not talk to the inventors

12:32:33   20  about the claims, you certainly can bring that up on

12:32:36   21  cross-examination and in your argument.  But, you can't

12:32:39   22  argue that the failure to produce the witnesses somehow

12:32:44   23  should result in drawing a negative inference against

12:32:49   24  FPI.

12:32:50   25          As it relates to number 16, preclude Pregis

12:32:56   1   from making any reference to the motion in limine or

12:32:59   2   objections FPI may make in deposition designations, that

12:33:03   3   is granted as unopposed.

12:33:04   4            And 17, having to do with the motion to

12:33:08   5   preclude Pregis from introducing arguments -- evidence

12:33:11   6   relating to additional relief sought by FPI which I

12:33:15   7   infer to be their claims for equitable relief like

12:33:19   8   injunction, that motion is granted unopposed.

12:33:21   9            So that is the ruling of the Court on the

12:33:23   10   motions in limine filed here by FPI.

12:33:30   11            Now, let's turn to Pregis's motions in

12:33:37   12   limine regarding inadmissible evidence to the extent

12:33:41   13   that there's more left.  I'm going to let in the

12:33:45   14   prosecution history.  I've just told you all that.

12:33:48   15            So, what remains to be argued is the issue

12:33:50   16   of knockoff or FPI -- FP knockoff, it seems to me.

12:34:22   17            Tell me how the testimony comes up and why

12:34:24   18   it should be included.

12:34:25   19            MR. DABNEY:  Well, I think one of the Your

12:34:27   20   Honor's ruling that Your Honor just made actually bears

12:34:30   21   on this issue.

12:34:33   22            The -- motion in limine number 12 that Your

12:34:37   23   Honor's just ruled on, it's comparison, claim to product

12:34:41   24   not product to product, from what we understand, before

12:34:47   25   Pregis was formed when the Pactiv 5000 machine was

| | | |
|---|---|---|
| 12:34:52 | 1 | built, there was some of the people who were involved in |
| 12:34:55 | 2 | that who apparently had obtained a sample of the |
| 12:34:59 | 3 | Aquarius machine and had -- had -- and other third party |
| 12:35:06 | 4 | machines.  And a couple of the people involved |
| 12:35:10 | 5 | apparently used the phrase knockoff or FP knockoff to |
| 12:35:17 | 6 | describe what they were trying to make. |
| 12:35:19 | 7 | THE COURT:  Who is they?  And what was their |
| 12:35:22 | 8 | responsibility in the company? |
| 12:35:24 | 9 | MR. DABNEY:  The documents -- the evidence |
| 12:35:27 | 10 | includes a handwriting note of somebody from Wisconsin |
| 12:35:32 | 11 | by the name of Winiecki who was not deposed by them. |
| 12:35:37 | 12 | And one of the people was a former marketing person at |
| 12:35:43 | 13 | Pactiv by the name of Thomas Trauscht who was deposed. |
| 12:35:50 | 14 | And one of the individual was a person by the name of |
| 12:35:52 | 15 | Allen Box who is named as a coinventor on the patent |
| 12:35:57 | 16 | that -- |
| 12:35:57 | 17 | THE COURT:  How is his last name spelled? |
| 12:35:59 | 18 | MR. DABNEY:  I'm sorry. |
| 12:36:00 | 19 | THE COURT:  How is his last name spelled? |
| 12:36:02 | 20 | MR. DABNEY:  Box, B-O-X. |
| 12:36:05 | 21 | THE COURT:  Okay.  He listed as an inventor, |
| 12:36:06 | 22 | you said? |
| 12:36:07 | 23 | MR. DABNEY:  Yes, he is named coinventor of |
| 12:36:10 | 24 | the Pregis patent. |
| 12:36:10 | 25 | And so, what happened in this case was |

12:36:15  1   because there were in these handwritten notes of

12:36:20  2   Mr. Winiecki, there was a reference to FP knockoffs.

12:36:30  3   This became a phrase that was used in questions over and

12:36:33  4   over again.  And, what did you want to do with this FP

12:36:37  5   knockoff, and was the FP knockoff this, and was the FP

12:36:42  6   knockoff that.

12:36:43  7          And, it is Pregis's position that this

12:36:47  8   phrase is slang.  It has no well understood meaning

12:36:55  9   that's relevant to this case, and it's very obviously

12:36:59  10  being proffered.

12:37:00  11         There's only been one purpose -- one purpose

12:37:04  12  identified by the other side for why the jury in this

12:37:08  13  case involving patents in 2008 and 2009 should hear

12:37:12  14  testimony from third parties that in 2002 and 2003 when

12:37:18  15  they were working on the design of the Pactiv 5000

12:37:24  16  machine, one or more of them said that what they were

12:37:27  17  trying to make was an FP knockoff.

