```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF VIRGINIA
                   ALEXANDRIA DIVISION
```

```
Pregis Corporation,              )
                                 )
         Plaintiff,              )
                                 )
              v.                 )      Case No. 1:09cv467(GBL)
                                 )
John J. Doll,                    )
                                 )
         Acting Under Secretary  )
         for Commerce for        )
         Intellectual Property   )
         and Acting Director of  )
         the United States Patent)
         and Trademark Office,   )
                                 )
United States Patent and         )
Trademark Office, and            )
                                 )
Free-Flow Packaging              )
International, Inc.,             )
                                 )
         Defendants.             )
```

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Free-Flow
Packaging International, Inc.'s ("FPI" or "FP") Motion for
Partial Summary Judgment. (Dkt. No. 87.)  This case concerns
Plaintiff Pregis Corporation's ("Pregis") action against FPI
seeking a declaratory judgment of noninfringement based on its
allegation that four of FPI's patents are wholly or partially
invalid and FPI's counterclaims alleging infringement of these
patents.

There are six issues before the Court.  The first issue is
whether the August 29, 2005, Settlement Agreement and Release

                              1

between FPI and non-party Pactiv Corporation ("the FPI-Pactiv Agreement" or "the Agreement") relieves Pregis[1] of liability for infringement of the patents-in-suit. The second issue is whether Pregis directly infringed U.S. Patent Nos. 7,325,377 ("Fuss '377 Patent"), 7,526,904 ("Fuss '904 Patent"), 7,536,837 ("Perkins '837 Patent"), and 7,361,397 ("Perkins '397 Patent). The third issue is whether Pregis has met its burden to prove, by clear and convincing evidence, that the Perkins '837 Patent is invalid under 35 U.S.C. §§ 112 and 132 for improperly introducing new matter to the patent application during prosecution. The fourth issue is whether the Perkins '837, Fuss '377, and Fuss '904 Patents are invalid under 35 U.S.C. § 102 as being anticipated by U.S. Patent No. 6,209,286 ("the '286 Patent"). The fifth issue is whether Pregis has met its burden to prove, by clear and convincing evidence, that the Perkins '837 and Fuss '904 Patents are invalid under 35 U.S.C. § 101 for double patenting. The sixth issue is whether Pregis is entitled to intervening rights under 35 U.S.C. § 252 where Pregis contends that FPI is precluded from recovering damages for Pregis's infringement of the Perkins '837 Patent for the period prior to May 6, 2008.

The Court grants FPI's Motion in part and denies the Motion in part. First, the Court grants FPI's Motion as to the

---

[1] Pregis and FPI have stipulated that Pregis is successor-in-interest to the protective packaging business of Pactiv. (Dkt. No. 77 ¶ 30.) For purposes of this case, Pregis further stipulates that it is responsible for all use and all manufacture of all AirSpeed 5000 and AirSpeed SMART machines in the United States since October 2005. (Dkt. No. 77 ¶¶ 48-49.)

Agreement because the patents-in-suit are not the subject of the
Agreement and the Agreement does not preclude FPI from asserting
infringement claims involving these patents against Pregis.
Second, the Court denies FPI's Motion for Summary Judgment on the
issue of direct infringement of the four patents because genuine
issues of fact exist as to whether the accused devices contain
each and every element recited in the asserted claims of the Fuss
'377, Fuss '904, Perkins '837, and Perkins '397 Patents. Third,
the Court grants FPI's Motion as to Pregis's invalidity defense
concerning the Perkins '837 Patent under 35 U.S.C. §§ 112 and 132
because Pregis cannot prove, by clear and convincing evidence,
that new matter was improperly introduced during the patent
prosecution. Fourth, the Court grants FPI's Motion as to
Pregis's invalidity defense under 35 U.S.C. § 102 because Pregis
concedes that the '286 Patent is not prior art to the Fuss '377
and Fuss '904 Patents and Pregis cannot establish, by clear and
convincing evidence, that the '286 Patent is prior art to the
Perkins '837 Patent. Fifth, the Court grants FPI's Motion as to
Pregis's invalidity defense under 35 U.S.C. § 101 because Pregis
cannot establish, by clear and convincing evidence, that these
patents claim the same inventions previously patented in the '286
Patent and U.S. Patent No. 6,786,022, respectively. Sixth, the
Court grants FPI's Motion as to intervening rights under 35
U.S.C. § 252 because this issue is irrelevant as none of the

3

patents-in-suit are reissue patents. The Court addresses each issue in turn below.

I. BACKGROUND

This is a patent infringement case. Pregis and FPI are direct competitors in the business of making and selling air cushion products and apparatus. FPI owns several patents related to air cushion technology.

Among the four FPI patents asserted in this case, the Fuss '377, Fuss '904, and Perkins '837 Patents are related to machines used to make air-filled packing cushions. The Perkins '397 Patent concerns the plastic film used in the machines. The Fuss '377 Patent, titled "Apparatus for Making Pneumatically Filled Packing Cushions" and issued on February 5, 2008, is directed to machines making air-filled cushions from plastic film for packaging. Fuss '377 Patent, at [54] (filed May 11, 2004). Asserted Claim 1 of the patent recites an apparatus that comprises a sealing mechanism that contains a "pair of blocks . . . wherein at least one of the blocks has a source of heat." Fuss '377 Patent col.8 ll.21-24. Similarly, asserted Claim 4 of a related patent, the Fuss '904 Patent,[2] issued on May 5, 2009, recites a system that comprises an apparatus with a sealing mechanism that contains a "pair of blocks . . . wherein at least one of the blocks has a source of heat." Fuss '904 Patent col.8

---

[2] The Fuss '904 Patent is related to the Fuss '377 Patent in that the Fuss '904 Patent issued from a patent application, Application No. 11/867,032, that was a continuation of the patent application, Application No. 10/843,904, that became the Fuss '377 Patent. In addition, the two patents have same title.

ll.15-19 (filed Oct. 4, 2007). Moreover, Claim 10 of the Fuss '904 Patent discloses an apparatus with a "sealing mechanism [that] comprises a source of heat." Fuss '904 Patent col.8 ll.50-51.