12:37:30  18         The argument that is made is that one of the

12:37:37  19  secondary considerations of nonobviousness is copying.

12:37:42  20  And we agree with that.

12:37:44  21         However, as Your Honor's ruling today makes

12:37:47  22  clear, what's relevant in a case like this are the

12:37:51  23  claims.  And in order for copying to be probative of

12:37:55  24  nonobviousness, the person who copied must have copied

12:37:58  25  something that's claimed as an invention and have done

12:38:02  1   that instead of designing around the patent.

12:38:05  2          So, it stands to reason that if it was so

12:38:07  3   obvious and so trivial, they would have done something

12:38:10  4   else.

12:38:10  5          We say that this argument of theirs has

12:38:15  6   enormous capacity to confuse and mislead because, number

12:38:19  7   one, they're doing the exact thing they just persuaded

12:38:22  8   Your Honor should not be done, which is to compare

12:38:24  9   product and product rather than claim and accused

12:38:27  10  subject matter, number one.

12:38:29  11         And, also, it occurred at a time six or more

12:38:40  12  years before these patents issued.  And so, therefore,

12:38:42  13  it just does not have any tendency to show the

12:38:46  14  nonobviousness of what's now being claimed.

12:38:49  15         I would say, also, that this testimony is

12:38:52  16  itself highly ambiguous as to what even the speakers

12:38:57  17  meant by FP knockoff.  Because if you read the testimony

12:39:01  18  of Mr. Trauscht which Free-Flow has put in, what the man

12:39:04  19  said was, we were trying to build a machine that was

12:39:10  20  compact, that was of a certain weight, that didn't have

12:39:12  21  an external source of compressed air that would be a

12:39:15  22  freestanding machine.

12:39:17  23         And so the term itself is not only slang and

12:39:21  24  ambiguous, but as used by those witnesses at that time.

12:39:24  25  It simply did not and could not have possibly have said

12:39:27   1   what we're trying to knockoff is the claimed invention

12:39:31   2   that came into existence six or seven or eight years

12:39:34   3   later.

12:39:34   4          So, we would respectfully submit that the

12:39:37   5   people who made these utterances passing over all

12:39:41   6   questions of admissibility as to the utterances of

12:39:45   7   themselves, that characterization of what they were

12:39:49   8   doing in 2002 and 2003 cannot be deemed relevant

12:39:55   9   evidence of whether the subject matter that was claimed

12:39:58   10   for the first time in 2008, 2009 --

12:40:02   11          THE COURT:  Well, would the time be the time

12:40:03   12   of the invention or the time it was -- the patent

12:40:06   13   issued?

12:40:07   14          MR. DABNEY:  The focus of obviousness is the

12:40:11   15   claimed subject matter.  Now, for legal -- it's very

12:40:14   16   important to understand.  It's a great question, Your

12:40:16   17   Honor.

12:40:16   18          THE COURT:  So, would you answer it first

12:40:18   19   and then give me your explanation.

12:40:20   20          MR. DABNEY:  Yes.  It's time when the claim

12:40:22   21   was made and allowed.  And the reason for that is the

12:40:28   22   following.

12:40:32   23          For prior art purposes, the statute says

12:40:35   24   that a claim relates back to the earliest effective

12:40:39   25   filing date.  That's true.

| | | |
|---|---|---|
| 12:40:40 | 1 | But, if what you're arguing about is that |
| 12:40:44 | 2 | something claimed much later is nonobvious subject |
| 12:40:48 | 3 | matter when this claim is very different than anything |
| 12:40:51 | 4 | existed before, well then, in terms of the logic that |
| 12:40:55 | 5 | copying supports a conclusion of nonobviousness, you've |
| 12:40:59 | 6 | got to be looking at the claim not the legal status of |
| 12:41:03 | 7 | the claim.  It's the claim itself. |
| 12:41:05 | 8 | So, in this case, if this claim had existed |
| 12:41:08 | 9 | in 2002 and that was something to be avoided, if what |
| 12:41:13 | 10 | had happened is that they had nevertheless infringed or |
| 12:41:18 | 11 | copied that instead of doing something else, then that |
| 12:41:21 | 12 | would be when that would apply. |
| 12:41:23 | 13 | But since these claims undeniably did not |
| 12:41:26 | 14 | exist at that time and these claims as they say, Your |
| 12:41:29 | 15 | Honor, has ruled, the summary judgment motions are |
| 12:41:31 | 16 | different than what was claimed previously.  It's just |
| 12:41:35 | 17 | not logical to say because in 2002 some people in some |
| 12:41:40 | 18 | handwritten notes to say common sense, we want to build |
| 12:41:42 | 19 | an FP knockoff, in ambiguous term that that has some |
| 12:41:48 | 20 | tendency and logic to show that subject matter that was |
| 12:41:50 | 21 | claimed to be an invention for the first time in 2008 |
| 12:41:54 | 22 | and 2009 is not obvious subject matter. |
| 12:41:56 | 23 | THE COURT:  Thank you. |
| 12:41:57 | 24 | MR. DABNEY:  All right.  So -- |
| 12:41:59 | 25 | THE COURT:  Thank you. |

12:42:00  1            MR. DABNEY:  Thank you.