The Perkins '837 Patent, titled "Apparatus for Inflating and Sealing Pillows in Packaging Cushions" and issued on May 26, 2009, is directed to a system for inflating and sealing air-filled pillows for packaging. Perkins '837 Patent, at [54] (filed July 22, 2005). Asserted Claims 1, 8, 13 and 14 of the patent recite a system that contains "drive rollers that cause the plastic film to be gripped at or near the narrow longitudinally extending channel and drawn in a continuous and uninterrupted manner through inflation, sealing and slitting mechanisms in a planar path." Perkins '837 Patent col.14 ll.4-8, 65-66, col.15 ll.1-3, 44-48, col.16 ll.29-33.

The Perkins '397 Patent, titled "Film Material for Air-filled Packing Cushions" and issued on April 22, 2008, claims preconfigured plastic film used in the machines to make air-filled packing cushions. Perkins '397 Patent, at [54] (filed July 27, 2006). Asserted Claim 1 recites a supply of preconfigured plastic film that comprises "a plurality of generally rectangular inflatable chambers each having three sides closed and a fourth side with an unsealed opening into the longitudinally extending channel, wherein a side opposite the fourth side is defined by a closed longitudinal edge of the

5

film." Perkins '397 Patent col.12 ll.47-51.

In 2003, FPI filed suit against Pactiv Corporation ("Pactiv"), another company engaged in the business of making air-filled cushions, alleging that a certain Pactiv air cushion machine, the Pactiv 5000, infringed FPI's U.S. Patent No. 6,659,150 ("the '150 Patent"). On August 29, 2005, the two parties entered into a written Settlement Agreement and Release i.e., the FPI-Pactiv Agreement. Paragraphs 2 and 3 of the "AGREEMENTS" section set forth the rights and liabilities of the parties with respect to the patents-in-suit:

> 2. <u>Agreement of Non-Liability and Covenant Not to Sue</u>. FP agrees that Pactiv and its customers, dealers, suppliers, distributors, and users have not past, present or future liability to FP for infringement of any of the existing claims of the Patents or any substantially identical claims that might be included in any reissue patents. FP covenants that it is estopped from asserting and it will not assert liability for the making, selling, or using of any Pactiv product that would infringe the existing claims of the Patents or any substantially identical claims that might be included in any reissue patents. Should FP sue Pactiv . . . for infringement of any reissued claims that are not substantially identical to the claims of the Patents, FP agrees that the amount of any damages that might result from said suit would run from the date of the re-issuance of the claims . . . . FP acknowledges that such agreements and covenant not to sue as set forth herein expressly extend to any third party that acquires by any means or otherwise obtains rights in and to Pactiv's protective packaging business, in whole or in part . . . .

> 3. <u>FP's Release</u>. FP releases Pactiv and its customers, dealers, suppliers, distributors, and users from any claim, obligation, or liability, whether past, present, or future, for any and all damage and injury sustained by FP as a result of Pactiv's alleged infringement of the Patents . . . . FP acknowledges that this release as set forth therein expressly extends to any third party that acquires by any means or otherwise obtains rights in and to Pactiv's

6

protective packaging business, in whole or in part . . . .
For the sake of clarity, Pactiv and FP acknowledge that this
release is not intended to release claims arising out of
infringement, present or future, by any person or entity of
(a) FP domestic or foreign patents that are not Patents as
defined under this Agreement, or (2) re-issued claims of
patents that are not the same or substantially identical to
the current claims of the Patents as defined under this
Agreement.

(Def.'s Ex. 14 at 2-4.)

    In October 2005, Pregis acquired Pactiv's protective

packing business and renamed the Pactiv 5000 machines AirSpeed

5000.  Afterwards, FPI offered to license the Fuss '377, Fuss

'904, Perkins '837, and Perkins '397 Patents to Pregis without

success.  On April 29, 2009, Pregis brought this action seeking

a declaratory judgment of noninfringement based on its

allegation that these patents are wholly or partially invalid.

In response, FPI filed counterclaims against Pregis for

infringement of these patents.  FPI now moves for partial

summary judgment on the issues of direct infringement, three of

Pregis's invalidity defenses, and intervening rights under 35

U.S.C. § 252.

II.  DISCUSSION

A.  Standard of Review

    Summary judgment is appropriate in a patent case, as in

other cases, when there is no genuine issue as to any material

fact and the moving party is entitled to judgment as a matter of

law.  FED. R. CIV. P. 56(c); *Nike Inc. v. Wolverine World Wide,*
*Inc.,* 43 F.3d 644, 646 (Fed. Cir. 1994).  Whether a fact is

considered to be "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue is one where the "evidence is such that a reasonable jury could return a verdict for the nonmoving party," as opposed to evidence that "is so one-sided that one party must prevail as a matter of law." *Id.* at 248, 252.

When analyzing a summary judgment motion, the facts must be construed in the light most favorable to the non-movant, and all reasonable inferences must be drawn in the non-movant's favor. *Id.* at 255. Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The non-moving party's opposition must consist of more than mere unsupported allegations or denials; it must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

B. Analysis

    1. *The FPI-Pactiv Agreement*

The Court grants FPI's Motion for Summary Judgment as to the FPI-Pactiv Agreement because the patents-in-suit were not the subject of the FPI-Pactiv Agreement and the Agreement does not preclude FPI from asserting its rights in these patents against Pregis.

A settlement agreement is a contract, and the interpretation of such agreement is a question of law. *Augustine Med., Inc. v. Progressive Dynamics, Inc.*, 194 F.3d 1367, 1370 (Fed. Cir. 1999). A court "applies the state's contract law in interpreting a settlement agreement." *Id.* The FPI-Pactiv Agreement provides that "Delaware law governs this Agreement, and that the Agreement shall be construed as a whole in accordance with its fair meaning and in accordance with the laws of Delaware." (Def.'s Ex. 14 at 6.) Therefore, the Court applies Delaware law in construing the Agreement. *See Semitool, Inc., v. Dynamic Micro Sys. Semiconductor Equip. GmbH*, 444 F.3d 1337, 1341 (Fed. Cir. 2006) (applying state law in interpreting a settlement agreement resulting from an infringement action as provided in the agreement).