12:42:05  2            MR. WRIGHT:  Brad Wright, Your Honor.

12:42:07  3            First, let's be clear the term FP knockoff

12:42:12  4  did not originate with the attorney who took the

12:42:14  5  deposition.

12:42:14  6            The term FP knockoff appeared on a document

12:42:17  7  that was produced during discovery and the deponent,

12:42:24  8  Mr. Trauscht admitted that that term had been used by

12:42:28  9  him and others during the development of a program whose

12:42:30  10  purpose it was to analyze and emulate competitor

12:42:30  11  products.

12:42:38  12            So the fact that our attorney started using

12:42:39  13  it in questioning, it didn't originate with our

12:42:42  14  attorney.  It originated with the deponent himself.  He

12:42:45  15  was talking about his personal experience.

12:42:46  16            And let me just say we're have happy to

12:42:48  17  stipulate.  We have no intention of using this testimony

12:42:51  18  to show willful infringement.  We are, however, entitled

12:42:54  19  to rely on the testimony to show nonobviousness.

12:42:58  20            The case law is quite clear on this and let

12:43:00  21  me address Mr. Dabney's argument about the time of the

12:43:03  22  invention.

12:43:04  23            We have cited in our papers the *Advanced

12:43:07  24  Display Systems*, Federal Circuit case from 2000 and

12:43:11  25  others that show that the relevant time for the copying

12:43:14  1  inquiry as it relates to nonobviousness is the time of

12:43:18  2  the invention as it relates to the filing date of the

12:43:21  3  patent.

12:43:22  4        The filing date of the patent here, Your

12:43:24  5  Honor, has already ruled we're entitled to our priority

12:43:27  6  claims going all the way back to 1999.

12:43:29  7        Mr. Dabney would apparently have you revisit

12:43:32  8  that and set up a new set of timelines when every set of

12:43:35  9  claim was first presented.

12:43:36  10        And according to Mr. Dabney, it's not

12:43:38  11  sufficient to show copying of the product that was in

12:43:41  12  existence, but you then have to -- we would have to

12:43:44  13  establish copying of each patent that issued as time

12:43:48  14  went by where the claims were different.

12:43:50  15        Well, that's simply not the case law, Your

12:43:55  16  Honor.  And so, we think it's clear.

12:43:56  17        As to the prejudice, Your Honor, the term FP

12:43:58  18  knockoff, as I said, didn't originate with us.  It

12:44:02  19  originated with the deponent.  The deponent was an

12:44:05  20  employee of Pactiv at the time, a predecessor in

12:44:09  21  interest.  He continued to work for Pregis after that.

12:44:11  22  He no longer works for Pregis.

12:44:13  23        We're not trying to attribute this to

12:44:15  24  Pregis.  What's relevant is the evidence of copying by

12:44:17  25  others in the field.

```
12:44:18   1          And if you look at the Advanced Display --
12:44:21   2          THE COURT:  Well, you're talking about a
12:44:22   3   machine, the Pactiv 5000 Air Cushion machine, that was
12:44:28   4   the subject matter of the other lawsuit; wasn't it?
12:44:31   5          MR. WRIGHT:  Yes, that is correct.
12:44:34   6          THE COURT:  But, in this case, we have
12:44:35   7   something called the AirSpeed 5000.
12:44:38   8          MR. WRIGHT:  Yes, it's the same device.
12:44:40   9   They changed the name after Pregis took it over.
12:44:43  10          THE COURT:  But the other lawsuit is
12:44:44  11   resolved?  That's done?
12:44:45  12          MR. WRIGHT:  Yes, that's right.
12:44:46  13          THE COURT:  So, why is this product in this
12:44:47  14   case FP knockoff?  Why would it apply to this case?
12:44:51  15          MR. WRIGHT:  Well, it's evidence that shows
12:44:52  16   that other people appreciated that the FP design which
12:44:58  17   in this case was a prototype at the time.  It was called
12:45:01  18   the Cell-O EZ was recognized by others as worthy of
12:45:07  19   copying.
12:45:07  20          And that tends to show that it would not
12:45:09  21   have been obvious to produce this claimed invention.
12:45:13  22   And the case law is very clear on that, and we have
12:45:16  23   cited the Advanced Display Systems.
12:45:18  24          In that case, they relied --
12:45:19  25          THE COURT:  Well, it's not uncommon for
```

12:45:22  1   competitors to examine other products on the marketplace

12:45:25  2   and reverse engineer and try to see if they can improve

12:45:28  3   upon the device.  That's not uncommon.