Under Delaware law, the proper interpretation of language in a contract is a question of law. *Watkins v. Beatrice Cos., Inc.*, 560 A.2d 1016, 1021 (Del. 1989). The purpose of contract

interpretation is to effectuate the express intent of the parties. *Id.* at 1020. Thus, the correct interpretation of a contract primarily focuses upon the search for the common meaning of the parties. *Id.* at 1021. A court will recognize the "plain meaning" of language used in a contract when there is "a generally prevailing meaning and there is no evidence that the parties intended the language to have any other meaning." *Id.* (citation omitted). In addition, the court construes the agreement as a whole, "giving effect to all provisions therein." *E.I. duPont de Nemours & Co., Inc. v. Shell Oil Co.*, 498 A.2d 1108, 1113 (Del. 1985) (*en banc*).

Here, reading the entire Agreement as a whole, the Court finds that the application of the Agreement is limited to the patents asserted in the prior litigation between FPI and Pactiv and therefore does not bar FPI's claims as to the patents-in-suit. The Agreement states that "FP is the sole owner of U.S. Patent Nos. 6,659,150, 6,582,800, 6,519,916, and 6,672,033 (collectively, the 'Patents')." (Def.'s Ex. 14 at 1.) None of the patents asserted in the current case are among those expressly included in the Agreement's definition of "Patents." In fact, the United States Patent and Trademark Office ("USPTO") had not yet issued any of the patents-in-suit at the time that the parties negotiated the Agreement. Furthermore, though paragraph 3 releases Pactiv's successor-in-interest from liability for "Pactiv's alleged infringement of the Patents," it

also emphasizes that "[f]or the sake of clarity . . . this release is not intended to release claims arising out of acts of infringement, present or future," by any person or entity of "FP domestic or foreign patents *that are not Patents as defined under this Agreement.*" (Def.'s Ex. 14 at 3-4.) (emphasis added). As mentioned above, these patents-in-suit are not included in the Agreement's definition of "Patents." Thus, these patents-in-suit are not the subject of the Agreement, and therefore the Agreement does not protect Pregis as Pactiv's successor-in-interest from the current infringement action brought by FPI.

Pregis argues that the second sentence of paragraph 2 precludes FPI from asserting infringement claims against the AirSpeed 5000[3] machines because it states that FPI "covenants that it is estopped from asserting and it will not assert liability for the making, selling, or using of any Pactiv product that would infringe the existing claims of the Patents or any substantially identical claims that might be included in any reissue patents." (Def.'s Ex. 14 at 2.) According to Pregis, the AirSpeed 5000 machines fall within the language "any Pactiv product that would infringe the existing claims of the Patents or any substantially identical claims that might be included in any reissue patents" because FPI believed that the Pactiv 5000 – and thus the AirSpeed 5000 machines – infringed Claim 19 of the '150 Patent. (Pl.'s Opp'n 8.)

---

[3] Pregis renamed the Pactiv 5000 machine to AirSpeed 5000.

The Court rejects Pregis's argument because it is inconsistent with the parties' stated intent. It is not clear that the Pactiv 5000 machines are included within the language "Pactiv product that would infringe the existing claims of the Patents" because the Agreement does not specifically name a Pactiv product that "would infringe the existing claims of the Patents." Even if FPI believed Pactiv 5000 machines infringed the '150 Patent, Pactiv never conceded that the Pactiv 5000 machines would infringe the claims of the "Patents" as defined in the Agreement. In fact, the Agreement explicitly states "Pactiv denied infringement of the Patents [and] claimed that the Patents were invalid and unenforceable." (Def.'s Ex. 14 at 1.) Furthermore, the Agreement provides "neither this Agreement, nor any of the discussion, negotiation or actions leading up to it, are intended to be, or shall be construed as, an admission of fact or liability by the Parties." (Def.'s Ex. 14 at 2.) Where Pactiv emphatically upheld its position that the Pactiv 5000 machines were noninfringing, Pregis now seeks to concede infringement in an attempt to shield the AirSpeed 5000 from the present lawsuit. The Court will not adopt an interpretation of the Agreement that runs contrary to the parties' stated intent. Therefore, the Court grants FPI's Motion for Summary Judgment as to the Agreement because the Agreement does not cover the present patents-in-suit and does not relieve Pregis from potential

liability for the alleged infringement of FPI's Patents in this case.

   *2. Direct Infringement of the Patents*

   The Court denies FPI's Motion for Summary Judgment as to direct infringement of the Fuss '377, Fuss '904, Perkins '837, and Perkins '397 Patents because a genuine issue of material fact exists as to whether the accused devices contain each and every limitation recited in the asserted claims.

   Section 271(a) of the Patent Act governs direct infringement and provides that "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). An accused product infringes if it literally meets each and every claim limitation or if it contains an equivalent of each limitation not literally met. *E.g.*, *Dolly, Inc. v. Spalding & Evenflo Cos., Inc.*, 16 F.3d 394, 397 (Fed. Cir. 1994). A determination of infringement requires a two-step, claim-by-claim analysis. *See, e.g.*, *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001). First, the court construes the claim; second, the finder of fact compares these construed claims to the accused device or process. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). Claim Construction is a question of law to be

determined by the Court. *See Markman v. Westview Instruments,*
*Inc.,* 517 U.S. 370, 391 (1996).

A court begins a claim construction analysis by considering
the language of the claims themselves. *See Philips v. AWH Corp.,*
415 F.3d 1303, 1312 (Fed. Cir. 2005) *(en banc).* The words of the
claim "are generally given their ordinary and customary meaning"
which "is the meaning that term would have to a person of
ordinary skill in the art in question at the time of the
invention." *Id.* In addition, "claims must be read in view of
the specification, of which they are a part." *Id.* at 1315
(quoting *Markman,* 52 F.3d at 979). A court should also consider
the prosecution history of the patent because it "provides
evidence of how the [Patent Office] and the inventor understood
the patent." *Id.* at 1317 (citations and quotation marks
omitted). Lastly, courts may "rely on dictionary definitions
when construing claim terms, so long as the dictionary definition
does not contradict any definition found in or ascertained by a
reading of the patent documents." *Id.* at 1322-23 (quoting
*Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1584 n.6
(Fed. Cir. 1996)). "An infringement issue is properly decided
upon summary judgment when no reasonable jury could find that
every limitation recited in the properly construed claim either
is or is not found in the accused device either literally or

under the doctrine of equivalents." *Gart v. Logitech, Inc.*, 254
F.3d 1334, 1339 (Fed. Cir. 2001).