12:45:30  4           MR. WRIGHT:  You're absolutely right, Your

12:45:31  5   Honor.  But the fact that it goes beyond that.  The use

12:45:33  6   of the term knockoff implies they were trying to copy

12:45:36  7   it.

12:45:36  8           And there's other testimony in here.  Of

12:45:36  9   course --

12:45:36 10           THE COURT:  Well, I'm not so sure about

12:45:38 11   that.  I remember when computers came out in the 1980s,

12:45:41 12   I think in 1983, I had my first computer on my desk.  We

12:45:45 13   called it an IBM clone, but it wasn't an IBM.  It was

12:45:49 14   just like an IBM.  It had a hard drive and used MS DOS.

12:45:54 15   You may able to old enough to remember that, and we

12:45:56 16   called them IBM clones.  And that doesn't necessarily

12:45:58 17   mean that they were infringing upon the IBM patents if

12:46:01 18   it was a different device and it had some changes in it,

12:46:04 19   does it?

12:46:05 20           MR. WRIGHT:  No, Your Honor, but it's not

12:46:07 21   necessarily to establish that they identically copied

12:46:11 22   it.

12:46:11 23           THE COURT:  No, I'm focused on the term and

12:46:13 24   under 403 whether to allow it in or not.

12:46:16 25           And there are three things that stand out.

12:46:18   1   First we're talking about a different device.  The

12:46:23   2   timing of this issue is a problem.  It seems to me that

12:46:26   3   the other lawsuit has handled some of these issues

12:46:30   4   involving these FP Pactiv device.

12:46:36   5           The term was used by a couple of marketing

12:46:41   6   person -- what's Mr. Trauscht's title?  What is his

12:46:47   7   title?

12:46:48   8           MR. WRIGHT:  I don't know what his title is

12:46:49   9   but he was on the technical team designing the machine.

12:46:52  10   So he's in the thick of it.

12:46:53  11           THE COURT:  Right.

12:46:56  12           MR. WRIGHT:  Your Honor, if I may, is it

12:46:58  13   possible that perhaps a jury instruction that instructs

12:47:02  14   the jury not to pay too much attention to the term might

12:47:06  15   cure this problem.

12:47:07  16           The difficulty for us is because the witness

12:47:09  17   started using the term and our attorney questioning him

12:47:11  18   used the term, this is going to end up striking a lot of

12:47:15  19   the evidence of copying from the case.

12:47:18  20           So, there's no other way to get this in

12:47:20  21   because it's in the questions.  So perhaps you can

12:47:23  22   instruct the jury that the term FP knockoff by itself

12:47:28  23   shouldn't take on too much significance.  And now here

12:47:30  24   we have the testimony about their program that's set up

12:47:32  25   to examine competitors products and emulate those

12:47:36  1    products.

12:47:36  2              THE COURT:  All right, thank you.

12:47:42  3              I'm going to grant the motion to exclude the

12:47:45  4    term knockoff, FP knockoff, which in my view refers to

12:47:50  5    this Pactiv 5000 Air Cushion machine.

12:47:53  6              It was the subject of prior litigation in

12:47:56  7    the Free-Flow International -- Free-Flow Packaging

12:47:58  8    International versus Pactiv Corporation case.

12:48:02  9              It's -- I think it creates confusion for the

12:48:07  10   jury under 403, waste of time.  I think that the

12:48:10  11   substantive testimony of what devices Pregis used when

12:48:15  12   they were developing their product to the extent it

12:48:20  13   might be relevant to come in.  But the term here is

12:48:26  14   going to inject into the trial something that does not

12:48:29  15   belong and will create confusion.

12:48:31  16              This case is not about the reference by

12:48:35  17   three individuals to the terms knockoff.  I don't think

12:48:39  18   that it tends to prove an issue in this case in a way

12:48:45  19   that does not lead to some confusion for the jury.

12:48:49  20              So, that aspect of the motion is granted.

12:48:51  21   Thank you.

12:48:57  22              I think I've covered those before me for the

12:48:59  23   day.