Here, the parties dispute whether each and every limitation
recited in the asserted patent claims is present in the accused
Pregis machines. Specifically, the parties' arguments focus on
four terms as contained in the asserted claims: "pair of blocks
. . . wherein at least one of the blocks has a source of heat;"
"source of heat;" "planar path;" and "a closed longitudinal
edge."[4] The Court addresses each of these terms below.

     a. "Pair of blocks . . . wherein at least one of the blocks
has a source of heat"

The Court finds that a genuine issue of material fact
precludes summary judgment in favor of FPI regarding whether
Pregis AirSpeed SMART v.1 and AirSpeed 5000 machines include
every limitation of asserted Claims 1, 3, and 4 of the Fuss '337
Patent and Claims 4, 6, and 7 of the Fuss '904 Patent. Claim 1
of the Fuss '337 Patent and Claim 4 of the Fuss '904 Patent
recite a "pair of *blocks* . . . wherein at least one of the blocks
*has a source of heat.*" Fuss '377 Patent col.8 ll.21-24; Fuss
'904 Patent col.8 ll.15-19 (emphasis added). FPI proposes that
"block" should be construed in accordance with its ordinary
meaning and Pregis does not object to that construction.

---

[4] The parties focus their arguments on whether these four limitations are
present in the accused devices. Moreover, because the Court denies FPI's
Motion for Summary Judgment as to direct infringement of the patents-in-suit,
the Court need not address whether the accused devices contain each and every
limitation of the asserted claims.

Therefore, the term "block" is construed in accordance with its plain and ordinary meaning.

The Court finds that the parties' competing interpretations create an issue for trial as to whether the AirSpeed 5000 and AirSpeed SMART v.1 machines have a "pair of blocks . . . wherein at least one of the blocks has a source of heat." FPI contends that AirSpeed SMART v.1 and AirSpeed 5000 series machines have "a pair of blocks" and at least one of these blocks "has a source of heat." (Def.'s Reply 1-2.) FPI identifies components of Pregis's machines that FPI argues are blocks that have sources of heat. FPI presents Figure 7 of U.S. Patent No. 6,932,134 ("the '134 Patent")[5] and the photos of the sealing portion of AirSpeed 5000 machines and argues that the machines include an upper sealing block, comprising mounting clocks 122 and 124, and a lower sealing block, i.e., sealing support platen 132. (Def.'s Reply 2.) Similarly, FPI presents Figure 10 of U.S. Patent Application US 2009/0094939A1[6] and a photo of an AirSpeed SMART v.1 machine and argues that the machine includes a pair of blocks (i.e., heating element 120 and support block 63) and the heating element 120 includes a source of heat. (Def.'s Reply 3.)

---

[5] Pregis has stipulated that the design and principal components of the AirSpeed 5000 series machines are described in the '134 Patent. (Dkt. No. 77 ¶ 22.)
[6] Pregis has stipulated that the design and principal components of the AirSpeed 5000 series machines are described in U.S. Patent Application US 2009/0094939A1. (Dkt. No. 77 ¶ 26.)

16

Pregis, however, argues that FPI mislabels parts of the machines as blocks. According to Pregis, the component in the AirSpeed SMART machine that FPI identifies as a block that has a source of heat is actually an insulator that prevents heat generated by a low mass heating ribbon from spreading to other components of the machine. (Pl.'s Opp'n 17.) Similarly, Pregis argues that the component in the AirSpeed 5000 machines identified by FPI's expert as a "block" that "has a source of heat" is not a "block" at all, but rather a guard plate that protects users from injury. (Pl.'s Opp'n 17.)

After inspecting the patent claims and the sealing components of Pregis's machines, a reasonable trier of fact could adopt the position of either party. Therefore, the Court denies FPI's Motion for Summary Judgment on the issue of direct infringement of Claims 1, 3, and 4 of the Fuss '337 Patent and Claims 4, 6, and 7 of the Fuss '904 Patent.[7]

---

[7] As to the Fuss '337 Patent, Claim 1 is independent and Claims 3 and 4 are dependent claims. Likewise, Claim 4 of the Fuss '904 Patent is independent and Claims 6 and 7 are dependent claims. As such, the Court need not reach the issue of whether the dependent claims are infringed by the accused machines because the Court denies FPI's Motion for Summary Judgment as to the independent claims asserted. *See Rutherford Controls Int'l Corp. v. Alarm Controls Corp.*, No. 3:08CV369, 2009 WL 3423849, at *5 (E.D. Va. Oct. 23, 2009) (declining to address the issue whether dependent claims are infringed by the accused devices after denying summary judgment on the infringement issue based on a genuine issue of material fact concerning the independent claims).

b. "Source of heat"

The Court finds that a genuine issue of material fact precludes summary judgment in favor of FPI as to whether Pregis AirSpeed SMART v.1 and AirSpeed 5000 machines include every limitation of asserted Claim 10 of the Fuss '904 Patent. Claim 10 recites a "sealing mechanism that comprises a *source of heat*." Fuss '904 Patent col.8 ll.50-51 (emphasis added). "Source of heat" is given its ordinary and customary meaning.

Claim 10 does not mention "block" or "a block that has a source of heat." It only states that the sealing mechanism comprises a source of heat and the specification describes only one embodiment of the sealing mechanism, i.e., heater blocks 52. Fuss '904 Patent col.4 l.21. FPI points out that the "source of heat" is not limited to the specific embodiment disclosed in the specification. *See Phillips*, 415 F.3d at 1323 (rejecting the contention that "if a patent describes only a single embodiment, the claims of a patent must be construed as being limited to that embodiment.").