12:49:03  24              MR. DABNEY:  Your Honor, the only motion

12:49:04  25   Your Honor has not specifically addressed had to do with

| | | |
|---|---|---|
| 12:49:09 | 1 | our motions in limine two and three.  If I could address |
| 12:49:13 | 2 | those briefly I think I could predict what Your Honor's |
| 12:49:16 | 3 | ruling will be on it, but I'd like to at least address |
| 12:49:20 | 4 | them briefly. |
| 12:49:20 | 5 | THE COURT:  All right.  Let me pull your |
| 12:49:23 | 6 | motion back up in front of me. |
| 12:49:39 | 7 | This is the motion in limine to preclude |
| 12:49:42 | 8 | inadmissible evidence? |
| 12:49:44 | 9 | MR. DABNEY:  Yes, our motions two and three. |
| 12:49:46 | 10 | Your Honor has ruled today that the prosecution history |
| 12:49:49 | 11 | documents are going to come in, and we accept that |
| 12:49:52 | 12 | ruling. |
| 12:49:53 | 13 | Our motion, though, was a much more narrowly |
| 12:49:57 | 14 | focused motion than that.  And it has to do with the |
| 12:50:00 | 15 | extent to which -- we just went through arguing about |
| 12:50:03 | 16 | commenting on what absent witnesses being present or |
| 12:50:08 | 17 | absent would be allowed. |
| 12:50:10 | 18 | We're very concerned in this case based on |
| 12:50:13 | 19 | the opposition papers that the trial of this case is |
| 12:50:17 | 20 | going to include argument along the following lines. |
| 12:50:23 | 21 | The defendant wants to tell the jury that |
| 12:50:26 | 22 | the patent office heard our arguments and rejected them |
| 12:50:31 | 23 | and because of that, the jury should find in their |
| 12:50:34 | 24 | favor.  And we believe that this is improper on a number |
| 12:50:38 | 25 | of grounds. |

|           |    |                                                                    |
|-----------|----|--------------------------------------------------------------------|
| 12:50:39  | 1  | THE COURT:  Well, you've outlined those in                         |
| 12:50:41  | 2  | your --                                                            |
| 12:50:41  | 3  | MR. DABNEY:  Yes.                                                   |
| 12:50:42  | 4  | THE COURT: -- papers.  The PTO did not                             |
| 12:50:49  | 5  | consider infringement.                                             |
| 12:50:50  | 6  | MR. DABNEY:  The PTO did not consider                              |
| 12:50:53  | 7  | infringement, and the PTO also did not consider any                |
| 12:50:56  | 8  | testimony that's going to be received at this trial.               |
| 12:50:59  | 9  | THE COURT:  Right.                                                  |
| 12:51:00  | 10 | MR. DABNEY:  And, it seems to me that what                         |
| 12:51:03  | 11 | we have here, and this sort of goes into the motion to             |
| 12:51:05  | 12 | strike and all of that.  And I fully understand Your               |
| 12:51:09  | 13 | Honor does not want to be the first in the nation, and I           |
| 12:51:11  | 14 | apologize if our arguments --                                      |
| 12:51:12  | 15 | THE COURT:  Well, novel arguments intrigue                         |
| 12:51:15  | 16 | me and I've had cases where I was the first judge to               |
| 12:51:18  | 17 | declare a statute constitution, unconstitutional.  I'm             |
| 12:51:21  | 18 | prepared to do it.  I just want to make sure we're                 |
| 12:51:23  | 19 | making a record of what you were doing.                            |
| 12:51:25  | 20 | MR. DABNEY:  Yes, all right.  So just let me                       |
| 12:51:26  | 21 | try to explain where we're coming from on this.                    |
| 12:51:29  | 22 | THE COURT:  Well, you just said that -- I                          |
| 12:51:30  | 23 | understand your position.  You're saying that Free-Flow            |
| 12:51:35  | 24 | cannot stand up and say the PTO has rejected these                 |
| 12:51:41  | 25 | arguments and therefore Pregis infringes.  I don't think           |

12:51:44   1   they're going to do that.

12:51:44   2            MR. DABNEY:  Okay.

12:51:44   3            THE COURT:  I think they know they can't do

12:51:46   4   that.  Otherwise there would be in necessity for a

12:51:49   5   trial.

12:51:49   6            MR. DABNEY:  That's right.  But even if they

12:51:51   7   can't say as we can't say we got a patent, ipso facto we

12:51:57   8   don't infringe, what we're concerned about is -- and

12:52:01   9   they state it better in their opposition than I could.

12:52:05  10   They said on page four of their opposition to our motion

12:52:08  11   in limine just -- I couldn't put it better in --

12:52:21  12            THE COURT:  Again, only to show that PTO was

12:52:23  13   aware of the arguments and rejected them?

12:52:25  14            MR. DABNEY:  Yes.  I think this sentence in

12:52:27  15   the middle of the page is exactly the concern that we

12:52:33  16   have because --

12:52:33  17            THE COURT:  Okay.