However, the parties dispute whether a person of ordinary skill in the art, after examining the patent claims and the specification, would conclude that a "source of heat" covers the heating element of the accused devices. FPI argues that the accused machines contain a "source of heat" because Pregis's own expert, Dr. Eric H. Maslen, acknowledged that the sealing mechanism employed by the AirSpeed 5000 machines contains a

nichrome heating element and that the sealing mechanism of the AirSpeed SMART v.1 machines includes a nichrome wire. (Def.'s Mem. 15; Def.'s Ex. 5 at 5, 12.) Pregis, on the other hand, argues that there are substantial structural and operational differences between the approaches to sealing air-filled cushions disclosed in the Fuss '904 Patent and in the Pregis machines. (Pl.'s Opp'n 15.) Dr. Maslen opines that the Fuss '904 Patent only discloses a source of heat comprising thermally massive, thermally conductive blocks. (Pl.'s Ex. 19 at 5.) The words "thermally massive" and "thermally conductive" do not appear in the claims. According to Dr. Maslen, however, the accused machines comprise sealing structures which include a feedback regulated low mass heating element that operates on a substantially different engineering principle than that taught in the Fuss Patents. (Pl.'s Ex. 19 at 5, 11-12.)

The factual dispute between the parties' experts creates a genuine issue of material fact concerning whether Pregis AirSpeed SMART v.1 and AirSpeed 5000 machines include "a source of heat" as recited in Claim 10 the Fuss '904 Patent. Thus, the Court denies FPI's Motion for Summary Judgment on the issue of direct infringement of Claim 10 of the Fuss '904 Patent.

c. "Planar path"

The Court finds that a genuine issue of material fact precludes summary judgment in favor of FPI as to whether Pregis's AirSpeed 5000 series and AirSpeed SMART series machines with Pregis's AirSpeed 5000 and AirSpeed SMART film include every limitation of asserted Claims 1-3 and 5-14 of the Perkins '837 Patent. Among the asserted claims, Claims 1, 8, 13, and 14 are independent claims and contain identical segment "drive rollers that cause the plastic film to be gripped at or near the narrow longitudinally extending channel and drawn in a continuous and uninterrupted manner through inflation, sealing and slitting mechanisms in a *planar path*." Perkins '837 Patent col.14 ll.4-8, 65-66, col.15 ll.1-3, 44-48, col.16 ll.29-33 (emphasis added). After reviewing the claims, specification, and the prosecution history, the Court construes the term "planar" as "flat or level." However, "planar path" does not mean "precisely planar path" as Pregis suggests because the term "precisely planar path" never appeared in any of the communications between the agency and the applicants or in the patent itself.

The parties disagree on whether the accused machines cause the film to be drawn through the inflation, sealing, and slitting mechanisms in a planar path. Dr. Maslen opines that Pregis machines could not cause the plastic film to be drawn through the three mechanisms in a planar path because they

> [D]o[] not provide means to regulate the vertical position
> of the outside edge of the film as it exits the processing
> region so the film tends to droop below the nominal
> processing plane. This tendency to droop is a simple
> consequence of the action of gravity on the film and the
> film will be pulled out of a planar path by this action of
> gravity without providing additional means of support either
> under the film or along the edge of the film distant from
> the sealing mechanism.

(Pl.'s Ex. 19 at 9-10, 15.) The Court notes that Dr. Maslen's opinion is that the entire film surface must be maintained in a flat or level state during inflation, sealing, and slitting. The claims do not mention the words "maintain the entire film surface in a flat or level state during the inflation, sealing and slitting" processes. Rather, the claims contemplate that as the film is *drawn* through the inflation, sealing, and slitting processes, the film being inflated and sealed is in a flat or level plane. Furthermore, Dr. Maslen states that the Pregis machines draw the plastic film in a linear path. (Pl.'s Ex. 19 at 9.) FPI's expert, Dr. Homayoon Kazerooni, counters that if the path the film travels through the inflation, sealing, and slitting processes is linear it must also be planar. (Def.'s Ex. 21 ¶¶ 38, 68.)

After visual examination of the accused machines in operation and reviewing video demonstrations clarifying the experts' testimony, a reasonable trier of fact could find for either party. Consequently, the Court denies FPI's Motion for Summary Judgment as to whether Pregis's AirSpeed SMART series and

AirSpeed 5000 series machines infringe asserted Claims 1-3 and 5-14 of the Perkins '837 Patent.[8]

    d. "A closed longitudinal edge"

The Court finds that a genuine issue of material fact precludes summary judgment in favor of FPI as to whether Pregis's AirSpeed HC film includes every limitation of asserted Claims 1, 2, and 4 of the Perkins '397 Patent. Claim 1 is the only independent claim at issue here, and therefore denial of summary judgment as to Claim 1 results in denial as to Claims 2 and 4. *See Rutherford*, 2009 WL 3423849, at *5. The relevant portion of Claim 1 reads "a plurality of generally rectangular inflatable chambers each having three sides closed and a fourth side with an unsealed opening into the longitudinally extending channel, wherein a side opposite the fourth side is defined by *a closed longitudinal edge* of the film." Perkins '397 Patent col.12 ll.47-51 (emphasis added). Claim 4 reads "[t]he preconfigured plastic film of claim 1 wherein a longitudinal edge of the film is closed by a heat seal." Perkins '397 Patent col.12 ll.64-65. The term "a closed longitudinal edge" is given its ordinary and customary meaning.