12:52:34  18            MR. DABNEY:  If -- if what happened here was

12:52:37  19   that the patent office had rejected a claim and you went

12:52:42  20   into district court and you introduced new evidence,

12:52:44  21   it's very clear in those circumstances that the Court as

12:52:49  22   to make de novo fact findings because the patent office

12:52:54  23   didn't have the benefit of the evidence.

12:52:56  24            So, of course its determinations on the

12:52:59  25   basis of a one-sided abbreviated presentation are simply

| | | |
|---|---|---|
| 12:53:04 | 1 | not -- they obviously can't be received as the |
| 12:53:08 | 2 | equivalent of expert testimony in the trial. |
| 12:53:10 | 3 | It's just at that phrase of the proceeding, |
| 12:53:12 | 4 | the patent office on the limited information it had |
| 12:53:15 | 5 | available to it reached certain legal conclusions. |
| 12:53:18 | 6 | Now, what we have be asking Your Honor to do |
| 12:53:20 | 7 | on the basis of a much more expanded record with the |
| 12:53:23 | 8 | benefit of expert testimony and demonstrative and so on |
| 12:53:27 | 9 | is to say, okay, now that the whole story has both |
| 12:53:30 | 10 | sides.  And for the first time a government official has |
| 12:53:32 | 11 | been presented with a full story from both sides, we |
| 12:53:35 | 12 | will ask that the Court make effectively de novo |
| 12:53:40 | 13 | determinations on the basis of the expanded record. |
| 12:53:42 | 14 | In a jury trial, you have the problem that |
| 12:53:47 | 15 | administrative agency review is essentially unfolding in |
| 12:53:52 | 16 | the presence of the jury.  And the question then |
| 12:53:54 | 17 | naturally is, well how -- what is the evidentiary |
| 12:53:59 | 18 | admissibility of the fact that someone in the patent |
| 12:54:02 | 19 | office may or may not have made a statement or you could |
| 12:54:05 | 20 | infer from what they did, that they did or did not think |
| 12:54:08 | 21 | a certain thing. |
| 12:54:09 | 22 | And that, we believe, is a form of hearsay, |
| 12:54:14 | 23 | that it should not be allowed to the defendant to say |
| 12:54:18 | 24 | this reference clearly doesn't disclose a block because |
| 12:54:22 | 25 | the patent office granted the patent.  And this was of |

12:54:26  1    record and therefore the patent office must have

12:54:28  2    concluded that this reference doesn't disclose a block.

12:54:31  3          That's the kind of problem that we have.

12:54:33  4    Even though there's no finding to that effect and we

12:54:35  5    don't even know that that's the case.

12:54:36  6          THE COURT:  Well, I think that the argument

12:54:39  7    you just made could be made if there are facts to

12:54:43  8    support it.

12:54:43  9          If the application or the response to it

12:54:46  10   from counsel suggested that the examiner had before him

12:54:51  11   or her the particular statement, that the fact that the

12:54:59  12   patent claim as allowed is distinctive is a part of the

12:55:02  13   prosecution evidence.  That's going to come into

12:55:04  14   evidence any way.  It's just your bad view or

12:55:06  15   characterization of it.

12:55:07  16         The jury instructions will tell the jury

12:55:08  17   they have to consider the issues of infringement.  And

12:55:12  18   those instructions will encompass not only the burden of

12:55:16  19   proof for invalidity but also the patent is presumed to

12:55:20  20   be valid.  Those are instructions that are given all the

12:55:22  21   time.

12:55:22  22         MR. DABNEY:  I agree, and I'm trying to just

12:55:24  23   narrowly focused on I don't want to be confronted in the

12:55:29  24   courtroom with a phantom of an individual who can't be

12:55:33  25   seen, that I can't cross-examine, that I can't ask him,

| | | |
|---|---|---|
| 12:55:35 | 1 | well did you consider this, did you consider that, did |
| 12:55:38 | 2 | you consider that. |
| 12:55:38 | 3 | THE COURT:  I'm not worried about that.  But |
| 12:55:40 | 4 | let me hear from opposing counsel. |
| 12:55:42 | 5 | MR. DABNEY:  Okay, thank you. |
| 12:55:45 | 6 | MR. WRIGHT:  Your Honor, with all due |
| 12:55:47 | 7 | respect, Mr. Dabney is confusing the question of |
| 12:55:49 | 8 | admissibility with the question of the weight to be |
| 12:55:52 | 9 | given to the evidence once it has been admitted. |
| 12:55:54 | 10 | As our brief points out, clearly, the PTO |
| 12:55:59 | 11 | records fall within an exception to the hearsay rule. |
| 12:56:01 | 12 | It's a public record under 803(8), and so the record |
| 12:56:05 | 13 | comes in. |
| 12:56:05 | 14 | The question about what weight to be |
| 12:56:08 | 15 | accorded to various statements that are in the record is |
| 12:56:10 | 16 | completely separate inquiry.  So the hearsay inquiry is |
| 12:56:14 | 17 | over. |
| 12:56:15 | 18 | Fortunately the Federal Circuit has already |
| 12:56:17 | 19 | given us some guidance on what weight should be given to |
| 12:56:20 | 20 | the statements in the public record. |
| 12:56:22 | 21 | On page six of our opposition, we have a |
| 12:56:25 | 22 | cite from the *Mendenhall* case of the Federal Circuit. |
| 12:56:29 | 23 | This is what the jury instruction said in this case. |
| 12:56:34 | 24 | "Because the deference to be given to the patent |
| 12:56:36 | 25 | office's determination is related to the evidence it had |