The parties dispute whether the edge of the AirSpeed HC film on the side opposite the inflation channel is "a closed longitudinal edge." FPI argues that the AirSpeed HC film

---

[8] The Court need not reach the issue of whether dependent Claims 2, 3, 5-7, and 9-12 are infringed by the accused machines. *See Rutherford*, 2009 WL 3423849, at *5.

contains the limitation stated in Claim 1. However, Pregis argues that the edge of the HC film on the side opposite the inflation channel is closed by "a heat seal six millimeters inward" from the edge of the film. (Pl.'s Opp'n 22.) Therefore, Pregis maintains that the perimeter of the air chambers of the HC film on the side opposite the inflation channel is not "defined by a closed longitudinal edge of the film" and in fact this edge is not closed at all, rather, the heat seal results in the film having an open "skirt" instead of "a closed edge." (Pl.'s Opp'n 22.) Pregis also argues that, during prosecution, the applicants surrendered coverage of film wherein the side opposite the film's inflation channel is closed by a heat seal, so "a longitudinal edge of the film is closed by a heat seal" as recited in Claim 4 cannot refer to the side that lies on the opposite side of the inflation channel. (Pl.'s Opp'n 22.)

After considering the expert testimony from both parties and examining the accused film, a reasonable trier of fact could find for either party. Accordingly, the Court denies FPI's Motion for Summary Judgment as to whether Pregis's AirSpeed HC film infringes asserted Claims 1, 2, and 4 of the Perkins '397 Patent.

In sum, genuine issues of fact exist as to whether the accused Pregis machines contain each and every limitation of the claims asserted. Consequently, the Court denies FPI's Motion for Summary Judgment on the issue of direct infringement.

### 3. *Invalidity of the Patents-in-suit*

The Court grants FPI's Motion for Summary Judgment on Pregis's invalidity defenses under 35 U.S.C. §§ 101, 102, 112, and 132 because Pregis cannot meet its heavy burden to prove invalidity by clear and convincing evidence.

A patent enjoys a presumption of validity. 35 U.S.C. § 282. The burden is on the party challenging the validity of a patent to show that it is invalid by clear and convincing evidence. *Helifix Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000). The burden never shifts to the patent holder to prove that its patent is valid. *See Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984).

When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits. *See Anderson*, 477 U.S. at 252-53. "Summary judgment is proper when a reasonable trier of fact could not find other than for the movant, when drawing all reasonable factual inferences in favor of the non-movant, and with the due consideration of the burden of proof." *Gemmy Indus. Corp. v. Chrisha Creations Ltd.*, 452 F.3d 1353, 1358 (Fed. Cir. 2006) (citing *Anderson*, 477 U.S. at 255).

FPI moves for summary judgment on three of the Pregis's invalidity defenses. First, FPI argues that Pregis cannot prove

invalidity of the Perkins '837 Patent under 35 U.S.C. §§ 112 and 132 for improperly adding new matter to the patent application. Second, FPI argues that Pregis cannot establish by clear and convincing evidence that the reissue of the '150 Patent renders the '286 Patent prior art to the Perkins '837 Patent under 35 U.S.C. § 102(e). Third, FPI argues that Pregis cannot demonstrate that the Perkins '837 and Fuss '904 Patents are invalid under 35 U.S.C. § 101 for double patenting in view of the '286 Patent and U.S. Patent No.6,786,022 ("the '022 Patent"), respectively. The Court addresses each of the invalidity defenses in turn below.

a. New Matter, 35 U.S.C. §§ 112 and 132

The Court grants FPI's Motion for Summary Judgment on Pregis's new matter defense as to the Perkins '837 Patent because the prosecution history of the patent does not suggest that the applicants improperly introduced new matter by a post-filing amendment which included Figures 16 and 17.

"No amendment shall introduce new matter into the disclosure of the invention." 35 U.S.C. § 132. This prohibition against new matter is enforced under 35 U.S.C. § 112, ¶1. *See, e.g.,* *Commonwealth Scientific & Indus. Research Org. v. Buffalo Tech. (USA), Inc.*, 542 F.3d 1363, 1378 (Fed. Cir. 2008). "Whether particular technological information is 'new matter' depends on the facts of the case: the nature of the disclosure, the state of the art, and the nature of the added matter." *Brooktree Corp.*

*v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1574 (Fed. Cir. 1992).

The question presented by a new matter defense is "whether the specification of the original application contained a written description of the invention sufficient to allow persons of ordinary skill in the art to recognize that the inventor invented the subject matter that is claimed in the asserted claims." *Commonwealth Scientific*, 542 F.3d at 1379. An originally filed claim can provide the requisite written description to satisfy 35 U.S.C. § 112. *See Lizardtech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1346 (Fed. Cir. 2005). Moreover, the fact that the USPTO has allowed an amendment without objection "is entitled to an especially weighty presumption of correctness" in a subsequent validity challenge based on the alleged introduction of new matter. *Brooktree*, 977 F.2d at 1574-75 (citations omitted).

Moreover, incorporation by reference "provides a method for integrating material from various documents into a host document- a patent or printed publication . . . by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein." *Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000). "To incorporate material by reference, the host document must identify with detailed particularity what specific material it incorporates and clearly indicate where that

material is found in the various documents." *Id.* Whether
material has been incorporated by reference into a host document,
and the extent to which it has been incorporated, is a question
of law. *Id.* at 1283. In making that determination, "the
standard of one reasonably skilled in the art should be used to
determine whether the host document describes the material to be
incorporated by reference with sufficient particularity." *Id.*

Pregis asserts as a defense to infringement that the
asserted claims of the Perkins '837 Patent are invalid under 35
U.S.C. §§ 112 and 132 because applicants improperly introduced
new matter, including Figures 16 and 17 of the Perkins '837
Patent pertaining to a "planar path", by post-filing amendment.
However, the Court finds this argument irreconcilable with the
prosecution history for four reasons. First, claims in the
original application, U.S. Patent Application No. 11/186,820
("the '820 Application"), recite the "planar path" element; in
other words, "planar path" was disclosed on the filing date.
(Def.'s Ex. 13 July 22, 2005 Application, as filed at 22-23.)
Second, on the filing date, the '820 Application incorporated by
reference the '286 Patent which contains figures identical to
Figures 16 and 17 of the Perkins '837 Patent. (Def.'s Ex. 13,
July 22, 2005 Application, as filed, ¶9) ("U.S. Patent 6,116,600
and 6,209,286 also disclose methods, apparatus and webs of
plastic film of this general kind and are incorporated herein by

27

reference."). Third, the applicants submitted a transmittal

letter which accompanied the '820 Application, stating:

> The above-captioned application, filed concurrently
> herewith, contains claims 1-17 directed to a system or
> apparatus for manufacturing air cushions. Support for
> claims 1-17 is found throughout the specification, as well
> as in priority application no. 60/123,497 at page 3, line 27
> to page 4, line 14; page 6, line 14 to page 7, line 3; and
> Figs. 3-4. This disclosure from the '497 application also
> is found in U.S. Patent 6,209,286, which is incorporated by
> reference in the present specification at ¶ 9. See U.S.
> Patent 6,209,286 at column 3, line 54 to column 4, line 25;
> column 6, line 37 to column 9, line 16; column 9, line 66 to
> column 10, line 17; and Figs. 10-11.