12:56:40   1   before you, you should consider the evidence presented

12:56:41   2   to the patent office during the reissue application

12:56:44   3   process.  Compare it with the evidence you have heard in

12:56:46   4   this case and then determine what weight to give to the

12:56:49   5   patent office's determination".

12:56:51   6            So, the Federal Circuit has approved that

12:56:55   7   instruction.  And we think Your Honor can adopt similar

12:56:59   8   instructions that can carefully guide the jury not to

12:57:02   9   give undue weight to particular statements in the

12:57:04   10  record.

12:57:05   11           By the same token, we're entitled to point

12:57:09   12  to things in the record that tend to support our

12:57:11   13  position, and Mr. Dabney can point to things in the

12:57:14   14  record and his expert witness apparently is going to

12:57:16   15  call in question things that were made.  But we do have

12:57:19   16  this presumption --

12:57:19   17           THE COURT:  But, his point is that you can't

12:57:22   18  argue to the jury that because the PTO determined to

12:57:25   19  allow planar path and not substantially planar path that

12:57:30   20  that demonstrates infringement and that, ladies and

12:57:34   21  gentlemen, you need not consider all the other evidence

12:57:37   22  being presented to you.  That's what he's saying.

12:57:39   23           MR. WRIGHT:  Absolutely, there was no

12:57:41   24  question of infringement before the patent office.

12:57:43   25           And, with all due respect, this question of

| | | |
|---|---|---|
| 12:57:46 | 1 | planar path is a little bit of a -- |
| 12:57:48 | 2 | THE COURT:  I'm just using that as an |
| 12:57:51 | 3 | example.  What I'm trying to say is Mr. Dabney's concern |
| 12:57:56 | 4 | is that you will waive around the documents and say we |
| 12:58:00 | 5 | win because we have this document.  And I don't think |
| 12:58:03 | 6 | it's that simple. |
| 12:58:04 | 7 | I think that the case involves a |
| 12:58:06 | 8 | presentation of whatever evidence both sides have here |
| 12:58:09 | 9 | and the jury has to make its own judgment about |
| 12:58:12 | 10 | infringement which nobody has ever decided before this |
| 12:58:14 | 11 | case as far as I'm aware of. |
| 12:58:15 | 12 | MR. WRIGHT:  In my view, the infringement |
| 12:58:17 | 13 | issue is not even a question here.  What they're really |
| 12:58:19 | 14 | getting at is on the validity side. |
| 12:58:22 | 15 | They don't want us to be able to say the |
| 12:58:24 | 16 | same patents that you're seeing in court today were |
| 12:58:28 | 17 | already before the patent office and the patent office |
| 12:58:30 | 18 | looked at them and decided to allow the patents.  They |
| 12:58:32 | 19 | don't want us to say that. |
| 12:58:32 | 20 | THE COURT:  Oh, you can say that.  I don't |
| 12:58:34 | 21 | think there's any problem with your saying that.  That's |
| 12:58:35 | 22 | a fact. |
| 12:58:36 | 23 | The fact is the PTO did allow patents.  That |
| 12:58:39 | 24 | has nothing to do with whether or not it's valid or not. |
| 12:58:43 | 25 | The validity of it is a judgment that still has to be |

12:58:46   1   made based upon the evidence.  And the patent is assumed

12:58:48   2   to be valid.

12:58:49   3            And the burden of proof is on the person

12:58:51   4   seeking to attack the patent by clear and convincing

12:58:54   5   evidence to demonstrate that it is invalid on some

12:58:57   6   ground recognized by statute.

12:58:59   7            So, I -- does that -- what you -- do you

12:59:03   8   agree with what I just said?

12:59:05   9            MR. WRIGHT:  Yes, I do agree with what you

12:59:06   10  just said.

12:59:07   11           THE COURT:  Okay.

12:59:07   12           MR. WRIGHT:  I guess the only gloss to it I

12:59:09   13  would add is we think we're entitled to point out to the

12:59:13   14  jury that the prior art previously considered by the

12:59:15   15  patent office is in court here again today and that

12:59:18   16  helps our presumption of validity.