(Def.'s Ex. E at 1.) This letter indicates that Figures 3 and 10

of the '286 Patent, which are identical to Figures 16 and 17 of

the Perkins '837 Patent, respectively, were part of the

information disclosed when the applicants filed the '820

Application. Fourth, the USPTO's allowance of the introduction

of Figures 16 and 17 after the filing date is entitled to an

especially weighty presumption of correctness that no new matter

was added. (Def.'s Ex. 13 November 6, 2006, Office Action)

(drawings bearing notation "drawing approve tkt 11/03/06").

Thus, Pregis has not met its burden to prove by clear and

convincing evidence that the applicants of the Perkins '837

Patent improperly added new matter pertaining to a "planar path"

to the application after it was filed. Accordingly, the Court

grants summary judgment in favor of FPI on Pregis's invalidity

defense for new matter under 35 U.S.C. §§ 112 and 132.

b.  Anticipation, 35 U.S.C. § 102(e)

The Court grants FPI's Motion for Summary Judgment on Pregis's defense that the '286 Patent is prior art to the Perkins '837 Patent because the facts do not support Pregis's argument that the Perkins '837 Patent erroneously claims priority to the U.S. Patent Application No. 09/439,552 ("the '552 Application") of the '286 Patent.

When a party alleges that a claim is invalid based on the very same references that were before the examiner when the claim was allowed, that party assumes the following additional burden:

> When no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

*Ultra-Tex Surfaces, Inc. v. Hill Bros. Chem. Co.*, 204 F.3d 1360, 1367 (Fed. Cir. 2000) (citing *Am. Hoist*, 725 F.2d at 1359).

Pregis asserts as a defense to infringement that the '286 Patent is prior art to the Perkins '837 Patent because the '820 Application for the Perkins '837 Patent erroneously claims priority to the '552 Application, which became the '286 Patent, or provisional application No. 60/123,497, from which the '552 Application claims priority.  The Perkins '837 Patent claims priority to U.S. Patent Application No. 09/638,843 ("the '843 Application"), filed on August 14, 2000, now the '150 Patent,

29

which in turn claims priority to the '552 Application, now the '286 Patent. Perkins '837 Patent, at [60]. However, the '820 Application claimed priority to International Application No. PCT/US00/05614 which in turn claims priority to the '552 Application, now the '286 Patent. (Def.'s Mem. 24-25).

Initially, the application of the '150 Patent, the '843 Application, did not claim priority to any other application. (Def.'s Mem. 25.) After filing the '820 Application, FPI filed a reissue application of the '150 Patent seeking to claim priority from the '286 Patent on the grounds that there was an error during the prosecution of the patent application. (Def.'s Mem. 25.) Pregis asserts that this claim of priority is false. (Pl.'s Ex. 2 ¶¶ 14-68.) According to Pregis, the record strongly suggests that FPI sought reissue of the '150 Patent not to correct any purported error but to reverse and undo a deliberate choice that FPI and its predecessor's former patent counsel made during the prosecution of the '150 Patent. (Pl.'s Ex. 2 ¶¶ 14-68.) Pregis argues but for this false claim of priority, the USPTO would not have withdrawn its rejection of the '820 Application as anticipated by the '286 Patent. (Pl.'s Opp'n 24.)

However, there is no factual evidence supporting Pregis's allegations. On the contrary, both of FPI's former patent attorneys attested that they have no specific recollection of having considering whether to make any priority claims in the '843 Application. (Def.'s Ex. G at 41:7-22; Def.'s Ex. H at

48:3-14; Def.'s Reply 16.)  Moreover, FPI, as the assignee, had the right to decide whether to include priority claims in the patent application, and testified through its Rule 30(b)(6) designee that it was never consulted regarding whether a priority claim should be made in the '843 Application. (Def.'s Ex. C at 96:6-97:10.)  FPI's Rule 30(b)(6) designee further testified that, had FPI been consulted, it would have instructed the attorneys to make the priority claim. (Def.'s Ex. C at 104:9-105:13; Def.'s Reply 16.)

Therefore, absent factual evidence, Pregis has not met its heavy burden of proving invalidity of the asserted claims of the Perkins '837 Patent by clear and convincing evidence. Consequently, the Court grants FPI's Motion for Summary Judgment as to Pregis's invalidity defense that the Perkins '837 Patent is anticipated by the '286 Patent under 35 U.S.C. § 102(e).  In addition, the Court grants summary judgment in FPI's favor as to Pregis's defense that the '286 Patent is prior art to the Fuss '377 and '904 Patents because Pregis conceded, for purposes of this case, that the '286 Patent is not prior art to the two Fuss Patents.  (Pl.'s Opp'n 30.)

c.  Double Patenting, 35 U.S.C. § 101

The Court grants FPI's Motion for Summary Judgment on
Pregis's double patenting defense under 35 U.S.C. § 101 because
Pregis cannot satisfy its heavy burden of proof by relying on
conclusory statements that the Perkins '837 and Fuss '904 Patents
claim the same inventions that were previously patented in the
'286 Patent and the '022 Patent, respectively,.