12:59:20   17           And that goes to the final question on the

12:59:22   18  motion in limine which I don't think you've addressed

12:59:24   19  yet and that is whether the jury can even be informed

12:59:27   20  about the presumption of validity.  Pregis has taken the

12:59:31   21  motion that they cannot.

12:59:31   22           THE COURT:  I just said that would get an

12:59:33   23  instruction.

12:59:33   24           MR. WRIGHT:  So that issue has been

12:59:34   25  resolved.

12:59:35  1          THE COURT:  Okay, thank you.  All right.

12:59:37  2          I think where we are, Mr. Dabney, is that

12:59:41  3  the prosecution record is going to be before the Court.

12:59:46  4          I've invited you all to make your own charts

12:59:48  5  about it so the jury will be able to understand what

12:59:50  6  your theory is, as long as the chart is keyed to the

12:59:55  7  particular documents.

12:59:56  8          And I would invite you all to just submit

12:59:57  9  one record so the citations are uniform.  Use the bates

13:00:01 10  number that you have on the prosecution history so the

13:00:03 11  jury will be able to figure out just what you're

13:00:06 12  referring to.

13:00:06 13          And, you all are free to argue, it seems to

13:00:10 14  me, whatever was submitted to the PTO and what the PTO

13:00:17 15  rendered as it relates to the various claims.  But the

13:00:24 16  jury's going to be instructed of their obligation to

13:00:28 17  consider invalidity.

13:00:30 18          They will be instructed on presumption of

13:00:32 19  validity of a patent.  And they'll be instructed on

13:00:37 20  infringement, actual and doctrine of equivalence.

13:00:42 21          And I expect you all to prepare instructions

13:00:44 22  as I've given you direction to do so in the trial

13:00:49 23  letter.

13:00:50 24          I think that now I've covered everything.

13:00:52 25  All right.  We're in recess.

13:00:54  1          MR. WRIGHT:  Your Honor --

13:00:55  2          THE COURT:  I'm sorry.

13:00:56  3          MR. WRIGHT:  One final question.  We're a

13:00:58  4  little bit confused.  Did you say that the patent law

13:01:01  5  experts can or cannot testify?  I know you said we could

13:01:05  6  bring in some charts.

13:01:06  7          THE COURT:  Yeah, somebody can come in and

13:01:07  8  explain the charts and that person can be a lawyer.

13:01:09  9  That's fine.

13:01:10  10          But they're not going to be characterizing

13:01:12  11  it by saying well this -- that the PTO did this means

13:01:17  12  that they rejected that, no, no.

13:01:19  13          MR. WRIGHT:  And is the testimony limited to

13:01:21  14  the demonstrative or can they go through the whole

13:01:24  15  record?

13:01:24  16          THE COURT:  Well, I thought the

13:01:25  17  demonstrative would -- they would walk the person --

13:01:29  18  walk the jury through the prosecution history from their

13:01:31  19  point of view identifying the key facts of things they

13:01:34  20  thought were important in the prosecution history --

13:01:36  21          MR. WRIGHT:  Okay.

13:01:37  22          THE COURT: -- without characterizing it in

13:01:39  23  an argumentative fashion.

13:01:40  24          MR. WRIGHT:  Thank you.  And then one final

13:01:41  25  point.  You did agree to revisit your ruling on the

13:01:44  1    252 --

13:01:45  2              THE COURT:  I did.  I have to look at the

13:01:47  3    briefs.  I can't do it here in court.

13:01:50  4              Thank you.

13:01:50  5              MR. WRIGHT:  Thank you.

13:02:14  6              (Proceedings concluded at 1:02 p.m.)

          7

          8

          9

         10

         11

         12

         13

         14

         15

         16

         17

         18

         19

         20

         21

         22

         23

         24

         25

1

2

3                     CERTIFICATE OF REPORTER

4

5              I, Renecia Wilson, an official court

6    reporter for the United State District Court of

7    Virginia, Alexandria Division, do hereby certify that I

8    reported by machine shorthand, in my official capacity,

9    the proceedings had upon the motions in the case of

10   Pregis Corporation vs. James J. Doll, et al.

11             I further certify that I was authorized and

12   did report by stenotype the proceedings and evidence in

13   said motions, and that the foregoing pages, numbered 1

14   to 94, inclusive, constitute the official transcript of

15   said proceedings as taken from my shorthand notes.

16             IN WITNESS WHEREOF, I have hereto

17   subscribed my name this 26th day of January , 2010.

18

19                        _____/s/_____

                             Renecia Wilson, RMR, CRR
20                           Official Court Reporter

21

22

23

24

25