The doctrine of double patenting is a question of law.  *See,
e.g., Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n*, 988
F.2d 1165, 1179 (Fed. Cir. 1993).  Statutory double patenting, or
"same invention" double patenting, is based on the language in §
101 of the Patent Act mandating "a patent" for any new and useful
invention.  35 U.S.C. § 101 (2000); *In re Goodman*, 11 F.3d 1046,
1052 (Fed. Cir. 1993).  If the claimed inventions are identical
in scope, rejection is proper under § 101 because an inventor is
entitled to a single patent for an invention.  *Miller v. Eagle
Mfg. Co.*, 151 U.S. 186, 197 (1894); *In re Stanley*, 214 F.2d 151,
153 (C.C.P.A. 1954).

Here, Pregis asserts as a defense to infringement that the
Perkins '837 and Fuss '904 Patents are invalid for double
patenting under § 101 because they claim the same inventions that
were previously patented in the '286 Patent and the '022 Patent,
respectively.  Pregis does not dispute the fact that the claims
of the Fuss '904 Patent are not identical to the claims of the
'022 Patent and that the claims of the Perkins '837 Patent are

not identical to the claims of the '286 Patent. (Def.'s Mem. 6;
Pl.'s Opp'n 3.)  However, Pregis argues that the claims of the
'022 and the Fuss '904 Patents, as well as those of the '286 and
the Perkins '837 Patents, "each similarly recite machines or
apparatus for making air-filled packing cushions and put forward
alternative verbal characterizations of the allegedly novel
machine."  (Pl.'s Opp'n 27-28.)  Pregis further asserts that
comparison of the photographs, drawings, specifications and
claims of the '022 and the Fuss '904 Patents, "leaves no doubt"
but that both patents are directed to the identical alleged
invention.  (Pl.'s Opp'n 27-28.)  Pregis concludes "a fact finder
could readily conclude that the alleged 'invention' . . . was
'actually covered'" by the '022 Patent and was thus "ineligible
for re-patenting in the Fuss '904 Patents 'although the terms of
the claims [of the later patents] may differ.'"  (Pl.'s Opp'n 27-
28.)  With similar reasoning, Pregis argues that the Perkins '837
Patent is invalid in view of the '286 Patent.  Nonetheless,
Pregis's arguments on the issue of double patenting consist
almost exclusively of conclusive statements and point to no
factual evidence.  Pregis fails to explain why the Fuss '904 and
Perkins '837 are invalid due to double patenting and fails to
even point to a single reference with specificity to illustrate
its arguments.

Thus, by generally alleging that the drawings,
specifications and claims of the late patents are directed to

earlier patents without specificity, Pregis has not met its
burden to prove by clear and convincing evidence that the '837
and '904 Patents are invalid for double patenting under 35 U.S.C.
§ 101. Accordingly, the Court grants FPI's Motion for Summary
Judgment on Pregis's double patenting defense.

   4.  *Intervening Rights*

   The Court grants FPI's Motion for Summary Judgment as to
intervening rights under 35 U.S.C. § 252 because the statute is
irrelevant in this case, as none of the patents asserted here is
a reissue patent.  35 U.S.C. § 252 concerns the effect of
reissue, and the doctrine of intervening rights under this
provision provides that when certain conditions are present, a
reissue patent "shall not abridge or affect certain rights" of
those who acted before the reissue was granted.  35 U.S.C. § 252.
None of the patents asserted here are reissue patents; therefore,
intervening rights under 35 U.S.C. § 252 is irrelevant.
Accordingly, the Court grants FPI's Motion for Summary Judgment
on the issue of intervening rights under 35 U.S.C. § 252.

III.  CONCLUSION

   The Court grants FPI's Motion for Partial Summary Judgment
in part and denies the Motion in part.  First, the Court grants
FPI's Motion for Summary Judgment as to the FPI-Pactiv Agreement
because the patents-in-suit are not the subject of the Agreement
and the Agreement does not shield Pregis from FPI's infringement
claims based on these patents.  Second, the Court denies FPI's

Motion for Summary Judgment on the issue of direct infringement of the four patents because genuine issues of fact exist as to whether the accused devices contain each and every element recited in the asserted claims of the Fuss '377, Fuss '904, Perkins '837, and Perkins '397 Patents. Third, the Court grants FPI's Motion as to Pregis's invalidity defense concerning the Perkins '837 Patent under 35 U.S.C. §§ 112 and 132 because Pregis cannot prove, by clear and convincing evidence, that new matter was improperly introduced during the prosecution of the patent. Fourth, the Court grants FPI's Motion as to Pregis's invalidity defense under 35 U.S.C. § 102 because (1) Pregis concedes that the '286 Patent is not prior art to the Fuss '377 and Fuss '904 Patents; and (2) Pregis cannot establish, by clear and convincing evidence, that the '286 Patent is prior art to the Perkins '837 Patent. Fifth, the Court grants FPI's Motion as to Pregis's invalidity defense under 35 U.S.C. § 101 because Pregis cannot establish, by clear and convincing evidence, that these patents claim the same inventions previously patented in the '286 Patent and U.S. Patent No. 6,786,022, respectively. Sixth, the Court grants FPI's Motion as to intervening rights under 35 U.S.C. § 252 because this issue is irrelevant as none of the patents-in-suit are reissue patents. Accordingly, it is hereby

ORDERED that Defendant FPI's Motion for Partial Summary Judgment is GRANTED IN PART and DENIED IN PART. The Court GRANTS FPI's Motion for Summary Judgment as to the FPI-Pactiv Agreement. The Court DENIES FPI's Motion for Summary Judgment on the issue of direct infringement of the Fuss '377, Fuss '904, Perkins '837, and Perkins '397 Patents. The Court GRANTS FPI's Motion for Summary Judgment on Pregis's invalidity defense under 35 U.S.C. §§ 112, 132. The Court GRANTS FPI's Motion for Summary Judgment on Pregis's invalidity defense under 35 U.S.C. § 102. The Court GRANTS FPI's Motion for Summary Judgment on Pregis's invalidity defense under 35 U.S.C. § 101. The Court GRANTS FPI's Motion for Summary Judgment on the issue of intervening rights under 35 U.S.C. § 252.

The Clerk is directed to forward a copy of this Order to counsel.

Entered this *16th* day of March, 2010.


Alexandria, Virginia

_____/s/_____

**Gerald Bruce Lee**
**United States District Judge**
